ACCEPTED
04-14-00357-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/5/2015 9:42:20 PM
KEITH HOTTLE
CLERK

04 -14 -00357 CV

In The Court Of Appeals
For The Fourth District Of Texas
San Antonio Texas

RECEIVED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
08/05/15 9:42:20 PM
KEITH E. HOTTLE
Clerk

**BURTON KAHN**
*APPELLANT*

V.

**HELVETIA ASSET RECOVERY INC**.
*APPELLEE.*

On Appeal From The 224 Judicial District Court Of Bexar County, Texas
Trial Court, No. 2013–CI -18355
Hon. Margret Tanner Presiding

**3RD AMENDED BRIEF OF APPELLANT
AND REPLY BREIEF OF APPELLEES'S BRIEF**

**Burton Kahn pro se
1706 Alpine Circle
San Antonio, TX 78248
210-408-9199
glentrail@yahoo.com**

## IDENTITY OF PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of the parties, attorneys and any other person who has any interest in the outcome of this lawsuit:

**Attorneys for Appellant:**    Burton Kahn Pro-se
1706 Alpine Circle
San Antonio, TX 78248
Tel (210) 408-9199
glentrail@yahoo.corn

**Attorneys for Appellee**:    Elizabeth Conry Davidson
Attorney at Law
926 Chulie Drive
San Antonio, Texas 78216
(210) 380-4899 telephone
(210) 225-2300 facsimile
conrydavidson@gmail.com


Resigned
Haynes and Boone LLP
Lisa Barkley
112 E. Pecan St. Suite 1200
San Antonio, TX 78205 – 1524
Tel (210) 978-7427
Fax (210) 0427
Lisa.Barkley@ haynesboone.com

Resigned
Haynes & Boone, LLP
Werner A. Powers
Natalie DuBose
Scott Everett
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel (214) 651-5487
Fax (214) 200-0468
Werner.Powers@hayneshoone.com

Real Party of Interest        Puerto Verde Ltd. (Bahamian)

For Appellee Real Party of Interest        Puerto Verde Ltd. (Bahamian)

For Appellee

Trial Judge:        Hon. Martha Tanner
224 th Judicial District Court
Bexar County, Texas

Previous Attorney Appellant        Appellant has represented himself pro se since December 14, 2013. His previous counsel was:

L. Terry George died on June 29, 2014.
Fort Worth, Texas

Jay R. Petterson
Jay R. Petterson, Attorney at *Law*, PLLC 12274
Bandera Road, Suite 210
Helotes, Texas 78023

Kathleen A. Cassidy Goodman
Law Office of Kathleen Cassidy Goodman
12274 Bandera Road, Suite 210
Helotes, Texas 78023

Richard H. Sommer
8610 N. New Braunfels Ave., Suite
309 San Antonio, Texas 78217

Robert W. Wachsmuth
Zachary J. Fanucci
Robert Wachsmuth & Associates
9311 San Pedro, Suite 707
San Antonio, Texas 78216

# RELATED LITIGATION

The following litigation matters are related to this appeal:

I.    APPEALS IN THE FOURTH COURT OF APPEALS:

     **1.** Appeal No. 04-14-00258-CV

     *In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.* The Court dismissed this appeal on August 20, 2014.

     **2.** Appeal No. 04-14-00012-CV

     *Burton Kahn v. Helvetia Asset Recovery, Inc.* The Court dismissed this appeal on July 16, 2014 and denied Kahn's motion for en bane consideration on September *25,* 2014. Kahn's deadline for filing his Petition for Review to the Texas Supreme Court has been extended to December 10, 2014.

     **3.** Appeal No. 04-14-00319-CV

     *Burton Kahn v. Helvetia Asset Recovery, Inc.* The Court dismissed this appeal on July 9, 2014.

     **4.** Appeal No. 04-14-00569-CV

     *Burton Kahn v. Helvetia Asset Recovery, Inc.* This appeal is pending.

II.    BANKRUPTCY PROCEEDINGS, PENDING:

     *1. In re: Burton M. Kahn,* Debtor, Case No. *14-50980,* United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

     *2. In re: Burton M. Kahn, Debtor, Helvetia Asset Recovery, Inc. v. Burton Al. Kahn,* Adversary Proceeding Case No. 14-5052, United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

*IIL*  PENDING BEXAR COUNTY DISTRICT COURT LITIGATION:

## PENDING BEXAR COUNTY LITIGATION

1.  *Burton Kahn v. Joabert Development Company and John Ripley,* Cause No. 2013-CI-17012, 37th Judicial District, Bexar County, Texas.

2.  *Paradiv Corporation and [Helvetia Asset Recovery, Inc. v. ACSBLDR and Robert Ripley,* Cause No. 2013-CI-17889, 166th Judicial District, Bexar County Texas. (Burton Kahn filed this action under Helvetia's name).

3.  *Burton Kahn v. Robert Ripley, et al.,* Cause No. 2014-CI-3453, 225th Judicial District, Bexar County, Texas. (This action was severed from Cause No. 2013-Cl-1 8355 in May 2014.)

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES …………………… . ...... ..............................i

RELATED LITIGATION………………….. . ...... ...........................iii.

TABLE OF CONTENTS………………….. . ...... .............................v

INDEX OF AUTHORITIES …………………. . ...... ......................... vii

STATEMENT OF THE CASE………………. . ...... ...........................xi .

STATEMENT REGARDNG ORAL ARGUMENTT…...............xii

STATEMENT REGARDNG JURISDICTION… … … ...............xii

RECORD REFERENCES………………….. . ...... ...........................xiii

ISSUES PRESENTED … … … … … … … … … … … … … …... xv

STATEMENTOF FACTS ……………………... ........... ..................1

SUMMARY OF THE  ARGUMENT…...........................7

ARGUMENT AND AUTHORITIES .............................................8

      BACKGROUND ......................................................8

ISSUE1 ....................................................................10

    1. Kahn  Cannot Be Charged Monetary Sanction Under Tex. Civ, Prac. & Rem Code Ann § 10:1004(D) When The Party Is Representative By Counsel

ISSUE 2 ....................................................................13

    APPELLATE REVIEW ..........................................................5

    2. Appellant Filed Under The  § 5 1.903 Because He Was President And Owner Of Helvetia, Kahn's Filing Under §51 903 Is Not Sanctionable

ISSUE 3 .................................................................................................19

    3  Court Did Not Have Authority To Impose Sanctions On Unenforceable Rule 11 Agreement

ISSUE 4 .................................................................................................23

    4  Court Abused Its Discretion Because It Lacked Jurisdiction To Rule On Ownership Of Stock.

CONCLUSION ....................................................................................24

PRAYER ..............................................................................................25

VERIFICATION...................................................................................25

CERTIFICATE OF COMPLIANCE ................................................. 26

CERTIFICATE OF SERVICE ....................................... ..... .............26

APPENDIX ...........................................................................................27

EXHIBITS
    A. Motion 2013-CI-17516

    B. Motion 2013-CI--18394

    C. Final Judgment and Sanction Order

    D. Petterson Contract.

    E. Statute § 51.903

    F. Wiring Instructions Handwritten Receipt

    G. Appellee's Stock certificate in 2013-CI-17516

    H. Appellant's Stock certificate

    J. . Exhibit 39

# INDEX OF AUTHORITIES

*Benavides v. Knapp Chevrolet, Inc.,*
No. 01-08-00212-CV, 2009 WL 349813, at *5
(Tex. App.-Houston [1st Dist.] Feb. 12, 2009, no writ.)..........................11

*BMG Direct Mktg.,Inc.v. Peake,*
178 S.W.3d 7763,767 (Texas 2005)..........................21

*Bland Indep. Sch. Dist. v. Blue,*
34 S.W.3d 547, 553-54 (Tex.2000)..........................24-

*Buffalo Bag Co. v. Joachim,*
704 *S* W 2d 482, 483 (Tex App -Houston [1 st Dist 11986,
writ refd nre.)..........................20

*Burnaman v. Heaton,*
150 Tex. 333 (1951)240 S.W.2d 288..........................21

*Cetti v. Dunman,*
26 Tex. Civ. App. 433 [26 Tex. Civ. App. 433],
64 S.W. 787 (1901, writ refd)..........................22

*City of Allen v. Pub. Util. Comm'n of Tex.,*
161 S.W.3d 195, 199 (Tex.App.—Austin 2005, no pet.)..........................24

*City of DeSoto v. White,*
288 S.W.3d 359, 393 (Tex. 2009) ..........................24

*City of Houston v. Rhule,*
417 S.W.3d 440, 442 (Tex. 2013) (per curiam) ..........................23

*City of Roanoke v. T. of Westlake,* 1
11 S.W.3d 617 (Tex.App.-Ft. Worth 2003)..........................21

*CometAluminum Co v Dibrell,*
450 S W 2d 56, 58 (Tex 1970) (ong proceeding) ..........................20

*Conner v, Johnson,*
02-03-31 6-cv (Tex App -Ft Worth 10-28-.2004)..........................15

*Duncan v Smith,*
393 S W 2d 798, 80304 (Tëx. 1 965)) ................................................................15

*Dunlap v. Villareal,*
91 S.W.2d 1124, 1125 (Tex.Civ.App.-San Antonio 1936, no writ). ..............22

*Early v. Burns,*
142 S.W.2d 260 (Tex.Civ.App. - Beaumont 1940, writ refd)...........................22

*Entergy Corp. v. Jenkins,*
01-12-00470-cv (Tex.App.-Houston [1st Dist.] 11-6-2014).............................23

*Ex Parte Preston,*
833 8W.24 *515* (Tex.Cr.App.1 992)…..….…....................................................20

*Fail v. Lee,*
535 S.W.2d 203, 207-08 (Tex. Civ.App. -Fort Worth 1976, no writ)".............22

*Fin. Comm'n of Tex. v. Norwood,*
418 S.W.3d 566, 578 (Tex. 2013) ….…............................................................23

*First Coppell Bank v. Smith,*
742 S.W.2d 454, 460 (Tex.App.-Dallas 1987, no writ)....................................16

*Fortune Prod. Co. v. Conoco, Inc.,*
52 S.W.3d 671, 678 (Tex. 2000) ….…...............................................................16

*Gomer v. Davis,*
419 S.W.3d 470 (Tex.App.-Houston [1st Dist.] 2013) …................................11

*Gym-N-I Playgrounds v. Snider,*
220 S.W. 3d 905 (Tex. 2007).............................................................................21

*In re Estate of Flores,*
76 S.W.3d 624, 630 (Tex.App.-Corpus Christi 2002, no pet.)..........................16

*In re United Servs. Auto. Ass'n,*
307 S.W.3d 299, 309 (Tex. 2010).....................................................................24

In Re *Guerrero,*
440 S.W.3d 917 (Tex.App.-Amarillo-2014).................................................................20

*Johnson v. Rancho Guadalupe, inc.,*
 789 S.W.2d 596, 598 (Tex. App. -Texarkana 1990, writ denied)...................................22

 *Loeffler v. Lytle Indep. Sch. Dist.,*
211 S.W.3d 331, 349-50 (Tex.App.-San Antonio 2006, pet. denied) ....................12

*Low v. Henry,*
221 S.W.3d 609 (Tex,. 2007).........................................................................11

*McMillan v. McMillan,*
72 S.W.2d 611 (Tex.Civ.App. - Dallas 1934, no writ)...............................................22

*Nath V. Texas Children's Hospital And Baylor College Of Medicine,*
12-0620 (Tex. 8-29-2014)..............................................................................10

*Pierce v. Terra Mar Consultants, inc.,*
 566 S.W.2d 49 (Tex.Civ.App. - Texarkana 1978, writ dismd)...................................22

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
549 U.S. 422, 431, 127 S.Ct. 1184, 1191 (2007))..................................................23

*Solano v. Landamerica Commw.,*
02-07-152-cv (Tex.App.-Ft. Worth 12-4-2008).....................................................16

*Swanberg v. Swanberg,*
01-12-00375-cv (Tex.App.-Houston [1st Dist.] 8-22-2013)....................................11

*Travelers Companies. v. Wolfe*
 838 S.W.2d 708, 714 Tex.App.-Amarillo 1992,no writ ….........................................15

*Univ. of Tex. at Arlington v. Bishop,*
 997 S.W.2d 350, 357 (Tex.App.-Fort Worth 1999, pet. denied) ..........................12

*Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser,*
140 S.W.3d 351, 359 (Tex. 2004).......................................................................24

*Walden v Sanger,*

250 S.W.2d 312, ; Tex.App.-Austin  1952, no writ……...............................................22

*Williams v. Nolan,*
  58 Tex. 708, 713-14 (1883);.....................................................................22.

## STATUTES

TEX. CIV. PRAC. & REM. CODE § 10.001; ….....................................10,.11, 24

Tex. Civ. Prac. & Rem. Code Ann . § 10.004(d) (Vernon 2002)................7, 11,24

Tex. Gov't  Code  . § 51903..............................................................7,13,25

## RULES

Tex. R. Civ. P. Rule  11 ……………………………………… …...7,20,21.25

## OTHER AUTHORITIES

25 *., p. 385, et seq.; ………………………………………… …...21.

 49 C.J.S., Judgments, § 173, page 308, et seq. ……………………… …...21.

# STATEMENT OF CASE

*Nature the case* this is an appeal arising out of the granting sanctions for a fictitious filing and attempted withdrawal of a Rule 11 Agreement. 3CR 229.256.

*Course of proceeding.* The On November 5, 2013 1 CR1Helvetia filed the lawsuit giving rise to this appeal as an "action on fraudulent lien on property" pursuant to section § 51.903 of the Texas Government Code. Hon. Judge John D. Gabriel signed in order stating that the deeds are fraudulent. 1 CR 76. On December 11, 2013 Hon. Karen H Pozza signed an order setting aside November 5, 2013:2 CR 11 On April 1, 2014, Judge Tanner signed a Final Judgment and Order of Sanctions against Kahn and his attorney 3CR 229. Judge Tanner denied Kahn's motion to reconsider, vacate, modify, correct or reform the Sanctions Judgment on April 11, 2014. 4CR 239.

*Disposition Of The Case,* Kahn filed his notice of appeal on May 14, 2014. 4CR 243. On November 3, 2014 Appellee filed its Brief and Motion. This reply is in response to that Brief and Motion.

## STATEMENT REGARDING ORAL ARGUMENT

Kahn does not believe that oral argument is necessary as the arguments in brief hopefully will convince the Court to reverse the sanctions

## STATEMENT OF JURISDICTION

Appellant appeals final judgment setting aside the 224th judicial District order set aside judicial findings of fact and conclusions of law regarding a document or instrument 40 to create a lien or claim on December 11, 2013. There is no dispute regarding the fourth Court of Appeals have appellate jurisdiction over this matter.

.

# RECORD REFERENCES

The Reporter's Record will be cited as

follows: [Vol.] RR [page]

The Clerk's Record will be cited as follows:

[Vol.] CR [page]

## Comments about the Reporter's Record

Recorder Record in Exhibit 5 has the exhibits presented at the hearing

and the record and Exhibits of the December 9 , 2013 t December 11,

2013.  The following is a table of contents of this volume.

## Table of contents volume 5

Exhibit 1 Motion for case 2013-CI–18394 pages 6 - 81
    Secretary of State page 41-64
Exhibit 2  Order for case 2013–CI–18394 pages 82 - 88
Exhibit 3 order setting aside motion case 2013- CI-18394 pages 89-91
Exhibit 4 stock certificate pages 93-94
Exhibit 5 Corporate Minutes pages 95 - 96
Exhibit 6 tax return page 97 - 113
Exhibit 7 Paradiv warranty deeds pages 114- 127
Exhibit 9 Order case 2013-CI-17516  pages 128 -139
Exhibit 10  Commission  v. Howard Kahn pages 140-144
Exhibit 11 Rodriguez v. U.S. Tank pages 145-171
Exhibit 12 Routh v. Bank of America pages 172-179
Exhibit.13 Draxz v. American General pages 180-189
Exhibit 14 USA v. Revels pages 200 -203
Exhibit.15 Powers  letter to George  November 4, 2013 pages 204-205
Exhibit 16 Powers  letter to George  November 5, 2013 pages 206-208

Exhibit 17 Barkley letter to Peterson November 2013 pages 209-210
Exhibit 18 Powers letter to Peterson November 6, 2013 pages 211-213
Exhibit 19 Gonzales  letter to Kahn, September 17, 2007 pages 214- 216
Exhibit 20 Kahn  letter to NA Title November 25, 2007 pages 217-225
Exhibit 21 Handwritten by Ripley September 17, 2007 pages 226-227
Exhibit 22 Settlement statement November 13, 2007 pages 228-235
Exhibit 23 Ripley e-mail to Kahn September 20, 2013 pages 236-238
Exhibit 24 Ripley e-mail to Kahn September 8, 2013 pages 239-241
Exhibit 25 Motion to DA Re Joseph Lobley 1990 pages 242-249
Exhibit 26 Summary Judgment Kahn v. National S 1988 pages 250-254
Exhibit 27 Order Jacobson v. Kahn 1983 pages 255- 270
Exhibit 28  Sellers/borrowers affidavit,  page 271-272
Exhibit 29 Haynes Boone Time Sheet 3/3 2014 pages 273-274
Exhibit 30 Haynes and Boone time sheet pages.275-281
Exhibit 31 Haynes and Boone time fee sheet pages.282-283

D Exhibit 1 Attorney client contract Pederson Kahn pages 284-292
D Exhibit 2  City of Roanoke v. T Westlake pages 293-294
D Exhibit 2 Kahn's Counterclaim v Ripley pages 295-305
D Exhibit. 3 Organizational Minutes forged by Moore pages 306-311
D Exhibit 4 stock certificate forged by Moore pages 312-313
D Exhibit 5 Motion  case 2013-CI-17516  pages 314-340
D Exhibit 6 Secretary of State page 341 - 362
D Exhibit 7 Secretary of State page 363 – 365
D Exhibit 8  Vol. 4 of Hearing December 10, 2013 pages 366-525
D Exhibit 8  Vol. 5 of Hearing December 11, 2013 pages 526-559
D Exhibit 8  Vol. 1 Excerpts Hearing Dec.9,10 11, 2013 pages 560-665
D Exhibit 9  Vol. Master Index  Hearing Dec.9- 11, 2013 pages 666-674
D Exhibit 9  Vol. 2 of Hearing December  9, 2013 pages 675-713
D Exhibit 9  Vol. 3 of Hearing December 9, 2013 pages 714-839
D Exhibit 10 Trial EXHIBIT 39  pages 840-882
D Exhibit 10 George letter to Morrison September 19, 2007 page 883
D Exhibit 11  Gonzales  letter to Kahn, August 22,, 2007 pages 884-885

# ISSUES PRESENTED

Issue 1) The Trial Court sanction order was an abuse of discretion due to the A Party cannot be charged monetary sanction under Tex. Civ. Prac. & Rem. Code Ann. § 10.004(d) when the party is representative by counsel.

Issue 2 ) The Trial Court sanction order was an abuse of discretion due to filing a fictitious suit is that the filing was not in accordance with Tex. Civ. Prac. & Rem. Code Ann. § 10.001

Issue 3) The Trial Court sanction order was an abuse of discretion due to t5he Rule 11 Agreement was unenforceable and the Court did not have authority to impose Sanctions.

Issue 4) Court Abused Its Discretion Because It Lacked Jurisdiction To Rule On Ownership Of Stock.

# STATEMENTOF FACTS

After  Helvetia Asset Recovery Inc. ("Helvetia")terminated Burton Kahn ("Kahn")'s  employment (no evidence of Kahn was employed  by Helvetia)

Kahn was a one third owner of the stock in Joabert Development Company ("Joabert") (Owner and builder of the Royal Crest Subdivision) and was working for benefit of Joabert. **3RR 82**

Helvetia  was a conduit to accumulate funds for Joabert. Robert Ripley ("Ripley") testified that the funds go to Joabert. **5RR 793.**  Kahn testified that the funds go to Joabert. In Helvetia's original petition funds were earmarked to go to Joabert. **CR IH 3**  Kahn  testified that the money in Helvetia went to Contour and to Joabert. **5RR 483** Maple Bush Holding Ltd (" Maple Bush") purchased John Ripley's loan notes on Key Largo Subdivision,  using funds of EFG Bank (Bahamas) to Falcon International Bank **5RR 819** . Maple Bush foreclosed on these loan notes **5RR 820** to become owner of Key Largo subdivision Maple Bush sold  Key Largo to Helvetia **5RR 229**

*1. Kahn  Cannot Be Charged Monetary Sanction Under Tex. Civ, Prac. &*

*Rem. Code Ann § 10:1004(D) When The Party Is Representative By Counsel*

Kahn on November 1, 2013 hired Jay R. Peterson, Attorney at Law, PLCC ("Petterson") to represent him in several cases pending in Bexar County, Texas. **5RR 284, DF Ex1**

Case 2013 CI 18394 was filed on November 5, 2013 and signed by Petterson. **1CR 1-95**, **5RR 6-12**, **5RR 210**, **Pl Ex 1**

Kahn fired Peterson on November 22, 2013. **5RR 444**

*2. Appellant filed under the § 5 1.903 because he was President and Owner of Helvetia Kahn's filing under §51 903 are not sanctionable.*

On October 23, 2013, Puerto Verde Ltd. a Bahamian Corporation , claimed to be a 100% stockholder Helvetia filed a lawsuit 2013-CI-17516 , Order **5RR 128-139**, Motion, **5RR 315-340** in the style of "Action on Fraudulent Lien on Property." Ripley swore that the documents in this suit were true , showing proof that Puerto Verde Ltd. is the owner of Helvetia . These documents were of Certificate of Formation **5RR 321**, Minutes Of The Organizational Meeting Of The Board Of Directors Of Helvetia Asset Inc. A for-profit Corporation dated August 17, 2015 (:Original Minutes") **5RR 322** and a stock certificate 001 dated August 20, 2007. **5RR 327**

The Original Minutes stated that the offer of stock was to Puerto Verde Ltd. **5RR 324** But the stock certificate stated Puerto Verde Inc. The stock certificate was signed by Kenneth Moore ("Moore") who was named president in the initial minutes. **5RR 323**

On November 5, 2013, Kahn claiming 100% stockholder Helvetia filed a lawsuit 2013-CI-18394 , in the style of "Action on Fraudulent Lien on Property.

Motion **1CR1,**, Order **1CR 76.** In that Motion Kahn's Attorney Jay R Petterson ("Petterson") claims that the documents included in 2013-CI-17516 are forgeries.

The form of the stock certificate was not the correct form. **5RR 10, 5RR 68** Ripley did not contact Terry George ("George ") the organizer and attorney for Helvetia for the proper form of certificate. **5RR 536,738** George testified that he never provided any copies of the minutes to anyone but Burt Kahn. **5RR 544** Ripley stated he did not have the form of the stock certificate so he made one up and faxed the certificate to his brother John Ripley from Toronto, Canada. **5RR 797.** There are no fax markings on the certificate so that faxing is questionable. Ripley never contacted George until September 2013, **5RR 738.**

Moore testified that he never issued any shares. **5RR 503** Moore testified that he never sold any shares. **5RR 503** Moore testified that he never received any money for shares. **5RR 503**

Moore testified that two of his signatures were Moore's but not the third signature. **5RR 509**

Moore testified was not the custodian of records **5RR 504,**

On August 21, 2007 the Title Company sent Kahn an email wiring instructions for the $1.2 million money trail exchange. Robert Ripley took this document and crossed out sender and in his own handwriting that stated "Please transfer 1.2 million USD to my escrow agent as outlined in these instructions. The

3

funds will be used to capitalize a Texas holding (-hold) co. and in return Puerto Verde will receive 1000 shares." **5RR 227** Robert testified that this document was a receipt from the title company however Robert crossed out the name of the Title Company's sender. **5RR 831** Ripley testified that the funds for the transfer came from the Ripley family trust. **5RR 571** There are no Bank records of this transfer and there are no records of the title company that this document was in existence and was given or received.

Robert testified that Scott Morrison ("Morrison") was the trust officer for the Bahamian bank **5RR 705** and as of October 22, 2007 he did not have any documentation on the ownership. **5RR 704-705** These instructions were never sent to Morrison but Morrison sent the transfer funds. Ripley testified that he owns both Maple Bush and Puerto Verde Ltd. **5RR 799** Ripley testified that the funds used to purchase the notes were from computer company he closed down. **5RR 746** On February 8, 2008. Ripley's sent email to Kahn again questioning ownership **5RR 573**. Ripley does not have the original stock certificate **5RR 801** nor the receipt from the Title Company nor the minutes of the original meeting, that he claimed in his affidavits and testimony previously cited above.

Ripley submitted to the court Exhibit 39 **5RR 840, DF Ex 10 which** he called a kit. **5RR844** Ripley claimed that was provided by Mr. Terry George. **5RR743** George testified that he never provided any copies to anyone but Burt

4

Kahn. **5RR 544** Exhibit 39 was comprised of transmittal and instruction letter, By laws and the Minutes Of The Organizational Meeting Of The Board Of Directors Of Helvetia Asset Inc. A for-profit Corporation dated of August 8, 2,007.(" August 8, 2007 minutes") The transmittal does not have any information on who has sent it nor is there a signature but it does state to review and call if there are any changes. **5RR 851-882** The By laws and August 8, 2007 has George's signature on dated August 8, 2007 as of these documents are final. George testified that he never provided any copies to anyone but Burt Kahn. **5RR 544** George testified that he Exhibit 39 was not his work. **5RR 549-557** The shares to be issued to Puerto Verde, Inc. 1000. are written in pencil . **5RR 553** Also per August 8, 2007 minutes state that George resigned on August 8, 2007. Ripley testified that he received Exhibit 39 by courier in Canada but does not have any envelope that it came in. **5RR 738** Ripley testified that this document was specially flown in to San Antonio from Canada for the injunction hearing. **5RR 711** The bylaws state in pencil the offices to be 6751 Walzem which is different from the minutes of August 17, 2007 which has George's address. **5RR 393**

*3 Court Did Not Have Authority To Impose Sanctions*

*On Unenforceable Rule 11 Agreement.*

On November 15, 2013 Appellant's attorneys and Peterson and Kathleen Goodman ("Goodman") signed a Rule 11 Agreement without Kahn's, consent to

any of the details **5RR 442.**   Kahn fired Petterson and Goodman. **5RR 444,**  At the injunction Judge Pozza stated that she could not enforce the Rule 11 Agreement **5RR 661**

### 4   *Court Abused Its Discretion Because The Court Lacked Jurisdiction To Rule On Ownership Of Stock.*

The Courts first statement t was "So we're not on the merits today? **2RR 5**

The court stated on the issue of who owns the stock, "Well that's a subject of a different type of motion that is the one right now. But you're certainly welcome to urge that to some court when you file a proper motion." 3**RR 20**.

# SUMMARY OF THE ARGUMENT

Tex, Civ. Prac. & Rem. Code Ann. § 10.004(d) does not authorize the award of monetary sanctions against Appellant for an act when Kahn was represented by counsel. Appellant was represented by counsel and any monetary sanctions should be stricken .

Appellant filed Under § 5 1.903 Because He Was Owner And President Of Helvetia and the filing have evidentiary support and him was not fictitious and should have not been sanctioned for making a legal contention claim of ownership.

Court Did Not Have Authority To Impose Sanctions On Unenforceable Rule 11 Agreement.

Court Abused Its Discretion Because It Lacked Jurisdiction To Rule On Ownership Of Stock.

## ARGUMENT AND AUTHORITIES

## BACKGROUND

Burton Kahn ("Kahn") ("Appellant") and John Ripley founded the Joabert Development Company ("Joabert") in 2006 to develop and sell housing lots in Northeast San Antonio. Appellant did all the work and John Ripley supplied the funds. John Ripley sold some of his properties in order to supply funds for Joabert. One of these properties was a subdivision named Key Largo, which John Ripley foreclosed on himself. The foreclosed property was sold to a holding corporation named Helvetia Asset Recovery, Inc. ("Helvetia").

Appellant's responsibilities was to purchase properties, secure funds, design subdivisions infrastructure and roadways . construct the design and to do all the necessary paper work including dealing with local authorities. Kahn never got any compensation for the eight years that he worked. Kahn had invested approximately $100, 000 of his own money.

Appellant was selling lots from the subdivision to provide Joabert with construction funds. The relationship ended in August 26, 2013 and Appellant was holding approximately $290,000 of funds slated to go to Joabert. Robert Ripley("Ripley"), John's brother was not a stockholder in Joabert. **5RR 809-810** Ripley wanted to take the Helvetia property for himself. The shares of Helvetia were never purchased and to protect Helvetia/Joabert from Ripley, Appellant

8

purchased the 1000 shares. **5RR408-410** Knowing there was a $1.2 million debt, and the property would go to Joabert like all the other items Appellant purchased. On September 16, 2013, Robert Ripley and John Ripley went to Randolph Brooks Federal Credit Union and submitted over 50 pages of documents to the bank to take over Helvetia's bank account. **5RR 794** John and Robert Ripley were refused access.

On October 23, 2013 Appellee filed a lawsuit 2013-CI-17516, claiming that Puerto Verde Ltd. ("PVL") owned 100% the Helvetia stock. **EXHIBIT A. 5RR 314, DF Ex 5** Included in the motion was documentation of Puerto Verde Ltd.'s ownership.

On November 5, 2013 Appellant filed a lawsuit 2013-CI-18394, claiming that Appellant owned 100% the Helvetia stock. **EXHIBIT B 1CR1, DF Ex 5.** Included in the motion was detailed explanations why documentation of 2013-CI-17516 was a forgery.

At an Injunction Hearing was held on December 9- 11, 2013, Appellant was ordered to place the funds into the registry of the court . A sanction hearing was conducted in March 3 and 4 , 2014 and Appellant was sanctioned for filing a fictitious suit but not his attorney who signed the pleading and for withdrawal of an unenforceable Rule 11 Agreement . **(EXHIBIT C Order Final Judgment and Order of Sanctions ) 3CR229**

9

## ISSUE 1

KAHN CANNOT BE CHARGED MONETARY SANCTION UNDER TEX. CIV, PRAC. & REM CODE § 10:1004(D) WHEN THE PARTY IS REPRESENTATIVE BY COUNSEL

On November 1, 2013 Kahn hired Jay R Petterson as his representative in the series of lawsuits involving the case **EXHIBIT D.**

On November 3, 2013 Petterson spent 7 hours reviewing documents and preparing Motion For Findings And Conclusions Of Law, review and organize exhibits and statute.

On November 5, 2013 Peterson spent 4 hours reviewing emergency motion for discovery filed by adverse party, prepared final drafts of Motions Findings And Conclusions Of Law and travel to and from court. Peterson signed the Motion and had an Ex Parte hearing with Hon. Judge John D Gabriel, who signed order.

**EXHIBIT B**

The employment contract **(EXHIBIT D)** between Kahn, and Peterson shows Kahn as Client and Petterson as the attorney.

The motion for § 51.903 is outlined in the statute **EXHIBIT E .**" Movant further acknowledges that movant may be subject to sanctions as provided by Chapter 10 Civil Practice And Remedies Code, if this motion is determined to the frivolous." In *Nath V. Texas Children's Hospital And Baylor College Of Medicine,* 12-0620 (Tex. 8-29-2014) states:

10

However, Chapter 10 provides that a claim that lacks a legal or factual basis — without more — is sanctionable. TEX. CIV. PRAC. & REM. CODE § 10.001; *see also Low*, 221 S.W.3d at 617. Legally, the claim must be warranted by existing law or a nonfrivolous argument to change existing law. TEX. CIV. PRAC. & REM. CODE § 10.001(2). But Chapter 10 expressly prohibits monetary sanctions against a represented party based on the legal contentions in a pleading. *Id.* § 10.004(d) ("The court may not award monetary sanctions against a represented party for a violation of Section 10.001(2)."). Accordingly, the trial court could not have properly awarded sanctions against Nath for groundless legal contentions in his tortuous interference claim.

Chapter 10 requires that each factual contention must have evidentiary support or be likely to receive it after a reasonable opportunity for discovery. *Id.* § 10.001(3); *Low v. Henry*, 221 S.W.3d at 616-17.

In *Swanberg v. Swanberg*, 01-12-00375-cv (Tex.App.-Houston [1st Dist.] 8-22-2013) States

"But section 10.004(d) specifically provides that "[t]he court may not award monetary sanctions against a represented party for a violation of Section 10.001(2)." *Id.* § 10.004(d); *see also Benavides v. Knapp Chevrolet, Inc.*, No. 01-08-00212-CV, 2009 WL 349813, at *5 (Tex. App.-Houston [1st Dist.] Feb. 12, 2009, no pet.) (overturning sanctions award under chapter 10 when trial court's monetary sanctions "could only have been based on section 10.001(2)"). Because the order awarded sanctions based on a violation of section 10.001(2) and Mark was represented by counsel when he filed his petition, the monetary award against him was a violation of section 10.004(d).

In *Gomer v. Davis*, 419 S.W.3d 470 (Tex.App.-Houston [1st Dist.] 2013)

11

states:

> Section 10.004(d), however, provides that the trial court "may not award monetary sanctions against a represented party for a violation of Section 10.001(2)." TEX. Civ. PRAC. & REMCODE ANN. § 10.004(d) (Vernon 2002). Here, the trial court imposed $5,000 in sanctions against Gomer, a represented party. Under these facts, therefore, section 10.001(2) cannot support this sanctions award against Gomer, although Gomer's attorney may be sanctioned under this section. *See Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 357 (Tex.App.-Fort Worth 1999, pet. denied); *see also Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 349-50 (Tex.App.-San Antonio 2006, pet. denied) (holding that because attorney decides which legal claims to file and party provides, at most, factual basis for claims, party "should not be punished for their attorney's conduct unless the party is implicated apart from having entrusted its legal representation, and trial court abused its discretion in sanctioning party under Chapter 10).

In this case Appellant's only action was the claiming of his property. Each allegation in 2013-CI-18394 was supported by a nonfrivolous argument . The injunction hearing of December 9 - 11, 2013 showed that the statement of facts and all the allegations made in the motion were true. Petterson did all the necessary investigations. George had no final say in the motion and was too ill to participate. George was also a represented part y as stated in the Appellee's First Amended Motion for Sanctions **2CR 135** That is the reason why he recommended Goodman who then recommended Petterson.

## CONCLUSION ISSUE 1

12

Based on above, the trial court abused its discretion by sanctioning Appellant who was represented by attorney, Peterson.

## ISSUE 2

2.. KAHN FILED UNDER THE  § 5 1.903 BECAUSE HE WAS OWNER AND PRESIDENT OF HELVETIA  KAHN'S FILING UNDER §51 903 IS NOT SANCTIONABLE

The shares of Helvetia were never purchased and to protect Helvetia/Joabert from Ripley, Appellant purchased the 1000 shares. **EXHIBIT H 5RR 93 PL Ex 4.** Appellant was president and director of Helvetia according the Secretary of State except for the period from September 20, 2013 to October 4, 2013.**5RR 41-64** The issue in the dispute  is who owns the shares of Helvetia.

## STOCK CERTIFICATE

Robert Ripley claims that he purchased the shares for Helvetia from Moore on August 20, 2007. **5RR 327 EHIBIT G, DF Ex.4**   His claim is based on the stock certificate. **5**RR 796 Ripley claims that he did not have correct form of certificate **5RR 10, 5RR 68** so he made one on his computer **5RR 743** and did not contact George the originator and attorney of Helvetia. **5RR 536,738** Ripley who was in Canada then faxed the blank certificate which he had just created to his brother John  in San Antonio. **5RR 743**  There are no fax documentation on the certificate 1 similar to the fax sent by Appellee to  Secretary of State. . **5RR 300,**

**5RR 354** Ripley then claims that he was faxed back the certificate after Moore signed the certificate but does not have a copy. **5RR 801** Again there are no fax documentation marks on the certificate. Moore testified that he did not issue any stock. **5RR 501** Moore testified that he did not get any money. **5RR 503** Moore testified that two of the three signatures on his but not the third signature. **5RR 509** Moore testified that he was not the custodian of records which the stock certificate stated he was. **5RR 504** .

The name on the site certificate is Puerto Verde Inc, yet Ripley is claiming that the owner is Puerto Verde Ltd.

To sum up the testimony at this juncture of the testimony and documentation of the stock certificate: Ripley claimed that he faxed without faxed documentation on the form that was not according to the official minutes to his brother John Ripley who had Moore sign and issue the certificate that Moore claimed he never issued. The certificate had a third signature which was not Moore's.

## EXHIBIT F.

Ripley claims that he received a receipt from the title company $1.2 million and payment of $1,000 for shares in a Hold co on September 17, 2007 **5RR394 EXHIBIT F, PL Ex.21 Although** the receipt states Hold Co Ripley meant Helvetia. This receipt is only written on a Tile Company memo of August 21,

14

2013. It does not state who received it. If it is wiring instructions why would the title company give a receipt?. Who in the title company gave this receipt?

When **EXHIBIT F** was submitted to the Court it was objected by Appellant on the grounds of hearsay and authenticity. Afterward Appellee's attorney asked "this is your handwriting. Right? Answer "That is my handwriting. The court then admitted the document. **5RR 687** This document was written on the Land America Lawyers Title Company of San Antonio ("Title company") s email on August 21, 2007 and the document was handwritten on September 17, 2007. The self serving handwriting, does not make the document authentic. .

In *Conner v, Johnson,* 02-03-31 6-cv (Tex App -Ft Worth 10-28-.2004)

> *"The* facts: stated :should not be. self-serving.
> *Travelers Companies. v. Wolfe* 838 S.W.2d 708, 714
> *(citing Duncan v Smith, 393 S W 2d 798, 803*04 (Tëx. 1
> *965))* (holding that not only should the statement be
> against interest but also that the "facts stated" should be
> against interest because that increases the. likelihood of.
> its truth)

This document **EXHIBIT F** is completely self -serving and should not have been admitted and the Court abused its discretion by allowing **EXHIBIT F** to be in evidence and has caused an improper judgment of the Temporary Injunction. Hearing of December 9-11,2013 and this Final judgment and Sanction Order.

The document **EXHIBIT F** was not presented in 2013-Cl-17516 as a exhibit to show Ownership. Ownership was questioned by Robert Ripley in a email dated February 8, 2008 .**5RR573**  The Banker Scott Morrison, **5RR 705** who issued the $1.2 million transfer on September 17, 2007 but  on  October 22, 2007 did not  have any documentation as to the ownership of the stock of Helvetia . **5RR 704-705.**  If Morrison did not have any documentation , then Morrison did not get  **EXHIBIT F.**  Robert Ripley testified that the funds came from the Ripley family trust.**5RR571**,

It **EXHIBIT F** is proof  of ownership, then the stock certificate mentioned above must be of forgery.  There was only 1000 shares available so there can be only one sale.

In *Solano v. Landamerica Commw.*, 02-07-152-cv (Tex.App.-Ft. Worth 12-4-2008)  states:

> If a person signs another's name to a document with authority to do so, there is no forgery. *See In re Estate of Flores*, 76 S.W.3d 624, 630 (Tex.App.-Corpus Christi 2002, no pet.) (explaining that "forgery is defined as altering, making, completing, executing, or authenticating a writing so that it purports to be the act of another who did not authorize that act"); *First Coppell Bank v. Smith*, 742 S.W.2d 454, 460 (Tex.App.-Dallas 1987, no writ), *overruled on other grounds, Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 678 (Tex. 2000) (concluding that forgery was established because the witness testified "unequivocally that she did not authorize anyone to sign her name to the deed of trust");

In this case the stock certificate was altered by placing a signature that was Moore's and thus is a forgery.

## MINUTES OF THE ORGANIZATIONAL MEETING

In order to get the minutes to correct the Inc. or Ltd. suffixes,, Ripley submitted to the court Exhibit 39 **EXHIBIT J** which he called a kit. Ripley claimed that was provided by Mr. Terry George. **5RR735** George testified that he never provided any copies to anyone but Burt Kahn. **5RR 544** George testified that Exhibit 39 **EXHIBIT J** was not his work. **5RR 549,--5RR 557** Exhibit 39 **EXHIBIT J** was comprised of an instructional transmittal letter, By Laws and the initial meeting minutes of August 8, 2,007. The transmittal does not have any information on who has sent it nor a signature but it does state to review and call if there are any changes. **5RR 851-882** The By Laws and initial minutes have George's signature on dated August 8, 2007 as if to make these documents final. George testified that the signatures looked like his but the documents were not the documents George gave to Kahn. **5RR 548** The shares to be issued to Puerto Verde, Inc. 1000. is written in pencil . **5RR 553** Also per August 8, 2007 minutes state that George resigned on August 8, 2007. Robert testified that he received Exhibit 39 **EXHIBIT J** by courier in Canada but does not have any envelope that it came in. **5RR 738** Ripley testified that this document was specially flown in to San Antonio from Canada for the injunction hearing. **5RR 711** The bylaws state

17

in pencil the offices to be 6751 Walzem which is different from the minutes of August 17, 2007 which has George's address. **5RR 393**

## QUESTIONS FROM EVIDENCE PRESENTED

1. What was the date that Puerto Verde Ltd purchased the stock?

a)Was it on August 20, 2007, on the certificate form signed by Moore who never received any funds and never issued stock and was never a custodian of records and who did not sign the third signature on the certificate that was faxed without fax markings?

b) Was the date September 17, 2007 the wiring instructions from Morrison who never knew of the transfer instructions and from the funds of the  Ripley Family Trust and not from Puerto Verde  Ltd.'s Bank account.

2. Who purchased the stock of Helvetia?

a) Was the purchase on August 20, 2007, Puerto Verde Inc or  Puerto Verde Ltd?

b) Was the purchase on September 17, 2007 Puerto Verde Inc or Ltd ?

c) Was the purchase  on September 17,, 2007 Stock was not for Helvetia but for Hold Co

d) On September 17, 2007 the transfer funds came from the Ripley Family Trust per testimony of Ripley, **5RR 571** Is the owner of the shares per the handwritten note, the Ripley Family Trust?

18

e) There are no bank statements for these transfers. Who did them?

3. What is the date of the minutes of the organizational of Helvetia?

a) Was the date on August 17, 2007, as per Case No 2013-CI-17516 or August 8, 2007 per Exhibit 39 **EXHIBIT J**?

b) Was the date per Organizer, attorney George or was it according to the specially flown in to the hearing document with blanks and penciled fill ins?

The maneuvers of Appellee show that a conspiracy occurred and that there is a great deal of perjury in regards to the ownership of the stock of Helvetia. Appellant requests that this Appellate Court inform the District Attorney of Bexar County to investigate the possibility of Subornation of Perjury by Werner A, Powers and Lisa S. Barkley.

## CONCLUSION ISSUE 2

Based on the evidence presented and in the questions that have arisen from this evidence establishes that Petterson did not file a frivolous motion because he had evidentiary support for each allegation.

## ISSUE 3

3 Court Did Not Have Authority To Impose Sanctions On Unenforceable Rule 11 Agreement

The trial court Judge Tanner imposed Sanctions on Appellant. April 1, 2014. Court Order 1....based, on the attempted withdrawal of the unauthorized Rule

11Agreement. **3CR 229** At the Injunction. hearing on December: 9,, 2013 to December 11, 2013 the issue to enforce the Rule 11 Agreement was brought to the court, Judge Pozza stated .".Well I am not. sure ..... You can brief it if you like, but I'm not sure the Court can enforce the Rule 11 Agreement, because it does not seem that Mr. Kahn perhaps either never consented. or withdrew his consent'" Thus Judge Pozza ruled orally that without a motion or a briefing she could, not enforce the Rule 11 Agreement. There was never any further motions or briefing. In InRe *Guerrero,* 440 S.W.3d 917 (Tex.App.-Amarillo-2014)

> Rendition of judgment is the pronouncement by the court of its conclusions and decision upon the matter submitted to it for adjudication. *Buffalo Bag Co. v. Joachim,* 704 *S* W 2d 482, 483 (re App -Houston [1 [4th] Dist 11986, writ refd nre.). A trial court .renders judgment when it officially announces its decision either orally in open court or by a memorandum filed with the clerk of the court *CometAluminum Co v Dibrell,* 450 S W 2d *56,* 58 (Tex 1970) (ong proceeding) If a trial court's order is adequately reflected in the reporter's record, a formal written order is not essential to obtaining mandamus relief

Prior to any additional motions or briefs the Court had stated it was "not sure". This is defined as reasonable doubt, *Ex Parte Preston,* 833 8W.24 *515* (Tex.Cr.App.1 992). The issues were decided not to enforce the Rule 11 Agreement at that time unless subsequent¯Action was done to further litigate the validity of the Rule 11 Agreement. No subsequent action occurred and therefore the Court could not enforce the Rule 11 Agreement. This makes the Rule 11

Agreement unenforceable. With no subsequent action the Rule 11 Agreement was fully litigated and collaterally, estoppel will prevent the Rule 11 Agreement from any other action.

Kahn did not review the Rule 11 Agreement prior to it being signed by Petterson. The employment. contract (**EXHIBIT D) 5RR 284-291** between Kahn and Peterson states on page 3 that "it is the attorney's responsibility to advise you on legal ramifications of the decisions but- you must make. the actual decision s" Kahn did not make that decision to sign away 100% of Appellant's work that he had done and get 0% back. When Kahn realized that Petterson had signed away Kahn's rights including a jury trial Kahn fired. Petterson. **55RR 464** The withdrawal of the rule 1.1 agreement is a Contract RIGHT. In *Gym-N-I Playgrounds v. Snider*, 220 S.W. 3d 905 (Tex. 2007)

> Texas strongly favors parties freedom of contract *BMG Direct Mktg.,Inc.v. Peake*, 178 S.W.3d 7763,767 (Texas 2005)

In *Burnaman v. Heaton*, 150 Tex. 333 (1951)240 S.W.2d 288

> "The judgment was rendered on the agreement of the attorneys and was therefore a consent judgment. 25 Tex.Jur., p. 385, et seq.; 49 C.J.S., Judgments, § 173, page 308, et seq. A valid consent judgment cannot be rendered by a court when consent of one of the parties thereto is wanting."

This sentiment is echoed in many cases:

In *City of Roanoke v. T. of Westlake*, 111 S.W.3d 617 (Tex.App.-Ft. Worth 2003)

"We agree that an attorney retained for litigation is presumed to possess authority to enter into a settlement on behalf of a client. *Williams v. Nolan*, 58 Tex. 708, 713-14 (1883); *Walden v Sanger*, 250 S.W.2d 312, 316; *Dunlap v. Villareal*, 91 S.W.2d 1124, 1125 (Tex.Civ.App.-San Antonio 1936, no writ). This is a presumption of *actual* authority, however, and may be rebutted by affirmative proof that the client did not authorize his attorney to enter into the settlement. *Walden*, 250 S.W.2d at 316; *Johnson v. Rancho Guadalupe, inc.*, 789 S.W.2d 596, 598 (Tex. App. - Texarkana 1990, writ denied) (op. on rehg) (noting that there is no implied authority for an attorney to release the very right or interest he is employed to protect); *Fail v. Lee*, 535 S.W.2d 203, 207-08 (Tex. Civ.App. -Fort Worth 1976, no writ)"

In *Johnson v. Rancho Guadalupe Inc.*, 789 S.W.2d 596 (Tex.App.-Texarkana 1 990)

An attorney is a special agent and is presumed to have authority to act for, and institute legal proceedings in behalf of any person whom he professes to represent. *Slattery v. Adams*, 279 S.W.2d 445 (Tex.Civ.App. - Beaumont 1954), *affirmed*, 156 Tex. 433, 295 S.W.2d 859 (1956). However, there is no implied authority for an attorney to release the very right in interest he has been employed to secure and protect. *Cetti v. Dunman*, 26 Tex. Civ. App. 433 [26 Tex. Civ. App. 433], 64 S.W. 787 (1901, writ refd). By virtue of his employment, an attorney does not have an implied power to compromise an action which he has been engaged to defend. *Early v. Burns*, 142 S.W.2d 260 (Tex.Civ.App. - Beaumont 1940, writ refd). A compromise by an attorney without his clients knowledge or consent, which has the effect of depriving the client of his day in court, is an unauthorized act. *Pierce v. Terra Mar Consultants, inc.*, 566 S.W.2d 49 (Tex.Civ.App. - Texarkana 1978, writ dismd). Where a substantial right has been violated by the attorneys entering into an unauthorized compromise agreement, a judgment based thereon will be set aside. *McMillan v. McMillan*, 72 S.W.2d 611 (Tex.Civ.App. - Dallas 1934, no writ).

Thus Appellant had a right to withdraw from the Rule 11 Agreement and it was an abuse of discretion for the Court to make an arbitrary and unreasonable order.

## ISSUE 4

Ruling on ownership was not set for the Sanction Hearing.

The Courts first statement t was "So we're not on the merits today? **2RR 5** The court stated on the issue of who owns the stock, "Well that's a subject of a different type of motion that is the one right now. But you're certainly welcome to urge that to some court when you file a proper motion." 3**RR 20**.

Thus the court declared that the ownership of the stock was not in her subject matter jurisdiction at the hearing.

In Entergy Corp. v. Jenkins, 01-12-00470-cv (Tex.App.-Houston [1st Dist.] 11-6-2014) states:

> "Subject matter jurisdiction is 'essential to a court's power to decide a case.'" *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000)). "Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 578 (Tex. 2013) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431, 127 S.Ct. 1184, 1191 (2007)). "The failure of a jurisdictional requirement deprives the court of the power to act (other than to

**11**

determine that is has no jurisdiction), and ever to have acted, as a matter of law." *City of DeSoto v. White*, 288 S.W.3d 359, 393 (Tex. 2009) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex. 2004)). Thus, "[a] judgment is void if rendered by a court without subject matter jurisdiction." *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 309 (Tex. 2010) (orig. proceeding). "[N]ot only *may* an issue of subject matter jurisdiction 'be raised for the first time on appeal by the parties or by the court', a court is *obliged* to ascertain that subject matter jurisdiction exists regardless of whether the parties questioned it." *Id.* at 306 (quoting *Loutzenhiser*, 140 S.W.3d at 358) (emphasis in original); *City of Allen v. Pub. Util. Comm'n of Tex.*, 161 S.W.3d 195, 199 (Tex.App.—Austin 2005, no pet.) ("[T]he question of jurisdiction is fundamental and can be raised at any time in the trial of a case or on appeal.").

## CONCLUSION ISSUE 4

By the Courts statement it had no jurisdiction to determine ownership at the hearing. Thus the Sanction Order is void.

## CONCLUSION

This Appellate Court should reverse the Final Judgment and Sanctions Order based on Tex, Civ. Prac. & Rem. Code Ann. § 10.004(d) does not authorize the award of monetary sanctions against Appellant for an act when Kahn was represented by counsel. Appellant was represented by counsel and any monetary sanctions should be stricken .

24

This Appellate Court should reverse the Final Judgment and Sanctions Order based on Appellant's filing under § 5 1.903 because all the allegations had evidentiary support and was not fictitious.

This Appellate Court should reverse the Final Judgment and Sanctions Order based on court did not have authority to impose sanctions on the withdrawal of an unenforceable Rule 11 Agreement.

This Appellate Court should reverse the Final Judgment and Sanctions Order based on Court Abused Its Discretion Because It Lacked Jurisdiction To Rule On Ownership Of Stock.

## **PRAYER**

For the reasons, Appellant prays that this Honorable Court of Appeals will reverse the Final Judgment and Sanctions Order

Respectfully submitted,

Burton Kahn. Pro-se
1706 Alpine Cir.,
San Antonio, TX 78248
glentrail@yahoo.com
Tel (210) 408-9199

## **VERIFICATION**

State of Texas          §
County of Bexar         §        Tex. Civ. Prac. & Rem. Code §132.001

My name is Burton Kahn. I am over the age of 18 and am fully competent to make this unsworn declaration. My date of birth is in August 1933 and my address is 1706 Alpine Circle, San Antonio, Texas 78248. I declare under penalty of perjury that the foregoing is true and correct. Executed in Bexar County, State of Texas on the   day of August 5, 2015.

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word 2010, this brief contains 5,889 words, excluding the caption, identity of the parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, citations to record, signature, proof of service, certificate of compliance, and appendix, pursuant to Tex. R. App. P. 9.4.

Burton Kahn Pro-se

## CERTIFICATE OF SERVICE

I certify that a copy of this Motion was served on Appellee, Helvetia Asset Recovery Inc. through counsel of record on August 5, 2015 by

Elizabeth Conry Davidson
Attorney at Law
926 Chulie Drive
San Antonio, Texas 78216
(210) 380-4899 telephone
(210) 225-2300 facsimile
conrydavidson@gmail.com

Burton Kahn Pro-se

# APPENDIX

A. Motion 2013-CI-17516 **5RR 314 DF EX 5**

B. Motion 2013-CI-18394  **1CR1. 5RR 6  PL Ex 1**

C. Final Judgment and Sanction Order  **3CR229**

D. Petterson Contract.**5RR 284  DF Ex 1**

E. Statute § 51.903

F.Wiring Instructions Handwritten Receipt **5RR 226 PL Ex 21**

G.Appellee's Stock certificate in 2013-CI-17516 **5RR 327 DF Ex 4**

H. Appellant's Stock certificate **5RR 93  Pl Ex 4**

J.  Exhibit 39 **5RR 840 DF Ex10**

# EXHIBIT A

SCANNED



MISC. DOCKET NO. 2013-CI-17516

| | | |
|---|---|---|
| IN RE: A PURPORTED LIEN | § | IN THE DISTRICT COURT |
| OR CLAIM AGAINST HELVETIA | § | |
| ASSET RECOVERY, INC. | § | 438TH JUDICIAL DISTRICT |
| | § | |
| Property Owner | § | BEXAR COUNTY, TEXAS |
| | § | |

## JUDICIAL FINDING OF FACT AND CONCLUSION OF LAW REGARDING A DOCUMENT OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM

On the 23rd day of October , 2013, in the above entitled and numbered cause, this Court reviewed a motion, verified by affidavit, of Robert Ripley and the documentation attached thereto. Additionally, the Court reviewed the "Warranty Deed" and "Correction Warranty Deed" attached hereto. No testimony was taken from any party, nor was there any notice of the Court's review, the Court having made the determination that a decision could be made solely on review of the documentation under the authority vested in the Court under Subchapter J, Chapter 51 of the Texas Government Code.

The Court finds as follows: the Warranty Deed, attached hereto as Exhibit 1; the Revised Warranty Deed, attached hereto as Exhibit 2; and the Correction Warranty Deed, attached hereto as Exhibit 3 (collectively, the "Warranty Deeds"), are NOT created by implied or express consent or agreement of the obligor, debtor, or the owner of the real property or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person. The Warranty Deeds, attached hereto as Exhibits 1-3, do not grant Paradiv Corporation any interest in the property described therein.

The Court makes no finding as to any underlying claims of the parties involved, and expressly limits its finding of fact and conclusion of law to the review of a ministerial act. The

Case Number: JUDICIAL FINDING OF FACT AND CONCLUSION OF LAW REGARDING
A DOCUMENT OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM JUDICIAL FINDING OF A FACT AND CONCLUSION OF LAW REGARDI

Page 1 of 12

Book 16403 Page 313 12pgs

county clerk shall file this finding of fact and conclusion of law in the same class of records as the subject documentation or instrument was originally filed, and the court directs the county clerk to index it using the same names that were used in indexing the subject documentation or instrument.

Signed on this the 23rd day of October, 2013.

DISTRICT JUDGE
438 Judicial District
Bexar County, Texas

Case Number: 2013CI17516

JUDICIAL FINDING OF FACT AND CONCLUSION OF LAW REGARDING
A DOCUMENT OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM

JUDICIAL FINDING OF A FACT AND CONCLUSION OF LAW REGARDI
Page 2
Page 2 of 12

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# WARRANTY DEED

**Grantor :**    HELVETIA ASSET RECOVERY, INC.
BEXAR COUNTY TEXAS

**GRANTEE :**    PARADIV CORPORATION
BEXAR COUNTY, TEXAS

Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT 1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 .
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 .
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK 4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 ,
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 ,

BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 .
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 ,
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 .
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 .
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

Book 16387    Page 878    3pgs

EXHIBIT 1

BLOCK 7 LOT 44, BLOCK 7 LOT 45, BLOCK 7 LOT 46, BLOCK 7 LOT 47, BLOCK 7 LOT 48, BLOCK 7 LOT 49, BLOCK 7 LOT 50, BLOCK 7 LOT 51, BLOCK 7 LOT 52, BLOCK 7 LOT 53, BLOCK 7 LOT 54, BLOCK 7 LOT 55, BLOCK 7 LOT 56, BLOCK 7 LOT 57, BLOCK 7 LOT 58, BLOCK 7 LOT 59, BLOCK 7 LOT 60, BLOCK 7 LOT 61, BLOCK 7 LOT 62, BLOCK 7 LOT 63, BLOCK 7 LOT 64, BLOCK 7 LOT 65, BLOCK 7 LOT 66, BLOCK 8 LOT 1,

BLOCK 8 LOT 2, BLOCK 8 LOT 3, BLOCK 8 LOT 4, BLOCK 8 LOT 5, BLOCK 8 LOT 6, BLOCK 8 LOT 18, BLOCK 8 LOT 19, BLOCK 8 LOT 20, BLOCK 8 LOT 21, BLOCK 8 LOT 22, BLOCK 8 LOT 23, BLOCK 8 LOT 24, BLOCK 8 LOT 25, BLOCK 8 LOT 26, BLOCK 8 LOT 27, BLOCK 8 LOT 28, BLOCK 8 LOT 29, BLOCK 8 LOT 30, BLOCK 8 LOT 31, BLOCK 8 LOT 32, BLOCK 8 LOT 33, BLOCK 8 LOT 34,

BLOCK 9 LOT 1, BLOCK 9 LOT 2, BLOCK 9 LOT 3, BLOCK 9 LOT 4, BLOCK 9 LOT 5, BLOCK 9 LOT 6, BLOCK 9 LOT 7, BLOCK 9 LOT 8, BLOCK 9 LOT 9, BLOCK 9 LOT 10, BLOCK 9 LOT 11, BLOCK 9 LOT 12, BLOCK 9 LOT 13, BLOCK 9 LOT 14, BLOCK 9 LOT 15, BLOCK 9 LOT 16, BLOCK 9 LOT 17, BLOCK 9 LOT 18, BLOCK 9 LOT 19, BLOCK 9 LOT 20, BLOCK 9 LOT 21, BLOCK 9 LOT 22, BLOCK 9 LOT 23, BLOCK 9 LOT 24, BLOCK 9 LOT 25, BLOCK 9 LOT 26, BLOCK 9 LOT 27, BLOCK 9 LOT 28, BLOCK 9 LOT 29, BLOCK 9 LOT 30, BLOCK 9 LOT 31, BLOCK 9 LOT 32, BLOCK 9 LOT 33, BLOCK 9 LOT 34, KEY LARGO SUBDIVISION CB 0506S IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:
Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT
ACKNOWLEDGMENT

This instrument was acknowledged before me on September 30, 2013 by Burton Kahn, President, Helvetia Asset Recovery, Inc.





SEP 3 0 2013

COUNTY CLERK BEXAR COUNTY, TEXAS

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# *REVISA* WARRANTY DEED

**Grantor :**  HELVETIA ASSET RECOVERY, INC.
BEXAR COUNTY TEXAS

**GRANTEE :**  PARADIV CORPORATION
BEXAR COUNTY, TEXAS

Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT 1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 .
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 ,
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK 4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 ,
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 ,

BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 ,
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 ,
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 ,
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 ,
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

Book 16376  Page 1957   3pgs

EXHIBIT 2

BLOCK 7 LOT 44 , BLOCK 7 LOT 45 , BLOCK 7 LOT 46 , BLOCK 7 LOT 47 , BLOCK 7 LOT 48 ,
BLOCK 7 LOT 49 , BLOCK 7 LOT 50 , BLOCK 7 LOT 51 , BLOCK 7 LOT 52 , BLOCK 7 LOT 53 ,
BLOCK 7 LOT 54 , BLOCK 7 LOT 55 , BLOCK 7 LOT 56 , BLOCK 7 LOT 57 , BLOCK 7 LOT 58 ,
BLOCK 7 LOT 59 , BLOCK 7 LOT 60 , BLOCK 7 LOT 61 , BLOCK 7 LOT 62 , BLOCK 7 LOT 63 ,
BLOCK 7 LOT 64 , BLOCK 7 LOT 65 , BLOCK 7 LOT 66 , BLOCK 8 LOT 1 ,

BLOCK 8 LOT 2 , BLOCK 8 LOT 3 , BLOCK 8 LOT 4 , BLOCK 8 LOT 5 , BLOCK 8 LOT 6 ,
BLOCK 8 LOT 18 , BLOCK 8 LOT 19 , BLOCK 8 LOT 20 , BLOCK 8 LOT 21 , BLOCK 8 LOT 22 ,
BLOCK 8 LOT 23 , BLOCK 8 LOT 24 , BLOCK 8 LOT 25 , BLOCK 8 LOT 26 , BLOCK 8 LOT 27 ,
BLOCK 8 LOT 28 , BLOCK 8 LOT 29 , BLOCK 8 LOT 30 , BLOCK 8 LOT 31 , BLOCK 8 LOT
32 , BLOCK 8 LOT 33 , BLOCK 8 LOT 34 ,

BLOCK 9 LOT 1 , BLOCK 9 LOT 2 , BLOCK 9 LOT 3 , BLOCK 9 LOT 4 , BLOCK 9 LOT 5 ,
BLOCK 9 LOT 6 , BLOCK 9 LOT 7 , BLOCK 9 LOT 8 , BLOCK 9 LOT 9 , BLOCK 9 LOT 10 ,
BLOCK 9 LOT 11 , BLOCK 9 LOT 12 , BLOCK 9 LOT 13 , BLOCK 9 LOT 14 , BLOCK 9 LOT 15
, BLOCK 9 LOT 16 , BLOCK 9 LOT 17 , BLOCK 9 LOT 18 , , BLOCK 9 LOT 19 , BLOCK 9 LOT
20 , BLOCK 9 LOT 21 , BLOCK 9 LOT 22 , BLOCK 9 LOT 23 , BLOCK 9 LOT 24 , BLOCK 9
LOT 25 , BLOCK 9 LOT 26 , BLOCK 9 LOT 27 , BLOCK 9 LOT 28 , BLOCK 9 LOT 29 , BLOCK
9 LOT 30 , BLOCK 9 LOT 31 , BLOCK 9 LOT 32 , BLOCK 9 LOT 33 , BLOCK 9 LOT 34 ,
KEY LARGO SUBDIVISION CB 05065 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN
VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes;

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT
ACKNOWLEDGMENT

This instrument was acknowledged before me on October 4, 2013 by Burton Kahn, President, Helvetia Asset Recovery, Inc.





DCT 4 2013

COUNTY CLERK BEXAR COUNTY, TEXAS



NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# CORRECTION
# WARRANTY DEED

**Grantor:** HELVETIA ASSET RECOVERY, INC.
BEXAR COUNTY TEXAS

**GRANTEE:** PARADIV CORPORATION
BEXAR COUNTY, TEXAS



Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT 1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 ,
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 ,
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK 4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 ,
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 ,

BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 ,
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 ,
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 ,
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 ,
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

Book 16388  Page 1547  3pgs

BLOCK 7 LOT 44 , BLOCK 7 LOT 45 , BLOCK 7 LOT 46 , BLOCK 7 LOT 47 , BLOCK 7 LOT 48 ,
BLOCK 7 LOT 49 , BLOCK 7 LOT 50 , BLOCK 7 LOT 51 , BLOCK 7 LOT 52 , BLOCK 7 LOT 53 ,
BLOCK 7 LOT 54 , BLOCK 7 LOT 55 , BLOCK 7 LOT 56 , BLOCK 7 LOT 57 , BLOCK 7 LOT 58 ,
BLOCK 7 LOT 59 , BLOCK 7 LOT 60 , BLOCK 7 LOT 61 , BLOCK 7 LOT 62 , BLOCK 7 LOT 63 ,
BLOCK 7 LOT 64 , BLOCK 7 LOT 65 , BLOCK 7 LOT 66 , BLOCK 8 LOT 1 ,

BLOCK 8 LOT 2 , BLOCK 8 LOT 3 , BLOCK 8 LOT 4 , BLOCK 8 LOT 5 , BLOCK 8 LOT 6 ,
BLOCK 8 LOT 18 , BLOCK 8 LOT 19 , BLOCK 8 LOT 20 , BLOCK 8 LOT 21 , BLOCK 8 LOT 22 ,
BLOCK 8 LOT 23 , BLOCK 8 LOT 24 , BLOCK 8 LOT 25 , BLOCK 8 LOT 26 , BLOCK 8 LOT 27 ,
BLOCK 8 LOT 28 , BLOCK 8 LOT 29 , BLOCK 8 LOT 30 , BLOCK 8 LOT 31 , BLOCK 8 LOT
32 , BLOCK 8 LOT 33 , BLOCK 8 LOT 34 ,

BLOCK 9 LOT 1 , BLOCK 9 LOT 2 , BLOCK 9 LOT 3 , BLOCK 9 LOT 4 , BLOCK 9 LOT 5 ,
BLOCK 9 LOT 6 , BLOCK 9 LOT 7 , BLOCK 9 LOT 8 , BLOCK 9 LOT 9 , BLOCK 9 LOT 10 ,
BLOCK 9 LOT 11 , BLOCK 9 LOT 12 , BLOCK 9 LOT 13 , BLOCK 9 LOT 14 , BLOCK 9 LOT 15
, BLOCK 9 LOT 16 , BLOCK 9 LOT 17 , BLOCK 9 LOT 18 , BLOCK 9 LOT 19 , BLOCK 9 LOT
20 , BLOCK 9 LOT 21 , BLOCK 9 LOT 22 , BLOCK 9 LOT 23 , BLOCK 9 LOT 24 , BLOCK 9
LOT 25 , BLOCK 9 LOT 26 , BLOCK 9 LOT 27 , BLOCK 9 LOT 28 , BLOCK 9 LOT 29 , BLOCK
9 LOT 30 , BLOCK 9 LOT 31 , BLOCK 9 LOT 32 , BLOCK 9 LOT 33 , BLOCK 9 LOT 34 ,
KEY LARGO SUBDIVISION CB 09065 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN
VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not, all presently
recorded instruments, other than liens and conveyances, that affect the property, taxes for the current
year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations
from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property,
together with all and singular the rights and appurtenances thereto in any wise belonging to have and
hold it to Grantee, Grantee's heirs, executors, administrators, successors or assigns forever. Grantor
binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever
defend all and singular the property to Grantee and Grantee's heirs, executors, administrators,
successors and assigns against every person whomsoever lawfully claiming or to claim the same or any
part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

This correction Deed is filed to correct the acknowledgment of the original.

_[signature]_

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT

ACKNOWLEDGEMENT

This instrument was acknowledged before me on October 11, 2013 by Burton Kahn
President, Helvetia Asset Recovery, Inc. on behalf of that corporation.

_[signature]_

NOTARY PUBLIC, STATE OF TEXAS

HEATHER SILVA
Notary Public
State of Texas
My Comm. Exp. 03-28-2016

DISTRICT COURT OF BEXAR COUNTY, TX



OCT 11 2013



COUNTY CLERK BEXAR COUNTY, TEXAS

Document scanned as filed.

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*October 24, 2013*

**DONNA KAY McKINNEY**
**BEXAR COUNTY, TEXAS**

By: *Alex Lewicke*
ALEX LEWICKE, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERK'S ORIGINAL SIGNATURE)*

Doc# 20130221775 Fees: $60.00
10/24/2013 3:42PM # Pages 12
Filed & Recorded in the Official
Public Records of BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

Any provision herein which restricts the sale, or use of the described real
property because of race is invalid and unenforceable under Federal law.
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on
this date and at the time stamped hereon by me and was duly RECORDED
in the Official Public Record of Real Property of Bexar County, Texas on

**OCT 2 4 2013**

COUNTY CLERK BEXAR COUNTY, TEXAS



2013CI17516 -P00001

MISC. 2013-CI-17516

438TH JUDICIAL DISTRICT COURT

IN RE: A PURPORTED LIEN
OR CLAIM AGAINST HELVETIA
ASSET RECOVERY, INC.

IN RE HELVETIA ASSET RECOVERY INC (TUS)...
DATE FILED: 10/21/2013
_____ JUDICIAL DISTRICT

Property Owner

BEXAR COUNTY, TEXAS

## MOTION FOR JUDICIAL REVIEW OF DOCUMENTATION OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM

Now comes Movant Helvetia Asset Recovery, Inc. ("Helvetia") and files this Motion for Judicial Review of Documentation or Instrument Purporting to Create a Lien or Claim (the "Motion") requesting a judicial determination of the status of documentation or an instrument purporting to create an interest in real property filed in the office of the Clerk of Bexar County, Texas, and in support of the Motion would respectfully show the Court as follows:

### I.

Helvetia is the owner of the real property described in the Revised Warranty Deed, attached hereto as Exhibit 1-G.

### II.

On October 4, 2013, in the exercise of the county clerk's official duties as County Clerk of Bexar County, Texas, the county clerk received and filed and recorded the Revised Warranty Deed, containing three pages. See Ex. 1-G. Said documentation purports to have granted certain real property from Helvetia to Paradiv Corporation. See id.

### III.

Helvetia alleges that the Revised Warranty Deed is fraudulent, as defined by Section 51.901(c)(2)(B) of the Texas Government Code, because such grant was not "created by implied or express consent or agreement of the . . . owner of the real or personal property . . . or by

**Document scanned as filed.**

MOTION FOR JUDICIAL REVIEW OF DOCUMENTATION
OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM.

Page 1

implied or express consent or agreement of an agent, fiduciary, or other representative of that person." TEX. GOV. CODE § 51.901(c)(2)(B). The documentation attached hereto shows that:

1. Puerto Verde, Inc. is the sole shareholder of Helvetica. *See* Exs. 1-A, 1-B, 1-C.

2. Burton Kahn acknowledged Puerto Verde, Inc. as the owner of Helvetia. *See* Ex. 1-D.

3. A meeting of the shareholders of Helvetia was called on September 16, 2013, electing Robert Ripley as President of Helvetia.

4. On September 20, 2013, Mr. Ripley advised Mr. Kahn not to act in any capacity on behalf of Helvetia.

Accordingly, the Revised Warranty Deed granting property from Helvetia to Paradiv Corporation is fraudulent because it was not created by the express consent of Helvetia, the owner of the real property, and was not created by the implied or express consent of the representative of Helvetia, Robert Ripley. *See* Tex. Gov. Code § 51.901(c)(2)(B). The Revised Warranty Deed should therefore not be accorded to grant Paradiv Corporation any interest in the property described in therein. *See* Ex. 1-G.

## IV.

Helvetia attests that assertions herein are true and correct.

## V.

Helvetia does not request the Court to make a finding as to any underlying claim of the parties involved and acknowledges that this motion does not seek to invalidate a legitimate lien or grant of property. Helvetia further acknowledges that Helvetia may be subject to sanctions, as provided by Chapter 10 of the Civil Practice and Remedies Code, if this motion is determined to be frivolous.

MOTION FOR JUDICIAL REVIEW OF DOCUMENTATION
OR INSTRUMENT PORPORTING TO CREATE A LIEN OR CLAIM.

Page 2.

## PRAYER

WHEREFORE, premises considered, Movant Helvetia Asset Recovery, Inc. respectfully requests that this Court review the attached documentation and enter an order determining that Paradiv Corporation has no interest in the property described in the Revised Warranty Deed, attached hereto as Exhibit 1-G, together with such other orders as the Court deems appropriate.

Respectfully submitted,

Werner A. Powers
State Bar No. 16218800
Natalie DuBose
State Bar No. 24077481
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR MOVANT HELVETIA ASSET RECOVERY, INC.**

D-2209212_1

MISC. DOCKET NO. _____

IN RE: A PURPORTED LIEN          §     IN THE DISTRICT COURT
OR CLAIM AGAINST HELVETIA        §
ASSET RECOVERY, INC.             §     _____ JUDICIAL DISTRICT
                                 §
     Property Owner              §     BEXAR COUNTY, TEXAS
                                 §

## AFFIDAVIT OF ROBERT RIPLEY

STATE OF TEXAS          §
                        §
COUNTY OF BEXAR         §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Robert Ripley, known to me to be the person whose name is subscribed below, who being duly sworn, deposed and states as follows:

1.     My name is Robert Ripley. I am over twenty-one (21) years of age, and I have never been convicted of a felony or of any crime involving moral turpitude. I am fully competent to make this Affidavit under oath. I am able to swear, and I hereby do swear, that all of the facts stated in this Affidavit are true and correct and within my personal knowledge.

2.     Attached hereto is Exhibit "A" is a true and correct copy of Helvetia Asset Recovery, Inc.'s ("Helvetia's") Certificate of Formation, effective August 2, 2007, showing that Helvetia is authorized to issue 1,000 shares of stock.

3.     Attached hereto as Exhibit "B" is a true and correct copy of the Minutes of the Organization Meeting of The Board of Directors of Helvetia Asset Recovery, Inc., a For-Profit Corporation, dated August 17, 2007, issuing 1,000 shares of stock to Puerto Verde, Ltd. *See* Exhibit "B" at 4.

<div style="border:1px solid black; display:inline-block; padding:4px;">EXHIBIT 1</div>

AFFIDAVIT OF ROBERT RIPLEY                                      PAGE 1

4. Attached hereto as Exhibit "C" is a true and correct copy of Share Certificate Number 001, dated August 20, 2007, certifying that Puerto Verde Inc. owns 1,000 shares of Helvetia stock.

5. I am president of Puerto Verde, Ltd. I have held the office of president of Puerto Verde, Ltd. since 2007.

6. Attached hereto as Exhibit "D" is a true and correct copy of correspondence and attachment dated February 20, 2008 from Burt Kahn to Robert (Bob) Ripley acknowledging Puerto Verde, Ltd. as the owner of Helvetia.

7. Attached hereto as Exhibit "E" is a true and correct copy of the Minutes of the Extraordinary Meeting of the Shareholders of Helvetia Asset Recovery Inc., dated September 16, 2013, electing Robert Ripley as President of Helvetia.

8. Attached hereto as Exhibit "F" is a true and correct copy of correspondence dated September 20, 2013, from Robert (Bob) Ripley to Burt Kahn, advising Mr. Kahn not to act in any capacity on behalf of Helvetia as of September 16, 2013.

9. Attached hereto as Exhibit "G" is a true and correct copy of a Revised Warranty Deed, dated and filed October 4, 2013 in Bexar County, Texas, purporting to transfer property listed from Helvetia to Paradiv Corporation, signed by Burton Kahn as "President of Helvetia Asset Recovery, Inc.".

10. Further Affiant sayeth not.

ROBERT RIPLEY

SWORN TO AND SUBSCRIBED before me on this 21th day of October, 2013.

Notary Public and for the State of Texas

[PERSONALIZED SEAL]

D-250021?_1



Certificate of Formation
For Profit Corporation

Helvetia Asset Recovery, Inc.

San Antonio, TX

Lloyd W. George

1000

☐ A. has a par value of $
☒ B. without par value

☒ C. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is: August 2, 2007

EXHIBIT "A"

# MINUTES OF THE ORGANIZATIONAL MEETING OF THE BOARD OF DIRECTORS OF HELVETIA ASSET RECOVERY, INC. A FOR-PROFIT CORPORATION

The organizational meeting of the Board of Directors of Helvetia Asset Recovery, Inc., a Texas business corporation (hereinafter "Business Corporation"), was held at 1715 Hadbury Lane, San Antonio, Texas 78248, on August 8, 2007.

The undersigned, being the sole member of the initial Board of Directors of Helvetia Asset Recovery, Inc. named in the Business Corporation's Certificate of Formation filed with the Secretary of State of Texas was present. The undersigned waived notice of the meeting as evidenced by the attached Waiver of Notice signed and appended thereto.

Lloyd George was appointed Chairman of the meeting and Lloyd George was appointed Secretary of the meeting.

## CERTIFICATE OF FORMATION

The Secretary then presented and read to the meeting a copy of the Certificate of Formation and reported that the original thereof was filed in the office of the Secretary of State of the State of Texas on August 1, 2007, and that the Secretary of State issued a formal Acknowledgement of Filing to the Business Corporation on that issue. The Secretary presented the Acknowledgement of Filing associated an approved duplicate of the Certificate of Formation as filed and it was ordered inserted into the corporate record book.

## BYLAWS

The Secretary then presented a proposed form of bylaws. The proposed bylaws were read to the meeting, considered and upon motion duly made, seconded and carried, were adopted as and for the Bylaws of the Business Corporation and ordered signed and inserted into the corporate record book. The Secretary of the Business Corporation was instructed to maintain a copy of the Bylaws of the principal office of the Business Corporation available for inspection by the shareholders of the Business Corporation.

## PRINCIPAL OFFICE

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation's principal office be located and maintained at 1715 Hadbury Lane, San Antonio, Texas, 78248 and that meetings of the Board of Directors from time to time may be held either at the principal office or at such other place as the board of directors shall from time to time order.

1

EXHIBIT "B"

# MINUTE BOOK AND CORPORATE RECORDS

The Secretary submitted to the meeting the corporate record book for maintenance of the Business Corporation's records. Upon motion duly made, seconded and carried, it was

**RESOLVED**, that the corporate record book is adopted as the record book of the corporation, and further;

**RESOLVED**, that the Business Corporation maintain appropriate corporate records in the corporate record book, including but not limited to originals, copies (or certified copies) of the Business Corporation's original and any developed, corrected or restated, Acknowledgment of Filing, Certificate of Formation, Bylaws, minutes of meetings of shareholders and directors, and written consents of shareholders and directors.

## DIRECTORS

The Chairman of the meeting then called for the election of officers of the Business Corporation. The following persons were nominated to the office preceding their name:

| Office | Name |
|---|---|
| President | Kenneth E. Moore |
| Secretary | Kenneth E. Moore |
| Treasurer | Kenneth E. Moore |

No further nominations being made the nominations were closed and the directors proceeded to vote on the nominees. The Chairman announced that the foregoing nominees were elected to the offices set before their respective names to serve at each at the pleasure of the Board of Directors or pursuant to the terms of any written employment agreement executed by the Business Corporation and the respective officer.

## SHARE CERTIFICATES

The Secretary submitted to the meeting a specimen share certificate proposed for use as the corporate certificate for shares. Upon motion duly made, seconded and carried, it was

**RESOLVED**, that the form of the share certificate presented to meeting is adopted to represent shares of the Business Corporation; that any issued certificates bear all legends and restrictions required by the Bylaws or resolution of the Business Corporation, corporate law, that any issued certificates comply with any requirements of the Bylaws or resolutions of the Business Corporation, contracts applicable law, and that the Secretary of the Business Corporation insert a specimen copy of said share certificate in the minute book of the Business Corporation.

2

I hereby certify that this is a true and correct copy of the original document

## ISSUANCE OF SHARES

Upon motion duly made, seconded and carried, it was

**RESOLVED**, that the Business Corporation issue 1000 shares of the Business Corporation's authorized shares of common stock (no par value), for a purchase price of $1.00, each, as follows:

| Name | No. of Shares | Consideration | Value |
|---|---|---|---|
| Puerto Verde, Ltd. | 1,000 | Cash | $1,000 |

Upon motion duly made, seconded and carried, it was

**RESOLVED**, that upon receipt of the consideration, the officers of the Business Corporation are authorized to issue share certificates to the persons named above and to obtain, if advisable, representations from any purchaser that the shares are being acquired for investment purposes and not for distribution, and further

**RESOLVED**, that the Board of Directors of the Business Corporation may upon such terms as the Board of Directors in its discretion may determine, issue authorized shares of the Business Corporation for consideration consisting of any tangible or intangible benefit to the Business Corporation or other property of any kind or nature, including cash, promissory notes, services performed, contracts for services to be performed, other securities of the Business Corporation, or securities of any other corporation, domestic or foreign, or other entity.

## BANK ACCOUNT

Upon motion duly made, seconded and carried, it was

**RESOLVED**, that the Business Corporation establish in its name one or more accounts with one or more financial institutions on such terms and conditions as may be agreed with said financial institutions; and that the officers of the Business Corporation are authorized to execute any resolutions required by said financial institutions for such accounts and to designate the person or persons authorized to write checks on such accounts on behalf of the Business Corporation.

## ORGANIZATIONAL COSTS

Upon motion duly made, seconded and carried, it was

**RESOLVED**, that the attorney's fees, filing fees and other expenses and charges incurred and that may be incurred by the Business Corporation or persons acting on behalf of the Business Corporation in connection with the formation of the Business Corporation are reasonable and shall be paid or reimbursed by the Business Corporation.

3

## FISCAL YEAR

Upon motion duly made, seconded and carried, it was

RESOLVED, that the fiscal year of the Business Corporation shall begin on January 1, and end on December 31, provided that the initial fiscal year of the Business Corporation shall begin as of the date hereof.

## TAXES

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation obtain information and instructions from the Internal Revenue Service, Comptroller of the State of Texas and other applicable taxing authorities regarding withholding and other taxes.

## LICENSES AND PERMITS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation are authorized to obtain on behalf of the Business Corporation all licenses and permits that may be required for the Business Corporation to carry out its lawful business and activities, and further,

RESOLVED, that the officers of the Business Corporation are authorized to do all things and take all action necessary to qualify the Business Corporation to carry out its lawful business and activities in compliance with applicable federal, state and local laws, ordinances and regulations.

## QUALIFICATION IN OTHER JURISDICTIONS

Upon motion duly made, seconded and carried, it was

RESOLVED, that for the purpose of authorizing the Business Corporation to do business in any state, territory or dependency of the United States or any foreign country in which it is necessary or expedient for the Business Corporation to transact business, the proper officers of the Business Corporation are hereby authorized to appoint and substitute all necessary agents or attorneys for service of process, to designate and change the location of all necessary statutory offices and to make and file all necessary certificates, reports, powers of attorney and other instruments as may be required by the laws of such state, territory, dependency or country to authorize the Business Corporation to transact business therein.

## FURTHER INSTRUCTIONS TO OFFICERS

Upon motion duly made, seconded and carried, it was

4

**RESOLVED**, that the officers of the Business Corporation are authorized and take all action necessary and helpful to carry out the above resolutions and the acts of the officers and any persons acting for the Business Corporation which are consistent with the above resolutions are ratified and adopted as the acts of the Business Corporation.

Upon motion duly made, seconded and carried, it was

**RESOLVED** that the signing of these minutes shall constitute full ratification thereof and waiver of notice of the meeting by the signatories.

Upon motion duly made, seconded and carried, it was

**RESOLVED** that Lloyd George resigned as an officer and director of the Business Corporation, and that resignation was accepted.

The Chairman asked whether there was any further business to come before the Directors at this meeting, and there being no response, the meeting was adjourned.

DATE: August 17, 2007.

_____
Lloyd George

## WAIVER OF NOTICE AND CONSENT

**RESOLVED**, that the undersigned, being the sole member of the initial Board of Directors of Helvetia Asset Recovery, Inc. named in the Business Corporation's Certificate of Formation filed with the Secretary of State of Texas, by approving the Minutes of the Organizational Meeting of the Directors, and by this resolution, does hereby waive notice of the time and place of the meeting, consents to the meeting and approves the contents of the Minutes of the Organizational Meeting of the Directors.

_____
Lloyd George
Date signed: August 17, 2007

5

I hereby certify that this
is a true and correct copy
of the original on file.



The shares represented by this certificate have not been registered under the Securities Act of 1933, as amended, or any applicable state securities laws, and may not be transferred, sold, or assigned unless so registered or unless an exemption from such registration is available.

Certificate Number 001                                          1,000 Shares

## INCORPORATED UNDER THE LAWS OF TEXAS

# HELVETIA ASSET RECOVERY INC.

This certifies that ___Pietro Verde Inc.___ owns 1,000 shares of $0.00 par value common stock of Helvetia Asset Recovery Inc., transferable only on the books of the corporation by the holder of this certificate in person, or by authorized agent, upon surrender of this certificate, properly endorsed.

In witness of the above, the corporation has caused this certificate to be signed by its authorized officers on August 29, 2007.

Kenneth E. Moore, President                    Kenneth E. Moore, Secretary

**Transfer Section**

For value received, I _____ transfer to _____ the shares represented by this certificate, and instruct the corporate Secretary to record this transfer on the books of the corporation. Transfer restrictions, if any, are shown above.

Dated this _____ day of _____

EXHIBIT "C"

From: Burt Kahn <glentrail@yahoo.com>
Date: Wed, Feb 20, 2008 at 10:43 AM
Subject: Fwd: Key Largo
To: Bob A Ripley <rancherobob@gmail.com>

Dear Bob:

See attached minutes of meeting whivh declares owwnership.

Please contact if you need more.
Burt


---------- Forwarded message ----------
From: Burt Kahn <glentrail@yahoo.com>
To: Title Suzan National <srdavis@nal.com>
Cc:
Date: Sun, 25 Nov 2007 10:46:43 -0800 (PST)
Subject: Key Largo
SEE ATTACHED

EXHIBIT "D"

**BURTON KAHN, P.E. AND ASSOCIATES**
1706 Alpine Circle
San Antonio, Texas 78248
(210) 408-9199
(210) 408-9198 FAX
Email glkahnll@yahoo.com
25 November 2007

North American Title Company
12500 San Pedro Avenue Suite 405
San Antonio, Texas 78216
(210) 494-0002
(210) 494-0003 FAX
srdavis@nat.com
ATTN: Ms. Suzanne R. Davis

Re: Key Largo

Dear Suzanne:

Enclosed is a copy of the Minutes of the Board of Director of Helvetia and a copy of the Controller of Public Accounts showing the Director Mr. Lloyd George.

Mr. George was the attorney who incorporated of Helvetia. His phone number is 210 408-8271, if you have any further questions.

I have a check for the Buyer difference.

Mr. Moore will be available for closing any time on Tuesday.

Please contact me if you have any questions and let me know when we can close.

If I can be of any further service, please contact me.

Thank you very much

Burton Kahn, P.E. and Associates

# MINUTES OF THE ORGANIZATIONAL MEETING OF
## THE BOARD OF DIRECTORS OF
## HELVETIA ASSET RECOVERY, INC.
## A FOR-PROFIT CORPORATION

The organizational meeting of the Board of Directors of Helvetia Asset Recovery, Inc., a Texas business corporation (hereinafter "Business Corporation"), was held at 1715 Hasbury Lane, San Antonio, Texas 78248, on August 8, 2007.

The undersigned, being the sole member of the initial Board of Directors of Helvetia Asset Recovery, Inc. named in the Business Corporation's Certificate of Formation filed with the Secretary of State of Texas, was present. The undersigned waived notice of the meeting as evidenced by the attached Waiver of Notice signed and appended hereto.

Lloyd George was appointed Chairman of the meeting and Lloyd George was appointed Secretary of the meeting.

## CERTIFICATE OF FORMATION

The Secretary then presented and read to the meeting a copy of the Certificate of Formation and reported that the original thereof was filed in the office of the Secretary of State of the State of Texas on August 1, 2007, and that the Secretary of State issued a formal Acknowledgment of Filing to the Business Corporation on that date. The Secretary presented the Acknowledgment of Filing annexed to an approved duplicate of the Certificate of Formation as filed and it was ordered inserted into the corporate record book.

## BYLAWS

The Secretary then presented a proposed form of bylaws. The proposed bylaws were read to the meeting, considered and upon motion duly made, seconded and carried, were adopted as and for the Bylaws of the Business Corporation and ordered signed and inserted into the corporate record book. The Secretary of the Business Corporation was instructed to maintain a copy of the Bylaws at the principal office of the Business Corporation available for inspection by the shareholders of the Business Corporation.

## PRINCIPAL OFFICE

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation's principal office be located and maintained at 1715 Hasbury Lane, San Antonio, Texas, 78248 and that meetings of the Board of Directors from time to time may be held either at the principal office or at such other place as the board of directors shall from time to time thereafter.

## MINUTE BOOK AND CORPORATE RECORDS

The Secretary submitted to the meeting the corporate record book for maintenance of the Business Corporation's records. Upon motion duly made, seconded and carried, it was

RESOLVED, that the corporate record book is adopted as the record book of the corporation, and further,

RESOLVED, that the Business Corporation maintain appropriate corporate records in the corporate record book, including but not limited to originals, copies or certified copies of the Business Corporation's original and any amended, corrected or restated, Acknowledgment of Filing, Certificate of Formation, Bylaws, minutes of meetings of shareholders and directors, and written consents of shareholders and directors.

## OFFICERS

The Chairman of the meeting then called for the election of officers of the Business Corporation. The following persons were nominated to the office preceding their name:

| Office | Name |
| --- | --- |
| President | Kenneth E. Moore |
| Secretary | Kenneth E. Moore |
| Treasurer | Kenneth E. Moore |

No further nominations being made the nominations were closed and the directors proceeded to vote on the nominees. The Chairman announced that the foregoing nominees were elected to the offices set before their respective names to serve as such at the pleasure of the Board of Directors or pursuant to the terms of any written employment agreement executed by the Business Corporation and the respective officer.

## SHARE CERTIFICATES

The Secretary submitted to the meeting a specimen share certificate proposed for use as the corporate certificate for shares. Upon motion duly made, seconded and carried, it was

RESOLVED, that the form of the share certificate presented to meeting is adopted to represent shares of the Business Corporation; that any issued certificates bear all legends and restrictions required by the Bylaws or resolution of the Business Corporation, contract or by law; that any issued certificates comply with any requirements of the Bylaws or resolution of the Business Corporation, contract or applicable law; and that the Secretary of the Business Corporation insert a specimen copy of said share certificate in the minute book of the Business Corporation.

2

## ISSUANCE OF SHARES

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation issue 1000 shares of the Business Corporation's authorized shares of common stock (no par value), for a purchase price of $1.00, each, as follows:

| Name | No. of Shares | Consideration | Value |
|------|---------------|---------------|-------|
| Puerto Verde, Ltd. | 1,000 | Cash | $1,000. |

Upon motion duly made, seconded and carried, it was

RESOLVED, that upon receipt of the consideration, the officers of the Business Corporation are authorized to issue share certificates to the persons named above and to obtain, if advisable, representations from any purchaser that the shares are being acquired for investment purposes and not for distribution, and further

RESOLVED, that the Board of Directors of the Business Corporation may upon such terms as the Board of Directors in its discretion may determine, issue authorized shares of the Business Corporation for consideration consisting of any tangible or intangible benefit to the Business Corporation or other property of any kind or nature, including cash, promissory notes, services performed, contracts for services to be performed, other securities of the Business Corporation, or securities of any other corporation, domestic or foreign, or other entity.

## BANK ACCOUNT

Upon motion duly made, seconded and carried, it was.

RESOLVED, that the Business Corporation establish in its name one or more accounts with one or more financial institutions on such terms and conditions as may be agreed with said financial institutions, and that the officers of the Business Corporation are authorized to execute any resolutions required by said financial institutions for such accounts and to designate the person or persons authorized to write checks on such accounts on behalf of the Business Corporation.

## ORGANIZATIONAL COSTS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the attorney's fees, filing fees and other expenses and charges incurred and that may be incurred by the Business Corporation or persons acting on behalf of the Business Corporation in connection with the formation of the Business Corporation are reasonable and shall be paid or reimbursed by the Business Corporation.

3

## FISCAL YEAR

Upon motion duly made, seconded and carried, it was

RESOLVED, that the fiscal year of the Business Corporation shall begin on January 1 and end on December 31, provided that the initial fiscal year of the Business Corporation shall begin as of the date hereof.

## TAXES

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation obtain information and instructions from the Internal Revenue Service, Comptroller of the State of Texas and other applicable taxing authorities regarding withholding and other taxes.

## LICENSES AND PERMITS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation are authorized to obtain on behalf of the Business Corporation all licenses and permits that may be required for the Business Corporation to carry on its lawful business and activities; and further,

RESOLVED, that the officers of the Business Corporation are authorized to do all things and take all action necessary to qualify the Business Corporation to carry out its lawful business and activities in compliance with applicable federal, state and local laws, ordinances and regulations.

## QUALIFICATION IN OTHER JURISDICTIONS

Upon motion duly made, seconded and carried, it was

RESOLVED, that for the purpose of authorizing the Business Corporation to do business in any state, territory or dependency of the United States or any foreign country in which it is necessary or expedient for the Business Corporation to transact business, the proper officers of the Business Corporation are hereby authorized to appoint and substitute all necessary agents or attorneys for service of process, to designate and change the location of all necessary statutory offices and to make and file all necessary certificates, reports, powers of attorney and other instruments as may be required by the laws of such state, territory, dependency or country to authorize the Business Corporation to transact business therein.

## FURTHER INSTRUCTIONS TO OFFICERS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation are authorized to do all things and take all action necessary and helpful to carry out the above resolutions and all acts of the officers and any persons acting for the Business Corporation which are consistent with the above resolutions are ratified and adopted as the acts of the Business Corporation.

Upon motion duly made, seconded and carried, it was

RESOLVED that the signing of these minutes shall constitute full ratification thereof and waiver of notice of the meeting by the signatories.

Upon motion duly made, seconded and carried, it was

RESOLVED that Lloyd George resigned as an office and director of the Business Corporation, and that resignation was accepted.

The Chairman asked whether there was any further business to come before the Directors at this meeting, and there being no response, the meeting was adjourned.

DATE: August 17, 2007.

_____
Lloyd George


## WAIVER OF NOTICE AND CONSENT

RESOLVED, that the undersigned, being the sole member of the initial Board of Directors of Helvetia Asset Recovery, Inc., named in the Business Corporation's Certificate of Formation filed with the Secretary of State of Texas, by approving the Minutes of the Organizational Meeting of the Directors, and by this resolution, does hereby waive notice of the time and place of the meeting, consents to the meeting and approves the contents of the Minutes of the Organizational Meeting of the Directors.

_____
Lloyd George
Date signed: August 17, 2007

5.





Corporation Search Results

## Officers and Directors
### HELVETIA ASSET RECOVERY INC

Return to Corporation Search Results

Officer and director information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. This information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.state.tx.us or Comptroller of Public Accounts, Open Government Division, PO Box 13528, Austin, Texas 78711.

| Title: | Name and Address: | Expiration/Resignation Date: |
|---|---|---|
| *DIRECTOR* | LLOYD GEORGE<br>P. O. BOX 460897<br>SAN ANTONIO , TX 78246 | |

Susan Combs
Texas Comptroller of Public Accounts

Window on State Government
Contact Us
Privacy and Security Policy
Accessibility Policy

## MINUTES OF THE EXTRAORDINARY
## MEETING OF THE SHAREHOLDERS
## OF HELVETIA ASSET RECOVERY INC.

The extraordinary meeting of Shareholders of the Corporation was held on the date and at the time and place set forth in the notices given to the shareholders:

There were present the following shareholders:

| Shareholder | No. of Shares |
|---|---|
| Puerto Verde Ltd (a Bahamas Corporation) by Robert Ripley, President | 1000 |

The meeting was called to order and it was moved, seconded, and unanimously carried that _Robert Ripley_ act as Chairman and that _John Ripley_ act as Secretary. A roll call was taken and the Chairman noted that all of the outstanding shares of the Corporation were represented in person or by proxy. Any proxies were attached to these minutes.

The minutes of the last meeting of the shareholders were not available.

Upon motion duly made, seconded, and carried, the following were elected directors and officers to replace the previous officers and directors for the following year:

| | |
|---|---|
| President | Robert Ripley |
| Director | John Ripley |
| Secretary | John Ripley |
| Registered Agent for Service | John Ripley |
| | 13123 Jonathan Point San Antonio Tx |

It was unanimously carried that the Secretary of State be informed of the above changes.

There being no further business to come before the meeting, upon motion duly made, seconded, and unanimously carried, it was adjourned.

Shareholder: _____ for Puerto Verde

Date: _September 16/2013_

Secretary: _____

EXHIBIT "E"

---------- Forwarded message ----------
From: rancherobob <rancherobob@gmail.com>
Date: Fri, Sep 20, 2013 at 11:13 AM
Subject: Minutes of the Meeting of the Shareholders of Helvetia Asset Recovery Inc.
To: Burt Kahn <glentrail@yahoo.com>, lonestarlawyer1@aol.com, "jasper47@netzero.net"
<jasper47@netzero.net>

Burt,

Please find attached the Minutes of the Extraordinary Meeting of the Shareholders of Helvetia Asset Recovery
Inc.

Be advised that as of the date of this meeting ( Sept 16, 2013) you are not to act in any capacity on behalf of
Helvetia Asset Recovery Inc.. Further, you need to turnover all business records, payroll records, IRS filings
and returns, as well as any contracts or other materials related to Helvetia. You must also surrender to new
management all bank accounts and provide a complete accounting for all receipts and disbursements up to date.

Thank you,

Robert Ripley
President
Helvetia Asset Recovery Inc.

EXHIBIT "F"

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# *REVISED* WARRANTY DEED

**Grantor :**    HELVETIA ASSET RECOVERY, INC.
BEXAR COUNTY TEXAS

**GRANTEE :**    PARADIV CORPORATION
BEXAR COUNTY, TEXAS

**Consideration:** TEN AND NO/100 DOLLARS and other good and valuable consideration

**Property (including any improvements)**

BLOCK 3 LOT 1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 ,
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 ,
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK 4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 ,
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 .

BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 ,
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 ,
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 ,
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 ,
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

Book 16376  Page 1857  Page:

EXHIBIT "G"

BLOCK 7 LOT 44 , BLOCK 7 LOT 45 , BLOCK 7 LOT 46 , BLOCK 7 LOT 47 , BLOCK 7 LOT 48 ,
BLOCK 7 LOT 49 , BLOCK 7 LOT 50 , BLOCK 7 LOT 51 , BLOCK 7 LOT 52 , BLOCK 7 LOT 53 ,
BLOCK 7 LOT 54 , BLOCK 7 LOT 55 , BLOCK 7 LOT 56 , BLOCK 7 LOT 57 , BLOCK 7 LOT 58 ,
BLOCK 7 LOT 59 , BLOCK 7 LOT 60 , BLOCK 7 LOT 61 , BLOCK 7 LOT 62 , BLOCK 7 LOT 63 ,
BLOCK 7 LOT 64 , BLOCK 7 LOT 65 , BLOCK 7 LOT 66 , BLOCK 8 LOT 1 ,

BLOCK 8 LOT 2 , BLOCK 8 LOT 3 , BLOCK 8 LOT 4 , BLOCK 8 LOT 5 , BLOCK 8 LOT 6 ,
BLOCK 8 LOT 18 , BLOCK 8 LOT 19 , BLOCK 8 LOT 20 , BLOCK 8 LOT 21 , BLOCK 8 LOT 22 ,
BLOCK 8 LOT 23 , BLOCK 8 LOT 24 , BLOCK 8 LOT 25 , BLOCK 8 LOT 26 , BLOCK 8 LOT 27 ,
BLOCK 8 LOT 28 , BLOCK 8 LOT 29 , BLOCK 8 LOT 30 , BLOCK 8 LOT 31 , BLOCK 8 LOT
32 , BLOCK 8 LOT 33 , BLOCK 8 LOT 34 ,

BLOCK 9 LOT 1 , BLOCK 9 LOT 2 , BLOCK 9 LOT 3 , BLOCK 9 LOT 4 , BLOCK 9 LOT 5 ,
BLOCK 9 LOT 6 , BLOCK 9 LOT 7 , BLOCK 9 LOT 8 , BLOCK 9 LOT 9 , BLOCK 9 LOT 10 ,
BLOCK 9 LOT 11 , BLOCK 9 LOT 12 , BLOCK 9 LOT 13 , BLOCK 9 LOT 14 , BLOCK 9 LOT 15
, BLOCK 9 LOT 16 , BLOCK 9 LOT 17 , BLOCK 9 LOT 18 , BLOCK 9 LOT 19 , BLOCK 9 LOT
20 , BLOCK 9 LOT 21 , BLOCK 9 LOT 22 , BLOCK 9 LOT 23 , BLOCK 9 LOT 24 , BLOCK 9
LOT 25 , BLOCK 9 LOT 26 , BLOCK 9 LOT 27 , BLOCK 9 LOT 28 , BLOCK 9 LOT 29 , BLOCK
9 LOT 30 , BLOCK 9 LOT 31 , BLOCK 9 LOT 32 , BLOCK 9 LOT 33 , BLOCK 9 LOT 34 ,
KEY LARGO SUBDIVISION CB 05066 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN
VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:
Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the content requires, singular nouns and pronouns include the plural.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT
ACKNOWLEDGMENT

This instrument was acknowledged before me on October 4, 2013 by Burton Kahn, President, Helvetia Asset Recovery, Inc.



OCT 4 2000

COUNTY CLERK BEXAR COUNTY, TEXAS



# EXHIBIT B



IN RE: A PURPORTED                  §        IN THE DISTRICT COURT

LIEN OR CLAIM AGAINST               §        _____ JUDICIAL DISTRICT
                                    §
HELVETIA ASSET RECOVERY, INC.       §        BEXAR COUNTY, TEXAS
       Property Owner               §

### MOTION FOR JUDICIAL REVIEW OF DOCUMENTATION OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM

Now comes, HELVETIA ASSET RECOVERY, INC., and files this motion requesting a

judicial determination of the status of documentation or an instrument purporting to create an interest

in real or personal property or a lien or claim on real or personal property or an interest in real or

personal property filed in the office of the Clerk of Bexar County, Texas, and in support of the

motion would show the Court as follows:

I.

HELVETIA ASSET RECOVERY, INC., Movant herein, owns the real property described

in the six (6)  Warranty Deeds with Vendor's Lien attached hereto and made a part hereof by

reference as **Exhibits A. B. C. D. E & F**.  See attached **Exhibit 1**. Affidavit of BURTON KAHN.

President of HELVETIA ASSET RECOVERY, INC., and **Exhibits A, B, C, D, E & F**.

II.

On September 18, 2013, in the exercise of the county clerk's official duties as County Clerk

of Bexar County, Texas, the county clerk received and filed three Warranty Deeds with Vendor's

Lien and recorded the documentation or instrument attached hereto and containing three pages each

for a total of 9 pages. (**Exhibits A, B & C**) Said documentation or instruments purport to have

created an interest in real property from  HELVETIA ASSET RECOVERY, INC.. to ACSBLDR,

Inc. d/b/a Stellar Homes.

1



Document
scanned as filed.

## III.

On October 28, 2013, in the exercise of the county clerk's official duties as County Clerk of Bexar County, Texas, the county clerk received and filed three Warranty Deeds with Vendor's Lien and recorded the documentation or instrument attached hereto and containing three pages each for a total of 9 pages. (**Exhibits D, E & F**) Said documentation or instruments purport to have created an interest in real property from HELVETIA ASSET RECOVERY, INC. ASSET RECOVERY, INC. to ACSBLDR, Inc. d/b/a Stellar Homes.

## IV.

Movant, HELVETIA ASSET RECOVERY, INC., alleges that the six (6) documents — namely, Warranty Deeds with Vendor's Lien, attached hereto as **Exhibits A, B, C, D, E & F** — are fraudulent, as defined by Section 51.901(c)(2), Government Code, and that the documentation or instruments do not grant any interest to ACSLBLDR, Inc., in the real property described in said Warranty Deeds with Vendor's Lien. The documents are fraudulent because Robert Ripley ("Ripley") was not President of HELVETIA ASSET RECOVERY, INC. on the dates the Warranty Deeds were signed, or any date for that matter, and the documents purporting to transfer shares of the company to a non-existent corporation also is fraudulent as a forgery as described more fully below.

Texas Government Code, Section 51.901(c)(2)(B) provides:

(c) For purposes of this section, a document or instrument is presumed to be fraudulent if:
(2) the document or instrument purports to create a lien or assert a claim against real or personal property or an interest in real or personal property and:

. . .

(B) is not created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person; . . .

TEX. GOV'T CODE 51.901(c)(2)(B).

2

As described in the attached Affidavit of BURTON KAHN, attached hereto as Exhibit 1, attests and attaches certified documents that show the documents attached as Exhibits A, B, C, D, E & F, *were not* "created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person." Exhibit 1.

**--BURTON KAHN IS PRESIDENT OF GRANTOR, NOT ROBERT RIPLEY WHO PURPORTED TO SIGN AS PRESIDENT OF GRANTOR**

BURTON KAHN has been the President of HELVETIA ASSET RECOVERY, INC. from October 23, 2009 to the present -- not ROBERT RIPLEY who signed the Warranty Deeds with Vendor's Liens as President. Exhibit 1 and Exhibit G -- the certified copy of the management register of the Secretary of State of Texas showing officers of the Company. The records of the Texas Secretary of State, show that BURTON KAHN was not President of HELVETIA ASSET RECOVERY, INC. *only* during the period of September 27, 2013 until October 4, 2013, based on a fraudulent filing with the Texas Secretary of State by Robert Ripley who signature appears on all deeds as President of HELVETIA ASSET RECOVERY, INC. (Exhibit G includes said Certificate of Amendment fraudulently filed on September 27, 2013, by Robert Ripley). BURTON KAHN, at the filing of this motion is the President of HELVETIA ASSET RECOVERY, INC. and at all times material hereto is shown to be the President of HELVETIA ASSET RECOVERY, INC., including the dates of the deeds and signatures on the deeds. (Exhibit G). Exhibit H, management records of the Texas State Comptroller also confirm BURTON KAHN as President.

3

**–THE SIGNER OF THE DEEDS HAS BEEN DENIED AN ATTEMPT TO TAKE OVER THE BANK ACCOUNTS AS PRESIDENT OF THE GRANTOR**

On September 16, 2013, Robert Ripley ("Ripley") posing as president of HELVETIA ASSET RECOVERY, INC., submitted to Randolph Brooks Federal Credit Union ("Randolph Brooks") 50 pages of documentation, in an attempt to demonstrate to Randolph Brooks that he was entitled to take over the bank accounts of HELVETIA ASSET RECOVERY, INC.. However, Randolph Brooks refused to allow Ripley to take over the HELVETIA ASSET RECOVERY, INC. bank accounts. (Exhibit 1). Randolph Brooks then gave the documents supplied by Ripley to HELVETIA ASSET RECOVERY, INC.'s President, BURTON KAHN, on September 23, 2013. (Exhibit 1). HELVETIA ASSET RECOVERY, INC.'s President, BURTON KAHN, took these documents and reported this incident to City of Live Oak Police Department. (Exhibit 1, Exhibit I).

**–IN DOCUMENTS PRESENTED TO THE BANK BY THE SIGNER OF THE DEEDS WAS A CERTIFICATE OF STOCK TO A NON-EXISTENT ENTITY CONTAINING FORGED SIGNATURES**

Included in the 50 pages supplied by Ripley to Randolph Brooks, was a fraudulent Certificate of Stock claiming that Puerto Verde Inc. owns 1000 shares of HELVETIA ASSET RECOVERY, INC. and dated Monday, August 20, 2007. (Exhibit J). This Certificate is fraudulent as shown by several facts. First, this document is a fraudulent document because Exhibit J is not the proper form to demonstrate share ownership of HELVETIA ASSET RECOVERY, INC.. Exhibit 1. Instead, Exhibit K is the form which was adopted and approved by the Board of Directors in the Minutes of The Organizational Meeting of The Board of Directors of HELVETIA ASSET RECOVERY, INC. on Friday, August 17, 2007. (Exhibit L). Page 2 of said Minutes states in part: "RESOLVED

4

that the form of the share certificates presented to the meeting is adopted to represent shares of the Business Corporation that any issue certificates bear all legends and restrictions required by the Bylaws or resolution of the Business Corporation...", and attached to the Minutes is the proper form, **Exhibit K,** not **Exhibit J.**

Second, Ripley's fraudulent certificate (which is **Exhibit J**) purports to be signed on Monday, August 20, 2007, and the Organizational Minutes (**Exhibit L**) was signed on Friday, August 17, 2007. There is no reason why, on the next business day following the signing of the Organizational Minutes, that the form should be change -- this is clearly a forgery. (**Exhibit 1.**) Additionally, the Organizational Minutes required Puerta Verde, Ltd. to pay $1,000.00 prior to the issuance of the stock certificates but the $1,000.00 was never paid. Additionally, the fraudulent certificate states Puerta Verde, Inc. purchased the stock -- not Puerta Verde, LTD. There is no Puerta Verde, **Inc.,** registered with the Secretary of State.

**Exhibit J** -- the fraudulent Stock Certificate was sent to Mr. Curtis Baggett, a document examiner and expert witness. **Exhibit M** is Mr. Baggett's affidavit and bibliography stating that Mr. Moore's signature on **Exhibit J** is a forgery. The forgery includes the two signatures on the Certificate as president and secretary.

V.

Movant, HELVETIA ASSET RECOVERY, INC., attests that assertions herein are true and correct.

VI.

Movant does not request the court to make a finding as to any underlying claim of the parties involved and acknowledges that this motion does not seek to invalidate a legitimate lien. Movant further acknowledges that movant may be subject to sanctions, as provided by Chapter 10, Civil Practice and Remedies Code, if this motion is determined to be frivolous.

5

## PRAYER

Movant Helveta requests the Court to review the attached documentation, Warranty Deeds with Vendor's Liens, attached as Exhibits A, B, C, D, E & F, and enter an Order determining that ABSBLDR, Inc, d/b/a Stellar Homes has no interest in the property described in Warranty Deeds with Vendor's Liens, attached as Exhibits A, B, C, D, E & F, together with such other orders as the Court deems appropriate.

Respectfully submitted,

ASSOCIATE ATTORNEY

Jay R. Petterson
State Bar No. 24045010
Jay R. Petterson, Attorney at Law, PLLC
12274 Bandera Rd., Ste. 210
Helotes, Texas 78023
Telephone (210) 695-6111
Facsimile (210) 695-6101
Attorney for Movant, HELVETIA ASSET
RECOVERY, INC.

LEAD ATTORNEY
L. Terry George
State Bar No. 07806000
1117 Castle Top
Fort Worth, Texas 76052
Telephone (210) 535-7717
Facsimile (682) 730-1119
Attorney for Movant, HELVETIA ASSET
RECOVERY, INC.

6

AFFIDAVIT

THE STATE OF TEXAS§·
COUNTY OF BEXAR§

BEFORE ME, the undersigned authority, personally appeared BURTON KAHN, who, being by me duly sworn, deposed as follows:

My name is BURTON KAHN. I am over 21 years of age, of sound mind, with personal knowledge of the following facts, and fully competent to testify.

"1.    Exhibits A, B, and C, attached to this Affidavit and made a part hereof by reference, are certified copies of three documents: namely three (3) deeds all dated September 18, 2013 and signed by Robert Ripley, purporting to sign said deeds as President of HELVETIA ASSET RECOVERY, INC., a Texas Corporation and the Grantor named in said deeds attached as Exhibits A, B, and C. Exhibit A is recorded in Volume 16354, Page 605; Exhibit B is recorded in Volume 16352, Page 1838; and Exhibit C is recorded in Volume 16411, Page 1610; all of said Exhibits recorded at said volume and page numbers in the Deed and Plat Records of Bexar County.

"a.    According to the Texas Secretary of State, Mr. Ripley was not the President of HELVETIA ASSET RECOVERY, INC. on September 18, 2013.

"2.    Exhibits D, E, and F, attached to this Affidavit and made a part hereof by reference, are certified copies of three documents; namely three (3) deeds all dated October 28, 2013, and signed by Robert Ripley, purporting to sign said deeds as the President of HELVETIA ASSET RECOVERY, INC., the Grantor named in said deeds attached. Exhibit D is recorded in Volume 16411, Page 718; Exhibit E is recorded in Volume 16411, Page 732; and Exhibit F is recorded in Volume 16411, Page 786, all of said Exhibits recorded at said volume and page numbers in the Deed and Plat Records of Bexar County.

1

Exhibit 1

"a.    According to the Texas Secretary of State, Mr. Ripley was not the President of HELVETIA ASSET RECOVERY, INC. on October 28, 2013.

"3.    I, BURTON KAHN, have been the President of HELVETIA ASSET RECOVERY, INC ("Helvetia") continuously since October 23, 2009 to this present day. I have been registered with the Secretary of State as President of HELVETIA ASSET RECOVERY, INC in the records of the Texas Secretary of State since October 23, 2009.  The *only* time I was not shown on the records of the Texas Secretary of State was from September 27, 2013 until October 4, 2013, and this was based on a fraudulent filing of an Amendment with the Secretary of State by Robert Ripley.  Attached as **Exhibit G** and made a part hereof by reference is the certified copy of the management register and all documents register denotes, of the Secretary of State of Texas, showing my status as President of HELVETIA ASSET RECOVERY, INC.  The fraudulent Amendment filed by Robert Ripley is included as part of **Exhibit G.**  Also attached as **Exhibit H** and made a part hereof by reference is the Texas Controllers statement showing my status as President of HELVETIA ASSET RECOVERY, INC.

"4.    On September 16, 2013, Robert Ripley, posing as President of HELVETIA ASSET RECOVERY, INC., submitted to Randolph Brooks Federal Credit Union ("Randolph Brooks"), 50 pages of documentation in an attempt to demonstrate that he was entitled to take over the bank accounts HELVETIA ASSET RECOVERY, INC.  Randolph Brooks refused to allow Ripley to take over the corporate accounts and gave the documents to me as President of the company on September 23, 2013.  I took possession of these documents submitted to me by Randolph Brooks and reported this incident to City of Live Oak Police Department.  Attached as **Exhibit I** and made a part hereof is a Certified Copy of the Police Report filed with the City of Live Oak Police

2

Department.

"5. Included in said 50 pages of documents was a Certificate purporting to show that Puerto Verde, Inc. owns 1000 shares of HELVETIA ASSET RECOVERY, INC. Attached as Exhibit J and made a part hereof by reference is said Stock Certificate. This document is a fraudulent document because of the reasons stated hereinbelow. First, the Certificate is not in the form authorized by the Directors of HELVETIA ASSET RECOVERY, INC. Attached as **Exhibit K** and made a part hereof by reference is form of the Stock Certificate required to transfer shares of HELVETIA ASSET RECOVERY, INC. to a purported owner of stock. Also attached as **Exhibit L** and made a part hereof by reference are the Minutes of an Organizational Meeting of The Board of Directors of HELVETIA ASSET RECOVERY, INC, which approved the form of stock certificate to transfer shares (namely, **Exhibit K**)

"6. Said Minutes (**Exhibit L**), page 2, read in part: "Resolved that the form of the share certificate presented to the meeting is adopted to represent shares of the business Corporation that any issue certificates bear all legends and restrictions required by the Bylaws or resolution of the Business Corporation...". **Exhibit K** is a copy of the blank certificate attached to those Minutes. Ripley's fraudulent Certificate (**Exhibit J**) purports to have been signed on Monday, August 20, 2007, and the Organizational minutes (**Exhibit L**) were signed on Friday, August 17, 2007. The form of Stock Certificate was not changed by the HELVETIA ASSET RECOVERY, INC over the weekend of August 17, 2007.

"7. The fraudulent Stock Certificate purports to bear the signature of Kenneth E. Moore as President and Secretary. Known documents bearing Kenneth Moore's signature were sent to Mr. Curtis Baggett, a document examiner and expert witness, to compare to the signatures of

3

Kenneth E. Moore on the fraudulent Stock Transfer Certificate. Attached as **Exhibit M** and made a part hereof by reference is Mr. Baggett's report concluding that Mr. Moore's signature is a forgery on the fraudulent Certificate identified as **Exhibit J**, including both signatures on the certificate as president and secretary on the fraudulent Certificate, identified as Q-1 in Mr. Baggett's report. Mr. Baggett's qualifications are also attached to **Exhibit M.**

"8.    Further, the Organizational Minutes of HELVETIA ASSET RECOVERY, INC, page 3, (**Exhibit L**) reads in part: "Resolved that the Business Corporation issuing shares of Business Corporation's authorized shares of common stock (no par value) for price of $1.00 each.... Consideration cash." Resolved that upon receipt of consideration the officers of the business Corporation are authorized to issue share certificates. No payment of $1000 was made to HELVETIA ASSET RECOVERY, INC.. prior to August 20, 2007, or any other time.

"9    Finally, the fraudulent Certificate (**Exhibit J**) was issued to Puerto Verde, Inc., but the organizational minutes refers to the issuance of shares to Puerto Verde, **Ltd.** on payment of the required purchase money. Page 3 of Organizational Minutes, **Exhibit L**. There is no Puerto Verde, Inc. registered with the Texas Secretary of State.

I further attest that the assertions contained in the accompanying motion are true and correct."

Further affiant sayeth not.

BURTON KAHN

SUBSCRIBED and SWORN TO before me, this 5th day of November , 2013

NOTARY PUBLIC, State of Texas


SHIRLEY MAE JONES
Notary Public, State of Texas
My Commission Expires
February 03, 2016

4

## WARRANTY DEED WITH VENDOR'S LIEN

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**Date:** September 18th , 2013

**Grantor:** HELVETIA ASSET RECOVERY, INC.

**Grantor's Mailing Address:** 13123 Feather Point, San Antonio, Bexar County, Texas 78233

**Grantee:** ACSBLDR, INC d/b/a Stellar Homes

**Grantee's Mailing Address:** 3910 Bogie Way, Converse, Bexar County, Texas 78109

**Consideration:** The sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to the undersigned in hand paid by Grantee herein named, the receipt of which is hereby acknowledged, and the further consideration of the execution and delivery by Grantee of his/her/their one certain Promissory Note of even date herewith in the principal sum of ONE HUNDRED EIGHTY-SIX THOUSAND FIVE HUNDRED SIXTY-NINE and NO/100 DOLLARS ($186,569.00) payable to the order of PLAINS CAPITAL BANK as therein provided and bearing interest at the rates therein specified, and providing for acceleration of maturity in event of default and for attorney's fees, the payment of which note is secured by the Vendor's Lien herein retained, and is additionally secured by a Deed of Trust of even date herewith to DARRELL G. ADAMS, Trustee.

**Property (including any improvements):**

LOT 8, BLOCK 9, KEY LARGO SUBDIVISION, BEXAR COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 9573, PAGE(S) 13, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS; also more commonly known as 3930 Dacall Way, Converse, Texas 78109

**Reservations from and Exceptions to Conveyance and Warranty:**

This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time: any and all restrictions, covenants, conditions and easements, if any, relating to the herein above described property, but only to the extent they are still in effect, shown of record in the herein above mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect, relating to the herein above described property.

**CERTIFICATE**
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____            10-31-13
        Deputy                    Date            Exhibit A

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

It is expressly agreed that the VENDOR'S LIEN, as well as the Superior Title in and to the above described premises, is retained against the above described property, premises and improvements until the above described Note and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, at which time this Deed shall become absolute.

PLAINS CAPITAL BANK ("Lender"), at the instance and request of the Grantee herein, having advanced and paid in cash to the Grantor herein that portion of the purchase price of the herein described property as is evidenced by the hereinabove described Note, the Vendor's Lien, together with the Superior Title to said property, is retained herein for the benefit of said Lender and the same are hereby TRANSFERRED AND ASSIGNED to said Lender, its successors and assigns, without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.

EXECUTED on the date first above written.

HELVETIA ASSET RECOVERY, INC.

(name) Robert Ripley
(title) President

STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS
COUNTY OF BEXAR, § or official the in
for here

This General Warranty Deed with Vendor's Lien was acknowledged before me on September 18, 2013, 2013, by Robert Ripley, President of and on behalf of HELVETIA ASSET RECOVERY, INC.



AMANDA GIBSON TIDMORE
Notary Public
STATE OF TEXAS
My Comm. Exp. 11/12/2014

Notary Public, State of Texas
My commission expires: _____

AFTER RECORDING RETURN TO:

2

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____                 10-31-13
        Deputy                              Date

Doc# 20130199236
# Pages 3
09/23/2013 11:27AM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
09/23/2013 11:27AM
COUNTY CLERK, BEXAR COUNTY TEXAS



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS



BY: _____     10·31·13

Deputy                        Date

# Gerard Rickhoff



| COUNTY CLERK | | BEXAR COUNTY |

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

VOLUME 16354          PAGE 685

THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS 31st DAY OF October          A.D., 20 13          .

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

## WARRANTY DEED WITH VENDOR'S LIEN

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

Date: September 18, 2013

Grantor: HELVETIA ASSET RECOVERY, INC.

Grantor's Mailing Address: 13123 Feather Point, San Antonio, Bexar County, Texas, 78233

Grantee: ACSBLDR, INC d/b/a Stellar Homes

Grantee's Mailing Address: 3910 Bogie Way, Converse, Bexar County, Texas 78109

Consideration: The sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to the undersigned in hand paid by Grantee herein named, the receipt of which is hereby acknowledged, and the further consideration of the execution and delivery by Grantee of his/her/their one certain Promissory Note of even date herewith in the principal sum of ONE HUNDRED TWENTY THOUSAND ONE HUNDRED FOUR and NO/100 DOLLARS ($120,104.00) payable to the order of PLAINS CAPITAL BANK as therein provided and bearing interest at the rates therein specified, and providing for acceleration of maturity in event of default and for attorney's fees, the payment of which note is secured by the Vendor's Lien herein retained, and is additionally secured by a Deed of Trust of even date herewith to DARRELL G. ADAMS, Trustee.

Property (including any improvements):

LOT 14, BLOCK 7, KEY LARGO SUBDIVISION, BEXAR COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 9573, PAGE(S) 13, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS; also more commonly known as 3954 Bogie Way, Converse, Texas 78109;

Reservations from and Exceptions to Conveyance and Warranty:
This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time: any and all restrictions, covenants, conditions and easements, if any, relating to the herein above described property, but only to the extent they are still in effect, shown of record in the herein above mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect, relating to the herein above described property.


CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____    10-31-13    Exhibit B
    Deputy      Date

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

It is expressly agreed that the VENDOR'S LIEN, as well as the Superior Title in and to the above described premises, is retained against the above described property, premises and improvements until the above described Note and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, at which time this Deed shall become absolute.

PLAINS CAPITAL BANK ("Lender"), at the instance and request of the Grantee herein, having advanced and paid in cash to the Grantor herein that portion of the purchase price of the herein described property as is evidenced by the hereinabove described Note, the Vendor's Lien, together with the Superior Title to said property, is retained herein for the benefit of said Lender and the same are hereby TRANSFERRED AND ASSIGNED to said Lender, its successors and assigns, without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.

EXECUTED on the date first above written.

HELVETIA ASSET RECOVERY, INC.

Robert Ripley
President

| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS |
| COUNTY OF BEXAR, | § | |

This General Warranty Deed with Vendor's Lien was acknowledged before me on September 18 , 2013, by Robert Ripley, President of and on behalf of HELVETIA ASSET RECOVERY, INC.

AMANDA GIBSON TIDMORE
Notary Public
STATE OF TEXAS
My Comm. Exp. 11/12/2014

Notary Public, State of Texas
My commission expires: _____

AFTER RECORDING RETURN TO:

2



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____          10-31-13
          Deputy                    Date

Doc# 20130198632
# Pages 3
09/20/2013  3:13PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
09/20/2013  3:13PM
COUNTY CLERK, BEXAR COUNTY TEXAS





CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          10-31-13
        Deputy                      Date

# Gerard Rickhoff

COUNTY CLERK  BEXAR COUNTY

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

    I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

        VOLUME 16352        PAGE 1838

    THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

    IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS 31st DAY OF October      A.D., 20 13  .

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: Edna Cruz Mosley

Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

## WARRANTY DEED WITH VENDOR'S LIEN

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**Date:**    September 18 , 2013

**Grantor:**    HELVETIA ASSET RECOVERY, INC.

**Grantor's Mailing Address:** 13123 Feather Point, San Antonio, Bexar County, Texas 78233

**Grantee:**    ACSBLDR, INC d/b/a Stellar Homes

**Grantee's Mailing Address:**  3910 Bogie Way, Converse, Bexar County, Texas 78109

**Consideration:** The sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to the undersigned in hand paid by Grantee herein named, the receipt of which is hereby acknowledged; and the further consideration of the execution and delivery by Grantee of his/her/their one certain Promissory Note of even date herewith in the principal sum of ONE HUNDRED EIGHTY-EIGHT THOUSAND and NO/100 DOLLARS ($188,000.00) payable to the order of PLAINS CAPITAL BANK as therein provided and bearing interest at the rates therein specified, and providing for acceleration of maturity in event of default and for attorney's fees, the payment of which note is secured by the Vendor's Lien herein retained, and is additionally secured by a Deed of Trust of even date herewith to DARRELL G. ADAMS, Trustee.

**Property (including any improvements):**

LOT 22, BLOCK 9, KEY LARGO SUBDIVISION, BEXAR COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 9573, PAGE(S) 13, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS; also more commonly known as 3951 Bogie Way, Converse, TX 78109;

**Reservations from and Exceptions to Conveyance and Warranty:**

This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time; any and all restrictions, covenants, conditions and easements, if any, relating to the herein above described property, but only to the extent they are still in effect, shown of record in the herein above mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect, relating to the herein above described property.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____        10-31-13      Exhibit C
        Deputy                    Date

singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

It is expressly agreed that the VENDOR'S LIEN, as well as the Superior Title in and to the above described premises, is retained against the above described property, premises and improvements until the above described Note and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, at which time this Deed shall become absolute.

PLAINS CAPITAL BANK ("Lender"), at the instance and request of the Grantee herein, having advanced and paid in cash to the Grantor herein that portion of the purchase price of the herein described property as is evidenced by the hereinabove described Note, the Vendor's Lien, together with the Superior Title to said property, is retained herein for the benefit of said Lender and the same are hereby TRANSFERRED AND ASSIGNED to said Lender, its successors and assigns, without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.

EXECUTED on the date first above written.

HELVETIA ASSET RECOVERY, INC.

Robert Ripley
President

STATE OF TEXAS

§

§    KNOW ALL MEN BY THESE PRESENTS

COUNTY OF BEXAR,    §

This General Warranty Deed with Vendor's Lien was acknowledged before me on September 18____, 2013, by Robert Ripley, President of and on behalf of HELVETIA ASSET RECOVERY, INC.



AMANDA GIBSON TIDMORE
Notary Public
STATE OF TEXAS
My Comm. Exp. 11/12/2014

Notary Public, State of Texas
My commission expires: _____

AFTER RECORDING RETURN TO:

2



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____    10-31-13
    Deputy            Date

Doc# 20130198589
# Pages 3
09/20/2013  2:54PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
09/20/2013  2:54PM
COUNTY CLERK, BEXAR COUNTY TEXAS



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS



BY: _____          10-31-13
          Deputy                        Date

# Gerard Rickhoff



COUNTY CLERK          BEXAR COUNTY

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## · CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

    I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

    VOLUME _16352_        PAGE _1671R_

    THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

    IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS _31st_ DAY OF _October_      A.D., 20 _13_ .

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _Edna Cruz Mosley_
         Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

First American Title
GF# 1037-0251

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

FATCO-SA WARRANTY DEED WITH VENDOR'S LIEN

Date:      October 27, 2013

Grantor:      HELVETIA ASSET RECOVERY, INC.

Grantor's Mailing Address:

13123 Feather Point
San Antonio, TX 78233
Bexar County

Grantee:      ACSBLDR, INC. dba STELLAR HOMES

Grantee's Mailing Address:

3910 Boyce
8634 Key South Way
Converse, Texas 78109
Bexar County

Consideration: Cash and a note of even date executed by Grantee and payable to the order of BROADYWAY NATIONAL BANK in the principal amount of ONE HUNDRED TWENTY SIX THOUSAND FOUR HUNDRED AND 00/100THS DOLLARS ($126,400.00) which represents part payment of the purchase price of the property. The note is secured by a first and superior vendor's lien and superior title retained in this deed in favor of BROADYWAY NATIONAL BANK and by a first-lien deed of trust of even date from Grantee to D'LAYNE RHYNSBURGER, Trustee.

Property (including any improvements):

LOT 8, BLOCK 7, KEY LARGO SUBDIVISION, BEXAR COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 9573, PAGE(S) 13, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

Reservations from and Exceptions to Conveyance and Warranty:

Validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2013, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and WARRANTY DEED WITH VENDOR'S LIEN
PAGE 1 OF 2



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____                    11-4-13         Exhibit D
        Deputy                              Date

forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become absolute.

BROADYWAY NATIONAL BANK, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of BROADYWAY NATIONAL BANK and are transferred to BROADYWAY NATIONAL BANK without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.

GRANTOR:
HELVETIA ASSET RECOVERY, INC.

By: _____
ROBERT RIPLEY
Its:    President


STATE OF TEXAS          )

COUNTY OF BEXAR         )

This instrument was acknowledged before me on October 28_____, 2013, by ROBERT RIPLEY, President of HELVETIA ASSET RECOVERY, INC. on behalf of said corporation.

AMANDA GIBSON TIDMORE
Notary Public
STATE OF TEXAS
My Comm. Exp. 11/12/2014

Notary Public, State of Texas


AFTER RECORDING RETURN TO:
ACSBLDR, INC. dba STELLAR HOMES
8634 Key South Way 3910 Bague Way
Converse, Texas 78109


WARRANTY DEED WITH VENDOR'S LIEN
PAGE 2 OF 2



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____        11-4-13
        Deputy                              Date

Doc# 20130225299
# Pages 3
10/30/2013  2:35PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
10/30/2013  2:35PM
COUNTY CLERK, BEXAR COUNTY TEXAS



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY:_____        _11-41-13_
        Deputy                  Date

# Gerard Rickhoff



COUNTY CLERK                         BEXAR COUNTY

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

       I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

                 VOLUME _16411_                 PAGE _718_

       THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

       IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS _4th_ DAY OF ___November___ A.D., 20 _15_ .

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
               Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

First American Title
GF# 1620333 [FATCO-SA
$ _____

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WARRANTY DEED WITH VENDOR'S LIEN

**Date:**        October 28, 2013

**Grantor:**     HELVETIA ASSET RECOVERY, INC.

**Grantor's Mailing Address:**

13123 *Feather Point*
*San Antonio, TX* 78233
*Bexar* County

**Grantee:**     ACSBLDR, INC. dba STELLAR HOMES

**Grantee's Mailing Address:**
3910 *Bogle*
~~8634 Key South~~ Way
Converse, Texas 78109
Bexar County

**Consideration:** Cash and a note of even date executed by Grantee and payable to the order of BROADWAY NATIONAL BANK in the principal amount of ONE HUNDRED FORTY TWO THOUSAND FOUR HUNDRED AND 00/100THS DOLLARS ($142,400.00) which represents part payment of the purchase price of the property. The note is secured by a first and superior vendor's lien and superior title retained in this deed in favor of BROADWAY NATIONAL BANK and by a first-lien deed of trust of even date from Grantee to D'LAYNE RHYNSBURGER, Trustee.

**Property (including any improvements):**

LOT 52, BLOCK 7, KEY LARGO SUBDIVISION, BEXAR COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 9573, PAGE(S) 13, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

**Reservations from and Exceptions to Conveyance and Warranty:**

Validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2013, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and
WARRANTY DEED WITH VENDOR'S LIEN
PAGE 1 OF 2

**CERTIFICATE**
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY:_____        11-4-13        Exhibit E
       Deputy                Date

forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become absolute.

BROADWAY NATIONAL BANK, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of BROADWAY NATIONAL BANK and are transferred to BROADWAY NATIONAL BANK without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.

GRANTOR:
HELVETIA ASSET RECOVERY, INC.

By: _____
    ROBERT RIPLEY
Its:    President

STATE OF TEXAS        )

COUNTY OF BEXAR        )

This instrument was acknowledged before me on October 28 , 2013, by ROBERT RIPLEY, President of HELVETIA ASSET RECOVERY, INC. on behalf of said corporation.

_____
Notary Public, State of Texas

AMANDA GIBSON TIDMORE
Notary Public
STATE OF TEXAS
My Comm. Exp. 11/12/2014

AFTER RECORDING RETURN TO:
ACSBLDR, INC. dba STELLAR HOMES
~~8634 Kay South Way~~ 8910 Bogelway
Converse, Texas 78109

WARRANTY DEED WITH VENDOR'S LIEN
PAGE 2 OF 2

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____    11-4-13
       Deputy            Date

Doc# 20130225301
# Pages 3
10/30/2013  2:35PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
10/30/2013  2:35PM
COUNTY CLERK, BEXAR COUNTY TEXAS



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY: _____          11-4-13
         Deputy                            Date



# Gerard Rickhoff



COUNTY CLERK       BEXAR COUNTY

BEXAR COUNTY COURTHOUSE
100 DOLOROSA. SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

    I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY. TEXAS. NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

    VOLUME _16411_          PAGE _732_

    THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

    IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS _4th_ DAY OF _November_ A.D., 20 _13_ .

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
        Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

**First American Title**
GF# 1970297  FATCO-SA

$ NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WARRANTY DEED WITH VENDOR'S LIEN

**Date:**          October 28, 2013

**Grantor:**     HELVETIA ASSET RECOVERY, INC.

**Grantor's Mailing Address:**

13123 Heather Forest
San Antonio, TX 78233
Bexar County

**Grantee:**     ACSBLDR, INC., a Texas corporation

**Grantee's Mailing Address:**

3910 Bogie
8634 Key South Way
Converse, Texas 78109
Bexar County

**Consideration:** Cash and a note of even date executed by Grantee and payable to the order of JEFFERSON BANK in the principal amount of ONE HUNDRED TWENTY SEVEN THOUSAND FOUR HUNDRED FORTY AND 00/100THS DOLLARS ($127,440.00) which represents part payment of the purchase price of the property. The note is secured by a first and superior vendor's lien and superior title retained in this deed in favor of JEFFERSON BANK and by a first-lien deed of trust of even date from Grantee to DANNY B. BUTLER, Trustee.

**Property (including any improvements):**

LOT 5, BLOCK 9, KEY LARGO SUBDIVISION, BEXAR COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 9573, PAGE(S) 13, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

**Reservations from and Exceptions to Conveyance and Warranty:**

Validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2013, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and

WARRANTY DEED WITH VENDOR'S LIEN
PAGE 1 OF 2

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____        11-4-13        Exhibit F
        Deputy                    Date

forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become absolute.

JEFFERSON BANK, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of JEFFERSON BANK and are transferred to JEFFERSON BANK without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.

GRANTOR:
HELVETIA ASSET RECOVERY, INC.

By: _____
ROBERT RIPLEY
Its: President

STATE OF TEXAS )

COUNTY OF BEXAR )

This instrument was acknowledged before me on October 28 , 2013, by ROBERT RIPLEY, President of HELVETIA ASSET RECOVERY, INC. on behalf of said corporation.

AMANDA GIBSON TIDMORE
Notary Public
STATE OF TEXAS
My Comm Exp. 11/12/2014

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:
ACSBLDR, INC., a Texas corporation
~~8634 Key South Way~~ 3910 Roque Way
Converse, Texas 78109

WARRANTY DEED WITH VENDOR'S LIEN
PAGE 2 OF 2

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____        11-4-13
        Deputy                            Date

Doc# 20130225306
# Pages 3
10/30/2013   2:36PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
10/30/2013   2:36PM
COUNTY CLERK, BEXAR COUNTY TEXAS



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.



ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____          11-4-0
           Deputy                              Date

# Gerard Rickhoff



**COUNTY CLERK**      **BEXAR COUNTY**

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

     I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

         VOLUME _16411_          PAGE _786_

     THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

     IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS _4th_ DAY OF _November_ A.D., 20 _13_ .



GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
         Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



John Steen
Secretary of State

## Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

Helvetia Asset Recovery, Inc.
Filing Number: 800851624

| | |
|---|---|
| Certificate of Formation | August 01, 2007 |
| Tax Forfeiture | August 28, 2009 |
| Reinstatement | November 02, 2009 |
| Public Information Report (PIR) | December 31, 2009 |
| Public Information Report (PIR) | December 31, 2010 |
| Public Information Report (PIR) | December 31, 2011 |
| Public Information Report (PIR) | December 31, 2012 |
| Change of Registered Agent/Office | September 16, 2013 |
| Certificate of Amendment | September 27, 2013 |
| Certificate of Amendment | October 04, 2013 |

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on October 30, 2013.





John Steen
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555
Prepared by: SOS-WEB

Fax: (512) 463-5709

Dial: 7-1-1 for Relay Services
Document: 511863800002

Exhibit G

| Form 201 | | Filed in the Office of the |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: $300 | <br><br>**Certificate of Formation**<br>**For-Profit Corporation** | Secretary of State of Texas<br>Filing #: 800851624 08/01/2007<br>Document #: 180560590002<br>**Image Generated Electronically**<br>for Web Filing |

## Article 1 - Entity Name and Type

The filing entity being formed is a for-profit corporation. The name of the entity is:

**Helvetia Asset Recovery, Inc.**

The name must contain the word "corporation," "company," "incorporated," "limited," or an abbreviation of one of these terms. The name must not be the same as, deceptively similar to or similar to that of an existing corporate, limited liability company, or limited partnership name on file with the secretary of state. A preliminary check for "name availability" is recommended.

## Article 2 – Registered Agent and Registered Office

☐ A. The initial registered agent is an organization (cannot be corporation named above) by the name of:

**OR**

☑ B. The initial registered agent is an individual resident of the state whose name is set forth below:

Name:
**Terry    George**

C. The business address of the registered agent and the registered office address is:

Street Address:
**1715 Hadbury Lane   San Antonio  TX  78248**

## Article 3 - Directors

The number of directors constituting the initial board of directors and the names and addresses of the person or persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and qualified are set forth below:

Director 1: **Lloyd    George**

Address: **P. O. Box 460807    San Antonio  TX, USA  78246**

## Article 4 - Authorized Shares

The total number of shares the corporation is authorized to issue and the par value of each of such shares, or a statement that such shares are without par value, is set forth below.

| Number of Shares | Par Value (must choose and complete either A or B) | Class | Series |
|---|---|---|---|
| 1000 | ☐ A. has a par value of $<br>☑ B. without par value. | | |

If the shares are to be divided into classes, you must set forth the designation of each class, the number of shares of each class, and the par value (or statement of no par value), of each class. If shares of a class are to be issued in series, you must provide the designation of each series. The preferences, limitations, and relative rights of each class or series must be stated in space provided for supplemental information.

## Article 5 - Purpose

The purpose for which the corporation is organized is for the transaction of any and all lawful business for which corporations may be organized under the Texas Business Organizations Code.

## Supplemental Provisions / Information

[The attached addendum, if any, is incorporated herein by reference.]

## Effectiveness of Filing

☐ A. This document becomes effective when the document is filed by the secretary of state.

**OR**

☑ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is: **August 2, 2007**

## Organizer

The name and address of the organizer is set forth below.

Terry George        1715 Hadbury Lane, San Antonio, TX 78248

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

## Terry George

Signature of organizer

FILING OFFICE COPY



Hope Andrade
Secretary of State

# Forfeiture pursuant to Section 171.309 of the Texas Tax Code
## of
## Helvetia Asset Recovery, Inc.

File Number : 800851624                     Certificate / Charter forfeited :    August 28, 2009

The Secretary of State finds that:

1.  The Secretary has received certification from the Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code indicating that there are grounds for the forfeiture of the taxable entity's charter, certificate or registration; and

2.  The Comptroller of Public Accounts has determined that the taxable entity has not revived its forfeited privileges within 120 days after the date that the privileges were forfeited.

Therefore, pursuant to Section 171.309 of the Texas Tax Code, the Secretary of State hereby forfeits the charter, certificate or registration of the taxable entity as of the date noted above and records this notice of forfeiture in the permanent files and records of the entity.





Hope Andrade
Secretary of State



Office of the Secretary of State
Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697
(Form 801)

Filed in the Office of the
Secretary of State of Texas
Filing #: 800851624 11/02/2009
Document #: 282062900002
Image Generated Electronically
for Web Filing

## APPLICATION FOR REINSTATEMENT AND
## REQUEST TO SET ASIDE REVOCATION OR FORFEITURE

Name of Entity:
**Helvetia Asset Recovery, Inc.**

File Number: **800851624**

The taxpayer identification number is: **32033458269**

1.  The entity named above was forfeited or its authority to transact business in Texas was revoked on <u>08/28/2009</u> for the following reason:
    Failure to file a franchise tax return and/or pay state franchise tax.

2.  The entity has corrected the default and has paid all fees, taxes, and penalties due.

3.  The entity applies for reinstatement and requests that the Secretary of State set aside the forfeiture of the Texas entity or the revocation of the foreign entity's authority, to transact business in Texas, as applicable.

4   Attachment:   **091102sos.pdf**
_____

By <u>**BURTON KAHN**</u>
<u>President</u>

FILING OFFICE COPY



October 30, 2009


HELVETIA ASSET RECOVERY, INC.
1715 HADBURY LN
SAN ANTONIO. TX 78248-2107


TAX CLEARANCE LETTER FOR REINSTATEMENT*


To:     Texas Secretary of State
        Corporations Section

Re:     HELVETIA ASSET RECOVERY, INC.
        Taxpayer number: 32033458269
        File number: 0800851624


The referenced entity has met all franchise tax requirements and is eligible
for reinstatement through May 17, 2010.


MICHAEL ALMARAZ
Enforcement - San Antonio NE
Field Operations - Enforcement
(210)646-0399


---

'The reinstatement must be filed with the Texas Secretary of State on or before the expiration date of this
letter. Forms and instructions for reinstatement can be found at www.sos.state.tx.us/corp/forms_options.shtml
or by calling (512) 463-5581. This tax clearance letter must be attached to the reinstatement forms.

NOTE: If the entity fails to reinstate on or before the tax clearance date indicated in this letter, additional
franchise tax filing requirements must be met and a new request for tax clearance must be submitted prior to
reinstatement.


Form 05-377 (Rev.12-08/4)

# TEXAS FRANCHISE TAX PUBLIC INFORMATION

**05-102**
(Rev. 1-08/28)
■ Code 13196

(To be filed by Corporations and Limited Liability Companies (LL(
**This report MUST be filed to satisfy franchise tax requiremer**

Comptroller
of Public
Accounts
FORM

■ **Taxpayer number**

| 3 | 2 | 0 | 3 | 3 | 4 | 5 | 8 | 2 | 6 | 9 | | 2 | 0 | 0 | 9 |

■ **Report year**

*You have certain
to review, request,
Contact us at: (512*

Taxpayer name
**HELVETIA ASSET RECOVERY, INC.**

Mailing address
**1715 HADBURY LN**

| City | State | ZIP Code | Plus 4 |
|------|-------|----------|--------|
| **SAN ANTONIO** | **TX** | **78248** | **2107** |

○ Blacken circle if there are currently no changes or additions to the information displayed in Section A of this rep

Entity's principal office
**1706 ALPINE CIRCLE SAN ANTONIO TEXAS 78248**

Principal place of business

*Please sign below!*

Officer, director and member information is reported as of the date a Public Information
Report is completed. The information is updated annually as part of the franchise tax
report. There is no requirement or procedure for supplementing the information as
officers, directors, or members change throughout the year.

**SECTION A** Name, title and mailing address of each officer, director or member.

| Name | Title | Directc |
|------|-------|---------|
| **BURTON KAHN** | **PRESIDENT** | ⦿ Y |

Mailing address
**1706 ALPINE CIRCLE**

City
**SAN ANTONIO**

| Name | Title | Directc |
|------|-------|---------|
| | | ○ Y |

Mailing address / City

| Name | Title | Directc |
|------|-------|---------|
| | | ○ Y |

Mailing address / City

| Name | Title | Directc |
|------|-------|---------|
| | | ○ Y |

Mailing address / City

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this reporting entity o
ten percent (10%) or more.

Name of owned (subsidiary) corporation or limited liability company | State of formation | Texa

Name of owned (subsidiary) corporation or limited liability company | State of formation | Texa

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of ten per

Comptroller
of Public
Accounts
FORM

# TEXAS FRANCHISE TAX PUBLIC INFORMATION

(To be filed by Corporations and Limited Liability Companies (LLC

**This report MUST be filed to satisfy franchise tax requiremen**

■ Taxpayer number

| 3 | 2 | 0 | 3 | 3 | 4 | 5 | 8 | 2 | 6 | 9 | | 2 | 0 | 1 | 0 |

■ Report year

*You have certain*
*to review, request,*
*Contact us at: (512*

Taxpayer name
**HELVETIA ASSET RECOVERY, INC.**

Mailing address
**1706 ALPINE CIR**

| City | State | ZIP Code | Plus 4 |
| **SAN ANTONIO** | **TX** | **78248** | **2104** |

○ Blacken circle if there are currently no changes or additions to the information displayed in Section A of this rep

Entity's principal office

Principal place of business

*Please sign below!*

Officer, director and member information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or members change throughout the year.

**SECTION A** Name, title and mailing address of each officer, director or member.

| Name | Title | Directo |
| **BURTON KAHN** | **PRESIDENT** | ○ Y |

| Mailing address | City |
| **1706 APLINE CIRCLE** | **SAN ANTONIO** |

| Name | Title | Directo |
| **BURTON KAHN** | **DIRECTOR** | ◉ Y |

| Mailing address | City |
| **1706 APLINE CIRCLE** | **SAN ANTONIO** |

| Name | Title | Directo |
| | | ○ Y |

| Mailing address | City |

| Name | Title | Directo |
| | | ○ Y |

| Mailing address | City |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this reporting entity o
ten percent (10%) or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texa |
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texa |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of ten per

# TEXAS FRANCHISE TAX PUBLIC INFORMATION

05-102
(Rev. 1-08/28)
■ Tcode 13196

(To be filed by Corporations and Limited Liability Companies (LLC
This report MUST be filed to satisfy franchise tax requiremer

Comptroller
of Public
Accounts
FORM

■ Taxpayer number

| 3 | 2 | 0 | 3 | 3 | 4 | 5 | 8 | 2 | 6 | 9 |

■ Report year

| 2 | 0 | 1 | 1 |

*You have certain*
*to review, request,*
*Contact us at: (512*

Taxpayer name
**HELVETIA ASSET RECOVERY, INC.**
Mailing address
**1706 ALPINE CIR**

| City | State | ZIP Code | Plus 4 |
|------|-------|----------|--------|
| **SAN ANTONIO** | **TX** | **78248** | **2104** |

○ Blacken circle if there are currently no changes or additions to the information displayed in Section A of this rep

|Entity's principal office

|Principal place of business

*Please sign below!*

Officer, director and member information is reported as of the date a Public Information
Report is completed. The information is updated annually as part of the franchise tax
report. There is no requirement or procedure for supplementing the information as
officers, directors, or members change throughout the year.

**SECTION A** Name, title and mailing address of each officer, director or member.

| Name | Title | Directc |
|------|-------|---------|
| **BURTON KAHN** | **DIRECTOR** | ⊙ Y |
| Mailing address **1706 APLINE CIRCLE** | City **SAN ANTONIO** | |
| **BURTON KAHN** | **PRESIDENT** | ○ Y |
| Mailing address **1706 APLINE CIRCLE** | City **SAN ANTONIO** | |
| Name | Title | ○ Y |
| Mailing address | City | |
| Name | Title | ○ Y |
| Mailing address | City | |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this reporting entity o
ten percent (10%) or more.

|Name of owned (subsidiary) corporation or limited liability company. |State of formation |Texa

|Name of owned (subsidiary) corporation or limited liability company |State of formation |Texa

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of ten per

Comptroller 05-102
of Public
Account FORM
(Rev: 1-08/28)

■ Tcode 13196

(To be filed by Corporations and Limited Liability Companies (LLC
**This report MUST be filed to satisfy franchise tax requiremer**

■ Taxpayer number

| 3 | 2 | 0 | 3 | 3 | 4 | 5 | 8 | 2 | 6 | 9 | | | | | |

■ Report year

*You have certain
to review, request,
Contact us at: (512*

Taxpayer name
**HELVETIA ASSET RECOVERY, INC.**

Mailing address
**1706 ALPINE CIR**

City
**SAN ANTONIO**

State
**TX**

ZIP Code
**78248**

Plus 4
**2104**

○ Blacken circle if there are currently no changes or additions to the information displayed in Section A of this rep

Entity's principal office

Principal place of business

*Please sign below!*

Officer, director and member information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or members change throughout the year.

**SECTION A** Name, title and mailing address of each officer, director or member.

| Name | Title | Directc |
|------|-------|---------|
| **BURTON KAHN** | **DIRECTOR** | ◉ Y |

Mailing address
**1706 APLINE CIRCLE**

City
**SAN ANTONIO**

| Name | Title | Directc |
|------|-------|---------|
| **BURTON KAHN** | **PRESIDENT** | ◉ Y |

Mailing address
**1706 APLINE CIRCLE**

City
**SAN ANTONIO**

| Name | Title | Directc |
|------|-------|---------|
| | | ○ Y |

Mailing address

City

| Name | Title | Directc |
|------|-------|---------|
| | | ○ Y |

Mailing address

City

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this reporting entity or ten percent (10%) or more.

Name of owned (subsidiary) corporation or limited liability company

State of formation

Texa

Name of owned (subsidiary) corporation or limited liability company

State of formation

Texa

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of ten per

| **Form 401**<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: See Instructions | <br>**Statement of Change of<br>Registered Office/Agent** | Filed in the Office of the<br>Secretary of State of Texas<br>Filing #: 800851624 09/16/2013<br>Document #: 504214730002<br>Image Generated Electronically<br>for Web Filing |

## Entity Information

The name of the entity is :

**Helvetia Asset Recovery, Inc.**

The file number issued to the entity by the secretary of state is: **800851624**

The registered agent and registered office of the entity as currently shown on the records of the secretary of state are:

**Terry George**

**1715 Hadbury Lane, San Antonio, TX, USA 78248**

## Change to Registered Agent/Registered Office

The following changes are made to the registered agent and/or office information of the named entity:

### Registered Agent Change

☐A. The new registered agent is an organization by the name of:

OR

☑B. The new registered agent is an individual resident of the state whose name is:

**John LLoyd Ripley**

### Registered Office Change

☑C. The business address of the registered agent and the registered office address is changed to:

**13123 Feather Point, San Antonio, TX, USA 78233**

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

### Consent of Registered Agent

☐A. A copy of the consent of registered agent is attached.

☑B. The consent of the registered agent is maintained by the entity.

### Statement of Approval

The change specified in this statement has been authorized by the entity in the manner required by the BOC or in the manner required by the law governing the filing entity, as applicable.

### Effectiveness of Filing

☑A. This document becomes effective when the document is filed by the secretary of state.

☐B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: **September 16, 2013**          *John LLoyd Ripley*

Signature of authorized person(s)

FILING OFFICE COPY

| Form 424 (Revised 05/11) | | This space reserved for office use. |
| --- | --- | --- |
| Submit in duplicate to Secretary of State P O Box 13697 Austin, TX 78711-3697 512 463-5555 FAX 512/463-5709 Filing Fee See Instructions |  Certificate of Amendment | **F I L E D** In the Office of the Secretary of State of Texas **SEP 2 7 2013** Corporations Section |

## Entity Information.

The name of the filing entity is

**Helvetia Asset Recovery INC.**

State the name of the entity as currently shown in the records of the secretary of state. If the Amendment changes the name of the entity, state the old name and not the new name

The filing entity is a* (select the appropriate entity type below)

☑ For-profit Corporation            ☐ Professional Corporation

☐ Nonprofit Corporation            ☐ Professional Limited Liability Company

☐ Cooperative Association          ☐ Professional Association

☐ Limited Liability Company        ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is   **0800851624**

The date of formation of the entity is   **AUGUST 2 / 2007**

## Amendments.

### 1 Amended Name

(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)

The amendment changes the certificate of formation to change the article or provision that names the filing entity The article or provision is amended to read as follows

The name of the filing entity is (state the new name of the entity below)

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

This amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows

Form 424                                6

**Registered Agent**
(Complete either A or B, but not both. Also complete C.)

☐ A  The registered agent is an organization (cannot be entity named above) by the name of

OR

☐ B  The registered agent is an individual resident of the state whose name is

John            LLoyd        Ripley
First Name          M I          Last Name                           Suffix

The person executing this instrument affirms that the person designated as the new registered agent has consented to serve as registered agent.

C. The business address of the registered agent and the registered office address is

13123   FeaTHeR PoInT          SAn AnTONIO              TX      78233
Street Address (No P O Box)              City                   State    Zip Code

### 3. Other Added, Altered, or Deleted Provisions·

Other changes or additions to the certificate of formation may be made in the space provided below  If the space provided is insufficient, incorporate the additional text by providing an attachment to this form.  Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference)  LATEST FRANCHISE PUBLIC INFORMATION REPORT

☒ Add each of the following provisions to the certificate of formation  The identification or reference of the added provision and the full text are as follows

| PResIDenT | Robert Ripley | S 14200 SIDE Road 18 | SUNDERLAND OnT | LOC 180 |
| VICE PResIDenT | FReD SEEHUSEN | 675 WALZER Road #5 | Bexar CounTy, SAN ANTONIO TX | 78239 |
| DIRECTOR | Robert Ripley | S 14200 SIDE Road 18 | SUNDERLAND ONT LOC 180 |  |

☐ Alter each of the following provisions of the certificate of formation.  The identification or reference of the altered provision and the full text of the provision as amended are as follows

☒ Delete each of the provisions identified below from the certificate of formation  Texas

LATEST Franchise Public InformaTion  RaporT.
Burton Kahn: 1706 Alpina Circle  PresidenT
Burton Kahn 1706 Alpine Circle  DirecTor

### Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

Form 424                                    7

**RECEIVED**

**SEP 1 8 2013**

**Secretary of State**

### Effectiveness of Filing (Select either A, B, or C.)

A. ☒ This document becomes effective when the document is filed by the secretary of state

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing  The delayed effective date is _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time  The 90th day after the date of signing is _____

The following event or fact will cause the document to take effect in the manner described below

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date _____ Sept 17/13 _____

By _____
Signature of authorized person

Robert Ripley
Printed or typed name of authorized person (see Instructions)

tel 210 523 1583

CHARGE Fees To

Form 424                                      E

**Form 424**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
**Filing Fee: See instructions**



**Certificate of Amendment**

This space reserved for office use.

F I L E D
In the Office of the
Secretary of State of Texas

OCT 0 4 2013

Corporations Section

## Entity Information

The name of the filing entity is:

_HELVETIA ASSET RECOVERY, INC._

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☒ For-profit Corporation      ☐ Professional Corporation

☐ Nonprofit Corporation      ☐ Professional Limited Liability Company

☐ Cooperative Association      ☐ Professional Association

☐ Limited Liability Company      ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is: _800851624_
The date of formation of the entity is: _08/02/2007_

## Amendments

### 1. Amended Name
(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

_____

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

**Registered Agent**
(Complete either A or B, but not both. Also complete C.)

☐ A. The registered agent is an organization (cannot be entity named above) by the name of:

_____

OR

☒ B. The registered agent is an individual resident of the state whose name is:

*BURTON*          *KAHN*
First Name          M.I.          Last Name          Suffix

The person executing this instrument affirms that the person designated as the new registered agent has consented to serve as registered agent.

C. The business address of the registered agent and the registered office address is:

*1706 ALPINE CIRCLE     SAN ANTONIO*     TX  *78248*
Street Address (No P.O. Box)          City          State     Zip Code

### 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area ('The attached addendum, if any, is incorporated herein by reference.).

☒ Add each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows: *MANAGEMENT*
*BURTON KAHN, PRES, SECRETARY & DIRECTOR.*
*1706 ALPINE CIRCLE*
*SAN ANTONIO, TX 78248*

☐ Alter each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:

☒ Delete each of the provisions identified below from the certificate of formation. *ROBERT RIPLEY, PRES, DIRECTOR    5142 POSIDE ROAD /S SUNDERLAND ON*
*FRED SEEHUSEN HUSEN Vice Pres*
*6751 WALZEM RD #5, SAN ANTONIO, TX 78239*

### Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

## Effectiveness of Filing (Select either A, B, or C)

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: _Oct 3, 2013_

By: _PRESIDENT_
_____
Signature of authorized person

_BURTON KAHN_
_____
Printed or typed name of authorized person (see instructions)

Home    Mail    News    Sports    Finance    Weather    Games    Groups    Answers    Screen    Flickr    Mobile    More

█ Bu

INBOX    CONTACTS    CALENDAR    Re: Payment    Packing Slip for Sessi...

Compose                    Delete                    Move        Spam        Actions

Inbox (3)
Drafts              Packing Slip for Session : 103013QN3336        from TXSOS to you                    10:18 AM
Sent
Spam (9)                     1 Attachment | 24.4KB
Trash

FOLDERS ─ ─ ── ─ ─ +        Dear Sir/Madam,

ADAM SMITH              The Secretary of State's Office has processed your request. Please find attached the packing slip for your session:
engineer consultanni        103013QN3336
is my SAWS permits.         If a bulk order has been placed please re-logon at http://direct.sos.state.tx.us
Julie Pictures.
KB                          Sincerely,
Keyb Largo
Paid Bills (1)              Office of the Secretary of State of Texas
Plat unit 3 approvals
Plat Unit 3 in review (24)
President
RABA
royal crest city
SALES Final
SAWS
TCEQ
untitled3
untitled4
untitled5
untitled6

MESSENGER
Me:    Offline
Sign in to Messenger to
see who's online.

APPLICATIONS ─── ─── ─────
Photos
Attachments
Notepad

# TEXAS SECRETARY of STATE
## JOHN STEEN

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Login

### BRIEFCASE

**SESSION ID:** 103013QN3336
**CONTACT NAME:** Burton Kahn
**SESSION STATUS:** Processed
**DATE:** 10/30/2013 8:36:33 AM

| Client Reference | Document Number | Document Type | Status | Received Date | Document Fee |
|---|---|---|---|---|---|
| [ NONE ] | 511863800002 | Corporations - Order | Processed | 10/30/2013 8:40:23 AM | $32.00 |

**TOTAL FEE:** $32.00

**PAYMENT DETAIL**

| Batch Number | Payment Number | Payment Type | Status | Received Date | Amount |
|---|---|---|---|---|---|

**TOTAL PAYMENT:** $0.00
**SESSION BALANCE:** $32.00

[New Session Search]

Instructions:
● INSTRUCTIONS NEED WRITTEN FOR THIS SCREEN.

Dragon's microphone is off; you can press its hotkey or click its icon to turn it on

# BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY - Mozilla Firefox

File   Edit   View   History   Bookmarks   Tools   Help

BUSINESS ORGANIZATIONS...   +

https://direct.sos.state.tx.us/corp_inquiry/corp_inquiry-entity.asp?spage=docs&:Spage:from=8:Sfiling_number=800   ☆ ▾ c   My Web Search

Explore · Solomon PNG Yahoo! ... Most Visited Bing Bing Discover Bing MSN MSNBC News MSN Entertainment MSN Sports MSN Money

Search   Map Search  Map Links  Traffic  Yellow Pages  Tools  Facebook   · More

**Name:** Helvetia Asset Recovery, Inc,
**Address:** 1706 ALPINE CIR
San Antonio, TX 78248-2104 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| V | 180560590002 | Certificate of Formation | August 1, 2007 | August 2, 2007 | No | 2 |
| V | 272961278774 | Tax Forfeiture | August 28, 2009 | August 28, 2009 | No | 0 |
| V | 282362900002 | Reinstatement | November 2, 2009 | November 2, 2009 | No | N/A |
| V | 303673530001 | Public Information Report (PIR) | December 31, 2009 | April 15, 2010 | No | 0 |
| V | 352312260001 | Public Information Report (PIR) | December 31, 2010 | January 30, 2011 | No | 1 |
| V | 383922720001 | Public Information Report (PIR) | December 31, 2011 | August 17, 2011 | No | 0 |
| V | 440937380001 | Public Information Report (PIR) | December 31, 2012 | August 28, 2012 | No | 1 |
| V | 504214730002 | Change of Registered Agent/Office | September 18, 2013 | September 16, 2013 | No | 2 |
| V | 506109180002 | Certificate of Amendment | September 27, 2013 | September 27, 2013 | No | 3 |
| V | 507619160002 | Certificate of Amendment | October 4, 2013 | October 4, 2013 | No | 3 |

[ Order ]   [ Return to Search ]

Instructions:
● To place an order for additional information about a filing press the 'Order' button.

❶ Firefox automatically sends some data to Mozilla so that we can improve your experience.   Choose What I Share   x

Start | POLICE REP... | PaperPort. | DragonBar ·... | Skype™ [18]... | BUSINESS   « ▣■▣  8:29 AM

 Window on State Government          Susan Combs Texas Comptroller of Public Accounts

Taxable Entity Search Results
Taxable Entity Search

# Officers and Directors

### HELVETIA ASSET RECOVERY, INC.
Report Year: 2012

Return to: Taxable Entity Search Results

Officer and director information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.state.tx.us or Comptroller of Public Accounts, Open Government Division, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address |
|---|---|
| SECRETARY | BURTON KAHN<br>1706 ALPINE CIRCLE<br>SAN ANTONIO , TX 78248 |
| PRESIDENT | BURTON KAHN<br>1706 ALPINE CIRCLE<br>SAN ANTONIO , TX 78248 |
| DIRECTOR | BURTON KAHN<br>1706 ALPINE CIRCLE<br>SAN ANTONIO , TX 78248 |

texas.gov | Statewide Search from the Texas State Library | State Link Policy | Texas Homeland Security

**Susan Combs,** Texas Comptroller • Window on State Government • Contact Us
Privacy and Security Policy | Accessibility Policy | Link Policy | Public Information Act | Compact with Texans



# Franchise Tax Account Status

As of: 11/01/2013 05:09:23 AM

## This Page is Not Sufficient for Filings with the Secretary of State

| HELVETIA ASSET RECOVERY, INC. | |
|---|---|
| Texas Taxpayer Number | 32033458269 |
| Mailing Address | 1706 ALPINE CIR SAN ANTONIO, TX 78248-2104 |
| Right to Transact Business in Texas | ACTIVE - ELIGIBLE FOR TERMINATION/WD |
| State of Formation | TX |
| Effective SOS Registration Date | 08/02/2007 |
| Texas SOS File Number | 0800851624 |
| Registered Agent Name | BURTON KAHN |
| Registered Office Street Address | 1706 ALPINE CIRCLE SAN ANTONIO, TX 78248 |

STATE OF TEXAS          §
                                       §

COUNTY OF BEXAR       §

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared _Valerie Michael_ who by me being duly sworn deposes as follows:

My name is _Valerie Michael_. I am over 21 years of age, of sound mind, capable of making this affidavit and personally acquainted with the facts herein stated:

I am employed by the CITY OF LIVE OAK POLICE DEPARTMENT, and as such I am the custodian of records of the said Police Department. Attached hereto are _2_ pages reported of the incident of _1309-0715_ from the Live Oak Police Department.

I have attached as part of this Affidavit a true and correct copy of the original record now in the lawful custody and possession of the RECORDS SECTION of the CITY OF LIVE OAK POLICE DEPARTMENT, 8022 Shin Oak, Live Oak, TX 78233. The attached records are kept by me in the regular course of business.

_Valerie Michael_
Affiant

SWORN TO AND SUBSCRIBED before me by the above named Affiant this _30_ day of _October_, 20_13_, to certify which; witness my hand and seal of office.

_Mary J. Wigle_
Notary Public, State of Texas

Commission Expires: _2/20/2017_

[Notary Seal: MARY J. WIGLE, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 02-20-2017]

Exhibit I

Incident Number: 1309-0715
Nature:  Civil Matter                      Case Numbers:

   Addr:  8022 SHIN OAK DR; LIVE OAK PD      Area:  B      ZONE B
   City:  Live Oak        St: TX  Zip:  78233      Contact:  BURTON KAHN

Complainant:      142570

   Lst:  Kahn                         Fst: Burton          Mid: Maurice
   DOB:  08/18/33  SSN:          Adr:  1706 Alpine Circle
   Rac:  W Sx: M Tel: (210)210-4089  Cty:  San Antonio      St: TX Zip: 78248


Reported:    CVLM    Civil Matter
Observed:    CVLM    Civil Matter
 Offense
    Codes:   CVLM    Civil Matter

Circumstances: ¡LT02    Bank or Savings and Loan

Responding Officers:  C Johnson          2603
Rspnsbl Officer:   C Johnson         Agency;  LOPD
   Received By:   J Perna           Last RadLog: 10:54:24 09/23/13      CMPLT
   How Received:  T    Phone               Clearance: RT    Report Taken

   When Reported:  10:06:27 09/23/13      Disposition: CLO  Disp Date: 09/23/13

Occurrd between:  10:05:23 09/23/13     Judicial Sts:
           and:  10:05:23 09/23/13     Misc Entry:

Modus Operandi:
        Factor              Description                    Method

INVOLVEMENTS:
Date        Description                         Relationship
---------   ------------------------------      -------------------------
09/23/13    Kahn, Burton Maurice                Complainant
09/23/13    10:06:27 09/23/13 Civil Matter      Initiating Call
10/16/13    Book   0                            Property

10/31/13
10:59

Live Oak Police Department
Public Information Report

388
Page:    2

Narrative Section

---

Civil Matter

On Monday, 09/23/2013 at 1006 hours, an officer was dispatched to the Live Oak Police Department lobby for a civil matter report. I arrived at the location and contacted the complainant who informed me that two of his business partners had tried to do an account take over on his separate business account at Randolph Brooks FCU which is separate from the businesses he shares with his two business partners. The two business partners did not have proper documentation and they did not succeed in any transfer of funds.

Chester E. Johnson Jr. #2603                1309-0715                09/23/2013

---

Responsible LEO:

---

Approved by:

---

Date

The shares represented by this certificate have not been registered under the Securities Act of 1933, as amended, or any applicable state securities laws, and may not be transferred, sold or assigned unless so registered or unless an exemption from such registration is available.

Certificate Number 001                                        1,000 Shares

## INCORPORATED UNDER THE LAWS OF TEXAS

# HELVETIA ASSET RECOVERY INC.

This certifies that _Puerto Verde Inc._ owns 1,000 shares of $0.00 par value common stock of Helvetia Asset Recovery Inc., transferable only on the books of the corporation by the holder of this certificate in person, or by authorized agent, upon surrender of this certificate, properly endorsed.

In witness of the above, the corporation has caused this certificate to be signed by its authorized officers on August 20, 2007

Kenneth E. Moore, President                    Kenneth E. Moore, Secretary

## Transfer Section

For value received, I _____ transfer to _____ the shares represented by this certificate, and instruct the corporate Secretary to record this transfer on the books of the corporation. Transfer restrictions, if any, are shown above.

Dated this ___ day of _____ _____.

Exhibit J

# COMMON STOCK CERTIFICATE

THIS CERTIFIES THAT

_____

ISTHE OWNER OF FULLY PAID 1000 SHARES AUTHORIZED OF COMMON STOCK IN REGARDING

# HELVETIA ASSET RECOVERY INC.

THE CORPORATION IS ORGANIZED UNDER THE LAWS OF STATE OF TEXAS

DATED _____        AT SAN ANTONIO, TEXAS

PRESIDENT SIGNATURE_____  DIRECTOR SIGNATURE_____

Exhibit K

## MINUTES OF THE ORGANIZATIONAL MEETING OF
## THE BOARD OF DIRECTORS OF
## HELVETIA ASSET RECOVERY, INC.
## A FOR-PROFIT CORPORATION

The organizational meeting of the Board of Directors of Helvetia Asset Recovery, Inc., a Texas business corporation (hereinafter "Business Corporation"), was held at 1715 Hadbury Lane, San Antonio, Texas 78248, on August 8, 2007.

The undersigned, being the sole member of the initial Board of Directors of Helvetia Asset Recovery, Inc. named in the Business Corporation's Certificate of Formation filed with the Secretary of State of Texas, was present. The undersigned waived notice of the meeting as evidenced by the attached Waiver of Notice signed and appended hereto.

Lloyd George was appointed Chairman of the meeting and Lloyd George was appointed Secretary of the meeting.

### CERTIFICATE OF FORMATION

The Secretary then presented and read to the meeting a copy of the Certificate of Formation and reported that the original thereof was filed in the office of the Secretary of State of the State of Texas on August 1, 2007, and that the Secretary of State issued a formal Acknowledgment of Filing to the Business Corporation on that date. The Secretary presented the Acknowledgment of Filing annexed to an approved duplicate of the Certificate of Formation as filed and it was ordered inserted into the corporate record book.

### BYLAWS

The Secretary then presented a proposed form of bylaws. The proposed bylaws were read to the meeting, considered and upon motion duly made, seconded and carried, were adopted as and for the Bylaws of the Business Corporation and ordered signed and inserted into the corporate record book. The Secretary of the Business Corporation was instructed to maintain a copy of the Bylaws at the principal office of the Business Corporation available for inspection by the shareholders of the Business Corporation.

### PRINCIPAL OFFICE

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation's principal office be located and maintained at 1715 Hadbury Lane, San Antonio, Texas, 78248 and that meetings of the Board of Directors from time to time may be held either at the principal office or at such other place as the board of directors shall from time to time order.

1

Exhibit L

## MINUTE BOOK AND CORPORATE RECORDS

The Secretary submitted to the meeting the corporate record book for maintenance of the Business Corporation's records. Upon motion duly made, seconded and carried, it was

RESOLVED, that the corporate record book is adopted as the record book of the corporation, and further,

RESOLVED, that the Business Corporation maintain appropriate corporate records in the corporate record book, including but not limited to originals, copies or certified copies of the Business Corporation's original and any amended, corrected or restated, Acknowledgment of Filing, Certificate of Formation, Bylaws, minutes of meetings of shareholders and directors, and written consents of shareholders and directors.

## OFFICERS

The Chairman of the meeting then called for the election of officers of the Business Corporation. The following persons were nominated to the office preceding their name:

| Office | Name |
|---|---|
| President | Kenneth E. Moore |
| Secretary | Kenneth E. Moore |
| Treasurer | Kenneth E. Moore |

No further nominations being made the nominations were closed and the directors proceeded to vote on the nominees. The Chairman announced that the foregoing nominees were elected to the offices set before their respective names to serve as such at the pleasure of the Board of Directors or pursuant to the terms of any written employment agreement executed by the Business Corporation and the respective officer.

## SHARE CERTIFICATES

The Secretary submitted to the meeting a specimen share certificate proposed for use as the corporate certificate for shares. Upon motion duly made, seconded and carried, it was

RESOLVED, that the form of the share certificate presented to meeting is adopted to represent shares of the Business Corporation; that any issued certificates bear all legends and restrictions required by the Bylaws or resolution of the Business Corporation, contract or by law; that any issued certificates comply with any requirements of the Bylaws or resolution of the Business Corporation, contract or applicable law; and that the Secretary of the Business Corporation insert a specimen copy of said share certificate in the minute book of the Business Corporation.

2

## ISSUANCE OF SHARES

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation issue 1000 shares of the Business Corporation's authorized shares of common stock (no par value), for a purchase price of $1.00, each, as follows:

| Name | No. of Shares | Consideration | Value |
|------|---------------|---------------|-------|
| Puerto Verde, Ltd. | 1,000 | Cash | $1,000. |

Upon motion duly made, seconded and carried, it was

RESOLVED, that upon receipt of the consideration, the officers of the Business Corporation are authorized to issue share certificates to the persons named above and to obtain, if advisable, representations from any purchaser that the shares are being acquired for investment purposes and not for distribution, and further

RESOLVED, that the Board of Directors of the Business Corporation may upon such terms as the Board of Directors in its discretion may determine, issue authorized shares of the Business Corporation for consideration consisting of any tangible or intangible benefit to the Business Corporation or other property of any kind or nature, including cash, promissory notes, services performed, contracts for services to be performed, other securities of the Business Corporation, or securities of any other corporation, domestic or foreign, or other entity.

## BANK ACCOUNT

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation establish in its name one or more accounts with one or more financial institutions on such terms and conditions as may be agreed with said financial institutions, and that the officers of the Business Corporation are authorized to execute any resolutions required by said financial institutions for such accounts and to designate the person or persons authorized to write checks on such accounts on behalf of the Business Corporation.

## ORGANIZATIONAL COSTS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the attorney's fees, filing fees and other expenses and charges incurred and that may be incurred by the Business Corporation or persons acting on behalf of the Business Corporation in connection with the formation of the Business Corporation are reasonable and shall be paid or reimbursed by the Business Corporation.

3

## FISCAL YEAR

Upon motion duly made, seconded and carried, it was

RESOLVED, that the fiscal year of the Business Corporation shall begin on January 1 and end on December 31, provided that the initial fiscal year of the Business Corporation shall begin as of the date hereof.

## TAXES

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation obtain information and instructions from the Internal Revenue Service, Comptroller of the State of Texas and other applicable taxing authorities regarding withholding and other taxes.

## LICENSES AND PERMITS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation are authorized to obtain on behalf of the Business Corporation all licenses and permits that may be required for the Business Corporation to carry out its lawful business and activities, and further,

RESOLVED, that the officers of the Business Corporation are authorized to do all things and take all action necessary to qualify the Business Corporation to carry out its lawful business and activities in compliance with applicable federal, state and local laws, ordinances and regulations.

## QUALIFICATION IN OTHER JURISDICTIONS

Upon motion duly made, seconded and carried, it was

RESOLVED, that for the purpose of authorizing the Business Corporation to do business in any state, territory or dependency of the United States or any foreign country in which it is necessary or expedient for the Business Corporation to transact business, the proper officers of the Business Corporation are hereby authorized to appoint and substitute all necessary agents or attorneys for service of process, to designate and change the location of all necessary statutory offices and to make and file all necessary certificates, reports, powers of attorney and other instruments as may be required by the laws of such state, territory, dependency or country to authorize the Business Corporation to transact business therein.

## FURTHER INSTRUCTIONS TO OFFICERS

Upon motion duly made, seconded and carried, it was

4

RESOLVED, that the officers of the Business Corporation are authorized to do all things and take all action necessary and helpful to carry out the above resolutions and all acts of the officers and any persons acting for the Business Corporation which are consistent with the above resolutions are ratified and adopted as the acts of the Business Corporation.

Upon motion duly made, seconded and carried, it was

RESOLVED that the signing of these minutes shall constitute full ratification thereof and waiver of notice of the meeting by the signatories.

Upon motion duly made, seconded and carried, it was

RESOLVED that Lloyd George resigned as an office and director of the Business Corporation, and that resignation was accepted.

The Chairman asked whether there was any further business to come before the Directors at this meeting, and there being no response, the meeting was adjourned.

DATE: August 17, 2007.

_____
Lloyd George


## WAIVER OF NOTICE AND CONSENT

RESOLVED, that the undersigned, being the sole member of the initial Board of Directors of Helvetia Asset Recovery, Inc. named in the Business Corporation's Certificate of Formation filed with the Secretary of State of Texas, by approving the Minutes of the Organizational Meeting of the Directors, and by this resolution, does hereby waive notice of the time and place of the meeting, consents to the meeting and approves the contents of the Minutes of the Organizational Meeting of the Directors.

_____
Lloyd George
Date signed:  August 17, 2007

5

# Curtis Baggett
## Expert Document Examiner
908 Audelia Road, Suite 200-245, Richardson, Texas 75081
Phone: 972.644.0285 * Fax: 972.644.5233
curtbaggett@msn.com
www.ExpertDocumentExaminer.com

---

## Questioned Document Examiner Letter

Subject:  Kenneth E. Moore
Date:     September 27, 2013

I have examined three (3) documents with the known signatures of Kenneth E. Moore. For the purpose of this examination I have labeled these exhibits "K1" and "K2".

Today I have compared the signatures of Kenneth E. Moore on the "K" documents to the Kenneth E. Moore signatures on the questioned document, identified herein as "Q1" to determine if the author of the Kenneth E. Moore signatures on the "K" documents was the same person who authored the name of Kenneth E. Moore on the questioned document: A certificate for 1000 shares for Helvetia Asset Recovery Inc. dated August 20, 2007 and purportedly signed by Kenneth E. Moore.

An examination of handwriting includes establishing patterns of writing habits to help identify the author. Handwriting is formed by repeated habits of writing by the author, which are created by neuro-pathways established in the brain. These neuro-pathways control muscular and nerve movement for writing whether the writing is executed by the hand, foot, or mouth.

In support of my opinion, I have included an excerpt from *Handwriting Identification, Facts and Fundamentals* by Roy A. Huber and A.M. Headrick (CRC Press LLC, 1999, pp 50-51) wherein the leading forefathers of document examination in the USA agree that one significant difference in the fundamental structure of a writing compared to another is enough to preclude common authorship:

> [Ordway] Hilton stated: "It is a basic axiom of identification in document problems that a limited number of basic differences, even in the face of numerous strong similarities, are controlling and accurately establish nonidentity."

> [Wilson R.] Harrison made similar comments: "...the fundamental rule which admits of no exception when handwritings are being compared...is simple — whatever features two specimens of handwriting may have in common, they cannot be considered to be of common authorship if they display but a single consistent dissimilarity in any feature which is fundamental to the structure of the handwriting, and whose presence is not capable of reasonable explanation."

Exhibit M

[James V.P.] Conway expressed the same theme when he wrote: "A series of fundamental agreements in identifying individualities is requisite to the conclusion that two writings were authored by the same person, whereas a single fundamental difference in an identifying individuality between two writings precludes the conclusion that they were executed by the same person."

and finally,

[Albert S.] Osborn and others have generally agreed that despite numerous similarities in two sets of writings, a conclusion of identity cannot be made if there is one or more differences in fundamental features of the writings.

Based upon thorough analysis of these items and from an application of accepted forensic document examination tools, principles and techniques, it is my professional expert opinion that a different person authored the name of Kenneth E. Moore on the questioned document. Someone did indeed forge the signature of Kenneth E. Moore on the questioned document, "Q1".

I am willing to testify to this fact in a court of law and I will provide exhibits to the Court showing that I had sufficient data and that my opinion is correct. My Curriculum Vitae is attached and incorporated herein by reference.

Respectfully submitted,

Curt Baggett

State of Texas     §
                       §
County of Dallas    §

The above Letter of Opinion was sworn to and subscribed before me by Curt Baggett this 27 day of September 2013.

Notary Public

JESSICA BLACKSHEAR
Notary Public, State of Texas
My Commission Expires
August 08, 2016

**EXHIBIT 1**

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

| | |
|---|---|
| Buyer: | Helvetia Asset Recovery Inc. |
| Seller: | Maple Bush Holdings, Ltd. |
| Settlement Agent: | North American Title Company |
| | (210)494-0092 |
| Place of Settlement: | 12600 San Pedro Avenue, Suite 405 |
| | San Antonio, TX 78216 |
| Settlement Date: | November 19, 2007 |
| Property Location: | 215 Vacant Lots Key Largo Subdivision |
| | San Antonio, TX.09000 |
| | Bexar County, Texas |
| | 215 Vacant Lots, Key Largo |
| | Subdivision, San Antonio, |
| | Bexar County, Texas |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Helvetia Asset Recovery Inc.

BY: _____

Maple Bush Holdings, Ltd.

BY: _____

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
North American Title Company
Settlement Agent

QDE EXHIBIT

K-1

**EXHIBIT 2**

accounts with one or more financial institutions on such terms and conditions as may be agreed with said financial institutions, and that the officers of the Business Corporation are authorized a execute any resolutions required by said financial institutions for such accounts and to designate the person or persons authorized to write checks on such accounts on behalf of the Business Corporation.

## FURTHER INSTRUCTIONS TO OFFICERS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the e officers of the Business Corporation are authorized to do all things and take all action necessary and helpful to carry out the above resolutions and all acts of the officers and any persons acting for the Business Corporation which are consistent with the above resolutions are ratified and adopted as the acts of the Business Corporation.

Upon motion duly made, seconded and carried, it was

RESOLVED, that the signing of these minutes shall constitute full ratification thereof and waiver of notice of the meeting by the signatories.

Upon motion duly made, seconded and carried, it was

RESOLVED that Kenneth E. Moore resigned as an officer and director of the Business Corporation and that resignation was accepted.

The Chairman asked whether there was any further business to come before the Directors at this meeting, and there being no response, the meeting was adjourned.

DATE:    October 23, 2009.  _____
                               Kenneth E. Moore

## WAIVER OF NOTICE AND CONSENT

RESOLVED, that the undersigned, being the sole member of the Board of Directors of Helvetia Asset Recovery, inc. named in the Business Corporation's Certificate of Formation, filed with the Secretary of State of Texas, by approving the Minutes of the Organizational Meeting of the Directors, and by this resolution, does hereby waive notice of the time and place of the meeting, consents to the meeting and approves the contents of the Minutes of the Meeting of the Directors.

                    Date signed  October 23, 2009.

_____
Kenneth E. Moore


QDE EXHIBIT


is a true and correct copy of the original document

Custodian of the Records for:
Helvetia Asset Recovery

# EXHIBIT 3

The shares represented by this certificate have not been registered under the Securities Act of 1933, as amended, or any applicable state securities laws, and may not be transferred, sold or assigned unless so registered or unless an exemption from such registration is available.

Certificate Number 001                              1,000 Shares

## INCORPORATED UNDER THE LAWS OF TEXAS

## HELVETIA ASSET RECOVERY INC.

This certifies that ___Puerto Verde Inc.___ owns 1,000 shares of $0.00 par value common stock of Helvetia Asset Recovery Inc., transferable only on the books of the corporation by the holder of this certificate in person, or by authorized agent, upon surrender of this certificate, properly endorsed.

In witness of the above, the corporation has caused this certificate to be signed by its authorized officers on August 29, 2007

Kenneth E. Moore, President                    Kenneth E. Moore, Secretary

Transfer Section

For value received, I _____ transfer to _____ the shares represented by this certificate, and instruct the corporate Secretary to record this transfer on the books of the corporation. Transfer restrictions, if any, are shown above.

Dated this _____ day of _____

QDE EXHIBIT
Q1

# CURTIS BAGGETT

**Expert Document Examiner**
533 Park Lane, Richardson, TX 75081
Phone: 972.644.0285 - Fax: 972.644.5233
Curt@ExpertDocumentExaminer@msn.com
www.ExpertDocumentExaminer.com

Curtis Baggett is a document examiner and expert witness. He is also a skilled authority in handwriting identification and completed over 3,500 cases. Mr. Baggett has examined documents and/or testified in court cases as a handwriting expert in all 50 states, Washington, D.C., the Bahamas, Brazil, Canada, Chile, England, Ireland, Mexico, Pakistan, Puerto Rico, Thailand and New Zealand, Korea, China, Australia and Denmark.

He has been retained by the U.S. Department of Justice, the State of Arizona, State of Arkansas, the State of California, and the State of Texas. Mr. Baggett has appeared as a handwriting expert on WOLF-BLITZER-CNN; CHARLES GIBSON-ABC, INSIDE EDITION, CBS Network Radio, CBS, CNBC, CNN, FOX, JUDGE ALEX, TEXAS JUSTICE and GOOD MORNING TEXAS and was a consultant as a forensic document examiner for a number one television show, "CSI: Crime Scene Investigation". Mr. Baggett is the co-author of "The Handwriting Certification Home Study Course" and has been a guest on various other television and radio programs discussing handwriting and forensic document examination.

Mr. Baggett once held the position as Dean of the School of Forensic Document Examination at Handwriting University. In addition to lecturing and teaching document examination, Mr. Baggett has analyzed handwriting for over 30 years. He has been qualified as an expert witness in Justice of the Peace, Municipal, District, State, U.S. District, and Federal Bankruptcy Courts.

His education and training in document examination and psychology include: U.S. Army, Military Police Officer's School; B.A. and M.Ed., McNeese State University, Lake Charles, Louisiana; and post-graduate studies at the University of Houston, Houston, Texas.

Curt Baggett's library is extensive and includes literature on questioned document examination, forensic handwriting analysis, behavior profiling, and statement analysis.

Laboratory equipment used for examination consists of a Stereo Star Zoom American Optical 7x – 30x twin microscope; Micronta illuminated 30x microscope; stereo microscope S/ST series; universal DigiScoping adapter; numerous magnifying devices; protractor and metric measuring devices; Pentax ME camera; Pentax macro 1.4, 50mm flat copy lens; overhead projector; light table, and transparencies.

**Curt Baggett's Education and Training in Handwriting and Document Examination Include:**

An in-person, two-year apprenticeship with Dr. Ray Walker as a handwriting expert and questioned document examiner. Dr. Walker's qualifications have been affirmed in the Court of Appeals, Fifth District of Texas at Dallas, and had historical rulings in his favor. A leading authority in the field of handwriting analysis and document examination, Dr. Walker is the author of The Questioned Document Examiner and the Justice System.

Mr. Baggett is certified by the American Bureau of Document Examiners. He also has a certificate of completion from the American Institute of Applied Science.

Rev 11/1/13

**Lectures, Conferences, and Classes Attended:**

2004 School of Forensic Document Examination's Annual Conference, Dallas, Texas
Attended classes taught by Reed Hayes, QDE, Katherine Koppenhaver, QDE, Bill Koppenhaver, QDE

2004 School of Forensic Document Examination's Teleclass Curriculum
Examination of Anonymous Writing by Reed Hayes, QDE
Document Examination Terminology by Don Lehew, QDE
Notary Public by Don Lehew, QDE
Advanced Forgery Identification by Don Lehew, QDE
Instructor

2005 School of Forensic Document Examination's Annual Conference, Dallas, Texas
Attended the following lectures, in addition to general sessions:
Tremors and line Quality taught by Reed Hayes, QDE
Demonstrative Evidence taught by Katherine Koppenhaver, QDE, Bill Koppenhaver, QDE
Photography through microscopes by David Babb, QDE
Paper and Watermarks by John McGuire, QDE
Lecturer

2005 School of Forensic Document Examination's Teleclasses
Natural Variation taught by Reed Hayes, QDE
The Discrimination of Handwriting by Don Lehew, QDE
Procedures for Examining Signatures by Don Lehew, QDE
Courtroom Procedures and Roles by Don Lehew, QDE
Instructor

2006 School of Forensic Document Examination's Annual Conference, Dallas, Texas
Attended the following lectures, in addition to general sessions:
Deposition and Cross Examinations by Dr. Richard Frazier, QDE
Medical Problems Affecting handwriting by Dr. Richard Frazier, QDE
Legal Issues for Document Examiners by Dr. Richard Frazier, QDE
Deposition and Cross Examinations by Dr. Richard Frazier, QDE
Health Factors Affecting Handwriting by Dr. Joe Alexander, QDE
Prescription Forgery and Medical Crimes by Diane King
Lecturer

2007 Handwriting University Annual Conference, Dallas, Texas
Trainer and Instructor

2007 School of Forensic Document Examination's Teleclasses
Instructor - Handwriting Basics and Exemplars
Instructor - Multiple Classes on Case Studies and Examinations

2008 Handwriting University Annual Conference, Las Vegas, Nevada
Trainer and Instructor

2009 School of Forensic Document Examination's Live Teleclasses
Attended a variety of classes taught by Robert Baier, QDE, Police Instructor

2009 Handwriting University Annual Conference, Las Vegas, Nevada
Critical Incident Stress:  Statement Analysis and Interview v. Interrogation by Faith Wood

Rev 11/1/13

Forensic Document Examination Application by Robert Baier, QDE, Police Instructor Trainer and Instructor for Introduction to Forensic Document Examination

2010 Handwriting University Annual Conference, Las Vegas, Nevada
Advanced Statement Analysis by Faith Wood
Identity Theft and Prevention by Robert Baier, QDE, Police Instructor Trainer and Instructor for Introduction to Forensic Document Examination

2010 Instructor, Clear Lake High School
Introduction to Forensic Document Examination

2011 Lecturer and Instructor, "How to Spot a Forgery", Denver Elections Division, Denver, Colorado

2012 Lecturer and Instructor, "How to Spot a Forgery", Denver Elections Division, Denver, Colorado

2012 Speaker - How to Avoid a Forgery, Military Order of Purple Hearts Annual Meeting, Dallas, Texas

2013 Speaker and Appointed as guest lecturer and consultant by Stefanie Page, Instructor, Forensic Science Department, Jesuit College Preparatory School of Dallas

**Current Memberships**

American College of Forensic Examiners International
American Legion
Center of Forensic Profiling
Forensic Expert Witness Association
IMS Expert Services
Military Order of World Wars
National Questioned Document Association
Sheriff's Association of Texas
Texas Police Association
Veterans of Foreign Wars
World Federation of Handwriting Experts

**Published Articles and Books**

Ethics for Experts
Handwriting Certification Course
How to Help Attorneys With Your Case
How to Spot a Forgery
Taking the Witness Stand

Rev 11/1/13

# EXHIBIT 2

EXHIBIT

SCANNED

PENGAD 800-631-6989

2013-CI-18394
224TH JUDICIAL DISTRICT COURT
X PARTE HELVETIA ASSET RECOVERY INC VS
DATE FILED: 11/05/2013

P12-20130229295-21

IN RE: A PURPORTED §

LIEN OR CLAIM AGAINST §

§

HELVETIA ASSET RECOVERY, INC. §
Property Owner §

IN THE DISTRICT COURT OF BEXAR

_____ JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

## JUDICIAL FINDING OF FACTS AND CONCLUSIONS OF LAW
### REGARDING A DOCUMENT OR INSTRUMENT
### PURPORTING TO CREATE A LIEN OR CLAIM

On the 5th day of November, 2013, in the above entitled and numbered cause, this Court reviewed a motion, verified by affidavit of BURTON KAHN and the documentation attached thereto. Additionally, the Court reviewed the six "Warranty Deeds with Vendor's Liens" attached hereto as as Exhibits A, B, C, D, E & F. No testimony was taken from any party, nor was there any notice of the Court's review, the Court having made the determination that a decision could be made solely on review of the documentation under the authority vested in the Court under Subchapter J, Chapter 51 of the Texas Government Code.

The Court finds as follows: The six Warranty Deeds attached hereto as Exhibits A, B, C, D, E & F, respectively, are NOT created by implied or express consent or agreement of the obligor, debtor, or the owner of the real property or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person, and documents were presented raising issues as to whether corporate documents were forged. The Warranty Deeds with Vendors Liens, attached hereto as Exhibits A, B, C, D, E & F do not grant ACSBLDR, Inc. d/b/a Stellar Homes any interest in the property described therein.

The Court makes no finding as to any underlying claims of the parties involved, and expressly limits its finding of fact and conclusions of law to the review of a ministerial act. The

1

county clerk shall file this finding of fact and conclusion of law in the same class of records as the subject documentation or instruments were originally filed, and the court directs the county clerk to index it using the same names that were used in indexing the subject documentation or instrument.

Signed on this __5__ day of November, 2013.

PRESIDING JUDGE

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*November 05, 2013*

**DONNA KAY McKINNEY**
**BEXAR COUNTY, TEXAS**

By: _____

DANIEL GALAN, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*

Doc# 20130229298 Fees: $98.00
11/05/2013   11:55AM # Pages 21
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

Any provision herein which restricts the sale, or use of the described real
property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on
this date and at the time stamped hereon by me and was duly RECORDED
in the Official Public Record of Real Property of Bexar County, Texas on:

**NOV 05 2013**

COUNTY CLERK BEXAR COUNTY, TEXAS

SCANNED

2013-CI-18394
224TH JUDICIAL DISTRICT COURT
EX PARTE HELVETIA ASSET RECOVERY INC VS
DATE FILED: 11/05/2013

| | | |
|---|---|---|
| IN RE: A PURPORTED | § | IN THE DISTRICT COURT OF BEXAR |
| | § | |
| LIEN OR CLAIM AGAINST | § | _____ JUDICIAL DISTRICT |
| | § | |
| HELVETIA ASSET RECOVERY, INC. | § | BEXAR COUNTY, TEXAS |
| Property Owner | § | |

### JUDICIAL FINDING OF FACTS AND CONCLUSIONS OF LAW REGARDING A DOCUMENT OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM

On the 5th day or November, 2013, in the above entitled and numbered cause, this Court reviewed a motion, verified by affidavit of BURTON KAHN and the documentation attached thereto. Additionally, the Court reviewed the six "Warranty Deeds with Vendor's Liens" attached hereto as as Exhibits A, B, C, D, E & F. No testimony was taken from any party, nor was there any notice of the Court's review, the Court having made the determination that a decision could be made solely on review of the documentation under the authority vested in the Court under Subchapter J, Chapter 51 of the Texas Government Code.

The Court finds as follows: The six Warranty Deeds attached hereto as Exhibits A, B, C, D, E & F, respectively, are NOT created by implied or express consent or agreement of the obligor, debtor, or the owner of the real property or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person, and documents were presented raising issues as to whether corporate documents were forged. The Warranty Deeds with Vendors Liens, attached hereto as Exhibits A, B, C, D, E & F do not grant ACSBLDR, Inc. d/b/a Stellar Homes any interest in the property described therein.

The Court makes no finding as to any underlying claims of the parties involved, and expressly limits its finding of fact and conclusions of law to the review of a ministerial act. The

1

county clerk shall file this finding of fact and conclusion of law in the same class of records as the subject documentation or instruments were originally filed, and the court directs the county clerk to index it using the same names that were used in indexing the subject documentation or instrument.

Signed on this __5__ day of November, 2013.

PRESIDING JUDGE

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*November 05, 2013*

DONNA KAY McKINNEY
BEXAR COUNTY, TEXAS

By: _____

DANIEL GALAN, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*

Doc# 20130229298 Fees: $98.00
11/05/2013    11:55AM # Pages 21
Filed & Recorded in the Official
Public Records of BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

Any provision herein which restricts the sale, or use of the described real
property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on
this date and at the time stamped hereon by me and was duly RECORDED
in the Official Public Record of Real Property of Bexar County, Texas on:

NOV 05 2013

COUNTY CLERK BEXAR COUNTY, TEXAS

# EXHIBIT C



CAUSE NO. 2013-CI-18394

| | | |
|---|---|---|
| IN RE: A PURPORTED | § | IN THE DISTRICT COURT |
| | § | |
| LIEN OR CLAIM AGAINST | § | BEXAR COUNTY, TEXAS |
| | § | |
| HELVETIA ASSET RECOVERY, INC. | § | 224TH JUDICIAL DISTRICT |

---

## FINAL JUDGMENT AND ORDER OF SANCTIONS

---

On March 3 and 4, 2014 came to be heard the First Amended Motion for Sanctions filed by Movants Puerto Verde, Ltd. ("Puerto Verde") and Helvetia Asset Recovery, Inc. (collectively, "Helvetia") against Respondents Burton Kahn ("Mr. Kahn") and his attorney L. Terry George ("Mr. George") (the "Sanctions Motion"). Mr. Kahn represented himself pro se at this evidentiary hearing. Mr. George did not appear.[1]

The Court, having reviewed the Sanctions Motion, Mr. Kahn's response, testimony and other evidence presented, including the Temporary Injunction record in Cause No. 2013-CI-18355, argument from counsel and Mr. Kahn, and having taken judicial notice of the parties' pleadings and filings in related litigation Cause No. 2013-CI-18355, enters the following Final Judgment and Order of Sanctions:[2]

### I.
### FINDINGS AND CONCLUSIONS

**A. Background.**

1. Helvetia seeks sanctions under (1) Rule 13 of the Texas Rules of Civil Procedure; (2) Chapter 10 of the Texas Civil Practice & Remedies Code, Section 51.903 of the Texas Government Code; and (3) through the Court's inherent power to sanction litigants and their

---

[1] Reporter's Record, Volume 1 (RR-1), pp. 1-4.
[2] RR-2, p. 55.

Document scanned as filed.

counsel.[3] Section 51.903 permits, *inter alia*, an owner of real property to appear before a court and have the court declare as fraudulent an instrument filed of record creating or purporting to create an interest in real property owned by the movant. The owner/movant "may" appear *ex parte*. The reviewing court may not consider testimony or make findings on the merits.[4]

2.      The offending pleading that is the subject of the Sanctions Motion is an *ex parte* motion (the "*Ex Parte* Motion") filed on November 5, 2013 by Mr. Kahn in the name of Helvetia.[5] This *Ex Parte* Motion was filed pursuant to Section 51.903 of the Texas Government Code. Mr. George was designated as Mr. Kahn's lead counsel on the *Ex Parte* Motion.[6] Newly-retained Jay Petterson in San Antonio ("Mr. Petterson") was designated as "associate attorney," and signed the document for Mr. George, who resides in Fort Worth, Texas.[7]

3.      As described in more detail in this Judgment and Order, the Court finds that Mr. Kahn and Mr. George committed a fraud on the court and on the Movants for the malicious purposes of claiming ownership by Kahn of Helvetia, and of clouding legal title to land owned by Helvetia and sold by Helvetia to a *bona fide* purchaser for value. One day before the Respondents filed and presented the *Ex Parte* Motion, Helvetia had filed a Petition and Application for Temporary Restraining Order in Cause No. 2013-CI-18355 seeking to enjoin Mr. Kahn from interfering with Helvetia's business or holding himself out as an authorized representative of Helvetia.

---

[3] First Amended Motion for Sanctions, filed January 15, 2014, pp. 5; *See also, In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997).

[4] TEX. GOV'T CODE §§ 51.901, 51.903.

[5] *See* Exhibit 1. The pleading was filed in the name of "Helvetia Asset Recovery, Inc." The pleading was captioned "Motion for Judicial Review of Documentation or Instrument purporting to Create a Lien or Claim."

[6] Exhibit 1, p. 6; RR-4, p. 57.

[7] *Id.*

4. While Helvetia's counsel was negotiating with Respondents to secure a hearing on Helvetia's Application for Temporary Restraining Order, the Respondents secretly filed and presented the *Ex Parte* Motion to a Bexar County judge and secured an order (the "*Ex Parte* Order") that was then filed in the Bexar County deed records to slander Helvetia's title and cloud its buyer's title.[8] Mr. Kahn had no authority to file a motion on behalf of, or in the name of Helvetia, and his motion was a totally fictitious pleading filed for the purpose of causing harm to others.[9]

5. Jay Petterson, Mr. George's co-counsel who signed the motion on behalf of Mr. Kahn and Mr. George, later signed a Rule 11 Agreement whereby Mr. Kahn promised to petition the court to set aside the *Ex Parte* Order.[10] Mr. Kahn later disavowed the Rule 11 agreement, forcing Helvetia to try a lengthy temporary injunction hearing that resulted in a temporary injunction against Mr. Kahn and an order setting aside the *Ex Parte* Order, in other words, accomplishing at great cost what Mr. Kahn had earlier promised to do in his Rule 11 agreement.[11]

6. Helvetia was incorporated by Puerto Verde in August 2007. Puerto Verde is a Bahamian corporation and is owned by Robert Ripley ("Mr. Ripley").[12] Puerto Verde contributed approximately $1.2 million in cash to capitalize Helvetia in 2007, using the funds to buy Helvetia's 1,000 shares of stock at $1 per share.[13] These 1,000 shares represented the total

---

[8] Exhibits 1, 2, 15-18; RR-3, pp. 23-27.

[9] RR-4, p. 32-37; RR-3, p. 27, 101-104.

[10] Rule 11 Agreement, attached as Exhibit B to Motion to Strike Jury Demand, filed January 10, 2014 in Cause No. 2013-CI-18355, a filing of which the Court has taken judicial notice; RR-2, p. 55; RR-4, p. 57.

[11] RR-3, pp. 100-105; Exhibit 3.

[12] Defendant's Exhibit 9: See Temporary Injunction Reporter's Record, Vol. 2 (TI-RR-2), at pp. 6-8.

[13] Defendant's Exhibit 9: TI-RR-2, pp. 9-20.

number of shares authorized by Helvetia's charter and incorporation documents.[14] Helvetia used this capital contribution in 2007 to acquire 215 real estate lots in the Key Largo subdivision in San Antonio.[15] Helvetia has already sold many of the lots to homebuilders.[16] Sales of lots began in 2010, and have increased in subsequent years.[17]

7.    Helvetia appointed Mr. Kahn in 2009 to oversee its lot sales and closings, for which he received a 3% commission.[18] Mr. Kahn was the company's director and president from 2009 until Helvetia terminated him in August, 2013.[19] Prior to 2009, Kenneth Moore served as president and director of Helvetia.[20] Unhappy with his termination, Mr. Kahn set about to get even. He emptied Helvetia's bank accounts, transferring approximately $300,000[21] into other bank accounts personally owned by Mr. Kahn or his companies.[22] He then issued to himself on September 7, 2013, a stock certificate for 1,000 shares of Helvetia common stock and purported to cancel Helvetia's 2007 offer to sell its stock to Puerto Verde.[23] Next Mr. Kahn signed and filed a warranty deed in the name of Helvetia that purported to convey the entire Key Largo subdivision to Paradiv Corporation ("Paradiv"), a corporation newly formed by

---

[14] *See* Exhibit G attached to Exhibit 1 (Helvetia Certificate of Formation For-Profit Corporation); Defendant's Exhibit 8: TI-RR-4, p. 33, 34.

[15] Exhibits 20-22, Defendant's Exhibit 9: TI-RR-2, pp. 10-20.

[16] Defendant's Exhibit 9:TI-RR-3, pp. 57-58.

[17] Defendant's Exhibit 9: TI-RR-3, 56-57.

[18] Defendant's Exhibit 9: TI-RR-Excerpts, pp. 63-68; Defendant's Exhibit 8: TI-RR-4, p. 123-124; Defendant's Exhibit 9: TI-RR-3, pp. 57, 61.

[19] Defendant's Exhibit 9: TI-RR-4, p. 17; TI-RR-3, p. 43.

[20] Defendant's Exhibit 9: TI-RR-2, pp. 20-26, 33-35; Exhibit 8: TI-RR-4, p. 17.

[21] Mr. Kahn testified that "300 some odd thousand dollars" was transferred from Helvetia to his accounts. The Court's finding is based on this testimony and is not intended to foreclose Helvetia from demonstrating at trial in Cause no. 2013-CI-18355 that more was in fact transferred into his accounts. RR-3, pp. 43-45.

[22] Defendant's Exhibit 8: TI-RR-4, pp. 38-42; Defendant's Exhibit 9: TI-RR-3, pp. 41-53, RR-3, pp. 38-50.

[23] Defendant's Exhibit 8: TI-RR-4, pp. 42-46; Defendant's Exhibit 9: TI-RR-3, pp. 18-19; Exhibit 4.

Mr. Kahn.[24] Paradiv paid nothing for Key Largo, and the conveyance included all lots previously sold by Helvetia to others — including lots which Mr. Kahn had personally closed and for which he had received his 3% commission.[25] After the conveyance to Paradiv, Mr. Kahn filed his *Ex Parte* Motion to invalidate six recent sales made by Helvetia to a builder that Mr. Kahn also recently sued in a separate lawsuit in Bexar County.[26]

B. **Mr. Kahn's Sophistication.**

8. Mr. Kahn is well educated, graduating with an engineering degree from M.I.T. [27] He is employed as an engineer, and has owned and operated several engineering companies.[28]

9. Mr. Kahn has represented himself pro se in numerous matters, both in district court and at the appellate level.[29] His "practice" before the courts spans over twenty years, including multiple cases in Houston and San Antonio.[30] Mr. Kahn is knowledgeable about liens and the sale of property.[31] He knows how to cloud title to property and chill financing needed by builders.[32] Mr. Kahn studies the law, performs legal research using Loislaw and O'Conner's, and is adept in using the internet.[33] Mr. Kahn's son is a litigation attorney practicing in

---

[24] Exhibits 7 and 8; Defendant's Exhibit 9: TI-RR-3, pp. 43-46, 55-56; Defendant's Exhibit 8: TI-RR-4, pp. 46-47, 52-53.

[25] Defendant's Exhibit 8: TI-RR-Excerpts, pp. 47-48, 63-68; Defendant's Exhibit 8: TI-RR-4, p. 52-53, 123-124; Defendant's Exhibit 9: TI-RR-3, pp. 59-61.

[26] Defendant's Exhibit 8: TI-RR-Excerpts, pp. 63-68.

[27] RR-3, pp. 28-30; Defendant's Exhibit 8: TI-RR-4, p. 43.

[28] Defendant's Exhibit 9: TI-RR-4, p. 92-93; Exhibit 25, Exhibit 26 (Gillett); Exhibit 6 (Contour). Defendant's Exhibit 9: TI-RR-4, pp. 64-65 (Contour).

[29] RR-3, pp. 28-33, 60-66, 74-77, 79.

[30] *Id.*

[31] *Id; see also* RR-3, pp. 38; RR-4, pp. 57-62; Exhibits 26 and 27.

[32] *Id.*, see also, RR-3, p. 27.

[33] RR-3, p. 28-29. Justice Michol O'Connor is a respected author of a series of books relating to litigation in Texas and federal court, including *O'Connor's Texas Rules *Civil Trials* and *O'Connor's Texas Causes of Action*.

The transcript does not reflect Mr. Kahn's reference to Loislaw; however, Helvetia counsel recalls this testimony. Loislaw is a subscription internet research service similar to Lexis or Westlaw. See www.loislaw.com.

Houston.[34] Mr. Kahn has demonstrated in this case knowledge of legal terms and concepts used in and applicable to these proceedings.[35]

## C. Mr. Kahn's Claims.

10. Mr. Kahn and Mr. George filed a fictitious pleading in the name of Helvetia by filing the November 5, 2013 *Ex Parte* Motion.[36] Neither had authority to file the pleading.[37] Helvetia had fired Mr. Kahn in August 2013 and relieved him of duties long before Mr. Kahn filed the *Ex Parte* Motion.[38] His claim to authority stems from an alleged purchase of Helvetia's stock on September 7, 2013, but this claim is groundless.[39]

11. Mr. Kahn alleges that Helvetia's stock was available for him to purchase just days after he was fired in 2013 because Helvetia's stock had allegedly never been purchased by Puerto Verde, or anyone, since Helvetia's formation in 2007.[40] Mr. Kahn claims that an allegedly forged signature of Kenneth Moore, the then-president of Helvetia, on the 2007 stock certificate Helvetia delivered to Puerto Verde nullified Puerto Verde's rights to Helvetia's stock, and somehow implausibly caused Puerto Verde to forfeit its $1.2 million investment.[41] Mr. Kahn also advances the novel legal argument of stock forfeiture by typographical error.[42] Notwithstanding Puerto Verde's payment of over $1.2 million to Helvetia in 2007, Puerto Verde, according to Mr. Kahn, owns nothing because the stock certificate was issued in the name of

---

[34] Defendant's Exhibit 8: TI-RR-4, p. 43.

[35] *See*, e.g., RR-4, pp. 64-66, 68.

[36] Defendant's Exhibit 9: Exhibit 1.

[37] Defendant's Exhibit 8: TI-RR-4, p. 19. Mr. Kahn testified that Mr. Petterson did not have authority to sign the Rule 11 Agreement, "giving away everything we had worked very, very hard on this — in rem case." RR-4, p. 38.

[38] TI-RR-3, pp. 38-41.

[39] RR-3, pp. 45-46.

[40] RR-3, pp. 45-56; Exhibits 5 and 6.

[41] *See* Exhibits 1, 4, 5; RR-3, pp. 90-94.

[42] Defendant's Exhibit 9: TI-RR-3, pp. 29-30, 92-94; Defendant's Exhibit 2.

"Puerto Verde, Inc.," not "Puerto Verde Ltd.," Puerto Verde's proper name.[43] Finally, Mr. Kahn claims the infusion of $1.2 million by Puerto Verde was a loan, not a capital contribution, even though there is no note or deed of trust, and even though his position is contrary to his own sworn tax return for Helvetia for the year ending 2012, which shows no such liability.[44]

12.    Mr. Kahn's legal position as to his stock ownership is groundless. Texas has adopted Article 8 of the Uniform Commercial Code, which governs the creation and transfer of corporate securities. Under Article 8 complete ownership of a stock may exist without either the issuance or delivery of a stock certificate. Texas common law is the same. For at least 100 years, Texas has not required a stock certificate as the *sine qua non* of ownership.[45] What controls the issue of ownership is whether stock was lawfully issued for purchase by the shareholder and whether the shareholder in fact purchased the stock. The evidence here showed that Helvetia issued its stock for purchase to Puerto Verde, and that Puerto Verde purchased the stock.[46]

13.    Mr. Kahn knew Puerto Verde purchased Helvetia's stock in 2007, and he knew that Puerto Verde's capital contribution enabled Helvetia to acquire the Key Largo subdivision. Both Mr. Kahn and Mr. George had personal knowledge that Helvetia issued its stock to Puerto Verde in 2007. They both actively participated in Helvetia's incorporation.[47] Helvetia hired

---

[43] *Id.*

[44] Exhibit 6; *see* Schedule L, liabilities (lines 16-21); RR-4, p. 40-43, 48.

[45] *See In re Seminole Walls & Ceilings Corp.*, 446 B.R. 572, 585-86 (M.D. Fla. 2011 (applying Texas law); *Yeoman v. Galveston City Co.*, 106 Tex. 389, 167 S.W. 710, 720 (Tex. 1914).

[46] Exhibits 4, 5, 21, and 22. "[A] corporation may issue shares for consideration if authorized by the board of directors of the corporation." TEX. BUS. ORGS. Code § 21.157(a); *see also*, § 21.160. Shares may be issued by cash consideration. *Id.*, at § 21,159(2). When the consideration is paid, the shares are considered to be issued, and are fully paid and nonassessable. *Id.*, § 21.157. The judgment of either the board of directors, or the shareholder is conclusive in determining the value and sufficiency of the consideration received for the shares. *Id.*, § 21.162. (emphasis added).

[47] Defendant's Exhibit 5, including Exhibit 1 attached thereto (Robert Ripley's Affidavit), and Exhibit D attached thereto; Exhibit 19, 20; Defendant's Exhibit 8: TI-RR-5, pp. 4-6, 8, 18, 21-22.

Mr. George, who was Mr. Kahn's neighbor, to act as incorporator.[48] Mr. George prepared Helvetia's 2007 organizational minutes, which showed that Helvetia issued its 1,000 shares of stock to Puerto Verde at $1 per share.[49] Puerto Verde wired approximately $1.2 million in cash in 2007 to capitalize Helvetia in exchange for all its shares, thus enabling Helvetia to purchase the Key Largo subdivision.[50] Mr. Kahn personally monitored and confirmed the 2007 wire transaction and the closing on Key Largo.[51]

14. The organizational minutes, wiring instructions and confirmations, Helvetia's 2012 tax return signed by Mr. Kahn, the stock certificate itself, and Mr. Kahn's own communications between 2007 and September 2013 establish that Mr. Kahn knew his claim of ownership through a stock purchase in 2013 was groundless.[52]

15. With regard to Mr. Kahn's claims that Mr. Moore's signature on the Puerto Verde stock certificate was forged, the Court finds this claim factually baseless and Mr. Kahn's conduct contrary to any reasonable investigation that should have been undertaken to ascertain the validity of a signature by an officer of a corporation. Mr. Moore confirmed his signature at the temporary injunction hearing.[53] Mr. Kahn failed to contact Mr. Moore who, like Mr. Kahn, lives in San Antonio, to ask him if his signature was valid.[54] Instead, Mr. Kahn used the internet to locate and interview a handwriting expert, Curtis Baggett ("Mr. Baggett").[55] Mr. Kahn secured and attached a report by Mr. Baggett to the Ex Parte Motion opining that Mr. Moore's signature

---

[48] Defendant's Exhibit 8: TI-RR-4, pp. 43-45; Defendant's Exhibit 9: TI-RR-3, pp. 54-55.

[49] Exhibit 19, 20.

[50] Exhibit 19, 21, 22.

[51] Exhibit 19.

[52] RR-4, pp. 38-48; Defendant's Exhibit 9: TI-RR-2, pp. 26-33; Exhibits 6, 19, 20, 21, 22, 23, 24, and 25.

[53] Defendant's Exhibit 8: TI-RR-4, pp. 129, 147-152.

[54] RR-3, pp. 90-92.

[55] RR-2, p. 38; RR-3, p. 84.

had been "forged."[56] Mr. Kahn conceded he did not investigate Mr. Baggett, and appeared more remorseful that he had paid Mr. Baggett, rather than failing to recognize that Mr. Baggett was "bad," as one of his lawyers described him to Mr. Kahn.[57]

16. Mr. Baggett has been deemed incompetent to testify as a handwriting expert in numerous published court opinions, and branded a charlatan by the Dallas Court of Appeals.[58] Multiple legal opinions available in the public record before Mr. Kahn and his lawyers filed their *Ex Parte* Motion demonstrate that Mr. Baggett's affidavit would not be admissible to support Mr. Kahn's forgery allegations in this case under any theory he may claim. Judge Xavier Rodriguez, of the United States District Court for the Western District of Texas, San Antonio Division, recently excluded Mr. Baggett in *Routh v. Bank of Am., N.A.*, SA-12-CV-244-XR, 2013 (W.D. Tex. Aug. 7, 2013).[59] In *Routh*, involving property documents recorded in the Bexar County records, Mr. Baggett used language identical to the report he provided to Mr. Kahn, changing only the name of the person whose name had purportedly been forged:

> Based upon thorough analysis of these items and from an application of accepted forensic document examination tools, principles and techniques, it is my professional expert opinion that a different person authored the name of **[Kenneth E. Moore/Jennifer Baker]** on the questioned document. Someone did indeed forge the signature of **[Kenneth E. Moore/Jennifer Baker]** on the questioned document.

(emphasis added). Judge Rodriguez cited a number of cases where other courts had struck Mr. Baggett from testifying as a handwriting expert witness after finding multiple severe deficiencies with his expertise and analysis.[60]

---

[56] *See* Exhibit M to Exhibit 1.

[57] RR-2, pp. 38-39; RR-3, pp. 84-86.

[58] *See Brown v. State of Texas*, No. 05-97-00289-CR, 1999 WL 61858, at *8 (Tex. Crim. App. Feb. 9, 1999).

[59] Exhibit 11, 12.

[60]*See also, Primerica Life Ins. Co. v. Atkinson*, 2012 WL 6057888, at *4 (W.D. Wash. Dec. 6, 2012) (finding that Mr. Baggett's letter of opinion "provides no facts, reasoning, or analysis;) *Brown v. Primerica Life Ins. Co.*, No. 02-

17. For example, in *Dracz v. American General Life*, 426 F.Supp.2d 1373 (M.D. Ga. 2006), the court struck Mr. Baggett as an expert witness finding his testimony unreliable and his qualifications "paltry" and not qualified to testify as an expert in the field of handwriting analysis.[61] In a bench trial in *U.S. v. Revels*, 1:10-CR-110-1 (E.D. TN., May 9, 2012), the court similarly excluded Mr. Baggett pointing to his "evident deficiencies" as a handwriting expert, and referred to the Dallas Court of Appeals opinion that embraced a prosecutor's use of the term "charlatan" in reference to Mr. Baggett, which the court defined as a "pretender to medical knowledge: a quack." [62] See *Brown v. State of Texas*, No. 05-97-00289-CR, 1999 WL 61858, at *8 (Tex. Crim. App. App. Feb. 9, 1999). The court in *Revels* also noted that Mr. Baggett had received felony convictions for theft and aggravated assault, and a deferred adjudication after pleading guilty to Tampering with a Government Record, which stemmed from his failure to truthfully disclose his criminal history on a government form. Mr. Kahn acknowledged that legal opinions about Mr. Baggett were publicly available before he filed the *Ex Parte* Motion, but he took no steps to investigate Mr. Baggett or his background.[63]

18. For these factual and legal reasons, and others already stated, the Court gives no weight to Mr. Kahn's persistence that forged or fraudulent documents allowed him to buy Helvetia's stock. Mr. Kahn's additional complaints about the incorporation of Helvetia in 2007 that he claims entitled him to buy its stock in 2013 also fail, as follows.

---

C-8175, USDC, N.D. Illinois, April 29, 2006 (court struck Mr. Baggett's affidavit and excluded his testimony, finding his affidavit "unquestionably inadequate to underlie expert testimony; ) *Wheeler v. Olympia Sports Ctr., Inc.*, No. 03-265-P-H, 2004 WL 2287759 (D. Me. Oct. 12, 2004) (court excluded Mr. Baggett noting that "'comparing' the handwriting on several documents...is insufficient...Any individual, with no training or experience whatsoever, could 'compare' the handwriting on different documents and reach a conclusion;") *Abdin v. Abdin*, 94 Ark. App. 12, 223 S.W.3d 60, 65 (2006).

[61] Exhibit 13.

[62] Exhibit 14.

[63] RR-3, pp. 87-92; RR-4, p. 94.

19. Mr. Kahn's claim that Puerto Verde did not pay $1,000 to buy the 1,000 shares of Helvetia's stock is meritless.[64] A company that pays $1.2 million to capitalize a corporation has by definition used the first $1,000 of the investment to buy the capital stock, as expressly provided for by Helvetia's organizational minutes.[65] In Helvetia's 2012 tax return, signed by Mr. Kahn, Puerto Verde's investment is accounted for as purchasing Helvetia's capital stock for $1,000, with the remainder of the investment treated by Helvetia as additional paid in capital.[66] Bearing on Mr. Kahn's credibility, Mr. Kahn claimed in Helvetia's 2012 tax return to own all of Helvetia's stock as early as 2012, even though he swore before this Court that he purchased the stock in September 2013, and that nobody owned Helvetia's stock before that time.[67]

20. Mr. Kahn's alternative claim that Puerto Verde's $1.2 million investment was a "loan," and not capitalization of Helvetia, is baseless. Helvetia's tax return shows that Helvetia owes no loan or liability of any nature.[68] Further, Mr. Kahn could not identify any promissory note, deed of trust, or any other typical indicia of indebtedness to support his allegation.[69] In fact, closing documents on Helvetia's purchase of the Key Largo real estate reflect there was no debt.[70]

21. When the *Ex Parte* Motion was filed on November 5, 2013, Mr. Kahn was represented by legal counsel, including Mr. George.[71] Mr. Kahn drafted the *Ex Parte* Motion

---

[64] RR-4, p. 93; RR-3, p. 12.

[65] Exhibit 5.

[66] Exhibit 6; *see* Schedule L, capital stock account, and additional paid-in capital account (lines 22 and 23).

[67] *Id.*; RR-3, pp. 48-56; Defendant's Exhibit 8: TI-RR-4, pp. 41-43.

[68] Exhibit 6; *see* Schedule L, liabilities (lines 16-21); RR-4, p. 40-43, 48.

[69] *Id., see also* RR-4, p. 48.

[70] Exhibit 22.

[71] Exhibit 1; RR-4, pp. 55-57; RR-3, pp. 63, 69, 81-82; Defendant's Exhibit 8: TI-RR-3, pp. 61-62.

and directed his lawyers to file it.[72] Without any authority, Mr. Kahn filed the pleading in the name of Helvetia, and falsely asserted his ownership of Helvetia throughout the filing, which he reiterated in his supporting affidavit.[73] Mr. Kahn's affidavit, containing his allegations of fraud and forgery against Puerto Verde, was later "massaged" by Mr. Petterson, who Mr. Kahn retained just days before he filed the *Ex Parte* Motion.[74]

22.     In the *Ex Parte* Motion, Mr. Kahn sought to have six warranty deeds executed by Helvetia declared invalid.[75] The six warranty deeds represented Helvetia's six sales of lots to a homebuilder in September and October 2013, after it had terminated Mr. Kahn.[76] Mr. Kahn claimed that because he bought Helvetia's stock on September 7, 2013, after he was terminated, only he, and not the person signing the deeds, had the authority to sell Helvetia's lots.[77]

23.     Mr. Kahn and his attorneys knew or should have known that Section 51 of the Texas Government Code only affords the extraordinary remedy of *ex parte* relief to "owners" of real property.[78] Mr. Kahn did not meet this requirement.[79] He did not personally own any of the six lots, he did not own Helvetia, and he had no relationship with Helvetia at the time the *Ex Parte* Motion was filed.[80]

---

[72] *Id.*; RR-4, pp. 55-57; Defendant's Exhibit 1 (Attorney Employment Agreement with Mr. Petterson, dated November 11, 2013, effective November 1, 2013).

[73] Exhibit 1; *see also*, Mr. Kahn's Affidavit attached as Exhibit 1 to the *Ex Parte* Motion.

[74] RR-4, pp. 55-57; Defendant's Exhibit 1.

[75] Exhibit 1, pp. 2-4, § IV.

[76] *Id.*, *see also*, Exhibits A-F attached to Exhibit 1.

[77] Exhibit 1; Mr. Kahn's affidavit attached as Exhibit 1 to Exhibit 1.

[78] *See* TEX. GOV'T CODE ANN. § 51.903. An obligor or debtor of the real property may also bring an action under these proceedings, but Mr. Kahn sought relief only as an "owner." Mr. Kahn makes no claim that he is either an obligor or debtor of the six lots at issue.

[79] RR-4, pp. 43-46; Exhibits 23 and 24.

[80] *Id.*

24.     Section 51.903 also limits the Court's determination to whether the six warranty deeds are fraudulent as defined by section 51.901, and does not provide for findings by the Court on the parties' underlying dispute. *See* TEX. GOV'T CODE ANN. § 51.903(a), (g). *See In re Purported Liens or Claims Against Samshi Homes, L.L.C.*, 321 S.W.3d 665, 667 (Tex.App.-Houston [14th Dist.] 2010, no pet.); *Becker v. Tropic Isles Ass'n*, No. 13-08-00559-CV, 2010 WL 877569, at *3 (Tex.App.-Corpus Christi Mar. 11, 2010, pet. denied) (mem. op.); *In re Hart*, No. 07-98-0292-CV, 1999 WL 225956, at *2 (Tex.App.-Amarillo Apr. 15, 1999, no pet.).[81] This statute was enacted after the Republic of Texas filed hundreds of frivolous liens against government officials.[82]

25.     Due to the extraordinary *ex parte* nature of the proceedings, Section 51.903(a) of the Texas Government Code requires the verified motion recite that the movant is aware that sanctions will be imposed for a frivolous filing. The *Ex Parte* Motion contained this recitation.[83]

---

[81] Section 51.903 was enacted as part of House Bill 1185, passed in 1997. *See* Act of May 10, 1997, 75th Leg., R.S., Ch. 189, § 14, sec. 51.903, 1997 TEX. SESS. LAW. SERV. 1045, 1053 (current version at TEX. GOVT. CODE ANN. § 51.903 (Vernon 2005)).

The Senate's Bill Analysis explains the impetus behind the passage of Bill 1185, as follows:

> Currently, individuals and organizations have begun to take action based on their refusal to recognize the authority and sovereignty of the government of the State of Texas. These entities have filed fraudulent judgment liens issued by so-called "common law courts" and fraudulent documents purporting to create liens or claims on personal and real property with the secretary of state and many county and district court clerks throughout the state. Many of the filings have been against the State of Texas and public officers and employees, as well as private individuals. These filings have clogged the channels of commerce and have amounted to harassment and intimidation of both public officials and ordinary citizens. This bill provides both civil and criminal remedies for those against whom such fraudulent filings have been made. . . . This bill creates an expedited judicial process that permits someone aggrieved by the fraudulent filing to obtain an expedited legal process to obtain a court order declaring the filing to be fraudulent. . . .

SENATE RESEARCH CTR., BILL ANALYSIS, TEX. H.B. 1185, 75ᵀᴴ LEG., R.E. (1997) (emphasis added). Thus, the bill analysis supports the view that the statute was not created to determine the legitimacy and validity of the claimed interest in the property.

[82] Texas Attorney General's summary: https://www.texasattorneygeneral.gov/alerts/alerts_view.php?id=114&

[83] Exhibit 1, p. 5.



into and filed of record their Rule 11 agreement. [85] The Rule 11 Agreement provided, among other things, to set aside the *Ex Parte* Order by submitting an agreed order to that effect within seven days.[86]

28. On November 22, 2013, Mr. Kahn fired Mr. Petterson and Ms. Goodman and substituted himself as counsel pro se.[87] Mr. Kahn refused to execute the documents prepared by Helvetia to effectuate the Rule 11 agreement. Mr. Kahn has since asserted in pleadings and testimony that Helvetia's lawyers either bribed or coerced his lawyers into signing the Rule 11 Agreement.[88] Though Mr. Kahn claims he did not expressly authorize the signing of the Rule 11 Agreement, the Court finds no evidence that his attorneys lacked implied or apparent authority to sign the Rule 11 agreement. The Court finds no evidence to support the claim that opposing counsel bribed or coerced Mr. Kahn's counsel into signing the Rule 11 agreement.

29. Mr. Kahn created additional delay when he appeared at the resetting of Helvetia's Emergency Motion, and its Motion to Enforce Rule 11 Agreement, on November 26, 2013 with two new lawyers, seeking a continuance. Judge Peter Sakai granted a continuance, but also entered a TRO restraining Mr. Kahn from taking any actions on behalf of either Helvetia or Paradiv, and setting the hearing on the temporary injunction for December 6, 2013. Judge Sakai found in the TRO that further attempts by Mr. Kahn to claim title to Helvetia's properties and

---

[85] Defendant's Exhibit 8: TT-RR-4, pp. 75, 77, 83-85, 87-90.

[86] Pertinent language of the Rule 11 Agreement states:

2. The parties shall execute documents within the next 7 days sufficient to implement the following:
   a. Agreed Order setting aside the judgment of November 5, 2013, in cause 18384.
   b. A complete release and hold harmless by Burton Kahn...of any claim of ownership or title to the 6 lots at issue in Cause No. 18394.

[87] Court records do not show that Mr. George was ever discharged from his representation of Mr. Kahn in either this case or Cause No. 18355, although the Court discharged him in an least one related action, Cause No. 17016, with Mr. Kahn's approval.

[88] RR-2, p. 53; RR-3, p. 30.

Court had fully adjudicated Helvetia's temporary injunction, its sanctions request, and its request to enforce the Rule 11 Agreement. Judge Canales declined at that time to make any contempt findings, but expressly recognized in his order that Mr. Kahn had violated Judge Sakai's TRO, that he had refused to implement the November 15, 2013 Rule 11 Agreement, and that he and Mr. George had failed to produce documents or appear for depositions as Judge Sakai had ordered. Helvetia deposed Mr. Kahn on December 6; Mr. George did not appear for his deposition though ordered to do so.[92]

32. Mr. Wachsmuth and Mr. Fanucci represented Mr. Kahn during the three-day evidentiary hearing that culminated on December 11, 2013 with Judge Karen Pozza granting Helvetia's application for a Temporary Injunction enjoining Mr. Kahn from taking further actions on behalf of Helvetia and Paradiv.[93] Judge Pozza also set aside the *Ex Parte* Order.[94] Mr. Kahn then fired Mr. Wachsmuth and Mr. Fanucci on December 13, 2013, and has since been pro se.

33. Helvetia set its First Amended Motion for Sanctions for hearing on January 21, 2014. Both Mr. Kahn and Mr. George appeared at the Courthouse on January 21 for the sanctions hearing. The presiding court assigned all of the parties' pending matters pending in Cause Nos. 18394 and 18355 to the Monitoring Court, and all counsel and Mr. Kahn met with the Monitoring Court Clerk about scheduling and resetting the hearings to March 3, 2014.[95]

---

[92] *Id.*

[93] *Id.*; an Amended and Supplementary Temporary Injunction was entered by Judge Pozza on December 18, 2013 that expressly permitted Helvetia to continue selling its lots.

[94] Exhibit 3.

[95] *Id.*

## II.
## ORDER OF SANCTIONS

34. Helvetia has provided evidence that overcomes the general presumption by courts that pleadings and other papers are filed in good faith.

35. As discussed herein, the conduct by Mr. Kahn and Mr. George in failing to conduct appropriate investigation and due diligence before filing the *Ex Parte* Motion, in delaying efforts by Helvetia to set it aside, and in refusing to comply with the Rule 11 Agreement, show that their pleading and their conduct has been groundless, that the pleading was filed in bad faith and for harassment, that it was filed for an improper purpose, that it lacked in factual or legal basis, and was not supported by evidence. These findings are incorporated into the Court's findings that sanctions are appropriate under Rule 13, Chapter 10, § 51,903, and under the Court's inherent power, as described in this order and judgment.

### A. Ruth 13, Texas Rules of Civil Procedure

36. Rule 13 gives the Court the option of imposing sanctions on both a party and counsel for filing a groundless pleading that is either brought in bad faith or brought for the purpose of harassment. TEX. R. CIV. P. 13; *In re C.M.V.*, 136 S.W.3d 280, 284 (Tex. App. – San Antonio 200, no pet.) The rule defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law," and thus turns on the legal merits of a claim. *Id.; Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.-Austin 2008, pet. denied). "Bad faith" requires the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Id.*, at 407. Improper motive is an essential element of bad faith. *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex.App.-Dallas 2003, no pet.). Rule 13 also provides, "[S]anctions under this rule may not be imposed except for good

cause, the particulars of which must be stated in the sanction order." *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

37. Rule 13 permits the trial court to impose sanctions on attorneys or parties who file a "fictitious pleading" or "make statements in pleading which they know to be groundless and false." After notice and hearing, the trial court "shall impose an appropriate sanction" available under Rule 215. TEX. R. CIV. P. 13.

38. Sanctions available under Rule 215.2(b) include attorney's fees. See TEX. R. CIV. P. 13, 215.2(b). Sanctions awarded as attorney's fees fall within the sound discretion of the Court. *Olibas v. Gomez*, 242 S.W.3d 527, 535 (Tex. App.-El Paso 2007, pet. denied); *Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.-Texarkana 1992, writ denied) (citing *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984)).

39. In determining whether sanctions are appropriate, the trial court examines the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Alejandro v. Bell*, 84 S.W.3d 383, 392 (Corpus Christi 2002, no pet. h.); *Home Owners Funding Corp. of Am. v. Scheppler*, 815 S.W.2d 884, 889 (Tex. App. – Corpus Christi 1991, no writ). The Court also considers the acts or omissions of the represented party or counsel, not merely the legal merit of a pleading or motion. *Griffin Indus. V. Grimes*, No. 04-02-00430-CV, 2003 WL 1911993, *4 (San Antonio Apr. 23, 2003, no pet.) (citing *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex. App.--Dallas 1993, no writ.).

40. In addition, the Court is entitled to evaluate the credibility of the testimony and determine what weight to give it. *Wein v. Sherman*, 03-10-00499-CV, 2013 Tex. App. Lexis 10666, at *24 (Tex.App.-Austin Aug. 23, 2013, n.p.h.) (mem. op.) (*citing Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 412 (Tex.App.-Houston [1st Dist.] 2005, pet. denied)).

41. The Court has made the necessary factual determinations about the motives and credibility of Mr. Kahn. The Court finds that sanctions against Mr. Kahn are appropriate under Rule 13. The Court is precluded from sanctioning Mr. George under a literal reading of this Rule because his associate attorney, not Mr. George, signed the *Ex Parte* Motion. *Yuen v. Gerson*, 342 S.W.3d 824 (Tex. App. – Houston [14th Dist.] 2011, pet. denied).

42. Helvetia has not sought sanctions against the associate attorney, Mr. Petterson. Although Mr. Petterson signed the offending pleading, Mr. Petterson attempted to rectify the error within ten days by entering into the Rule 11 Agreement.

**B.** **The *Ex Parte* Motion Was a Fictitious Pleading And is Groundless.**

43. The Court finds that the *Ex Parte* Motion was a fictitious pleading and groundless, and that it was brought both in bad faith and for harassment. The *Ex Parte* Motion has no basis in law or fact, and is not warranted by good faith argument for the extension, modification, or reversal of existing law.[96] Mr. Kahn filed the pleading maliciously without any basis in fact or law.[97] Mr. Kahn also filed it as an experiment to obtain an opinion of Helvetia ownership that he could then use to bolster his egregious ownership arguments in this matter.

44. The Court has assessed Mr. Kahn's credibility along with the evidence presented, and finds there is not a scintilla of evidence that Mr. Kahn owns Helvetia's stock, and thus finds the *Ex Parte* Motion meritless. The Court finds that Mr. Kahn has used this false allegation for improper purposes, and thus finds good cause in assessing sanctions as further particularized herein. His wrongful claims of ownerships were at the genesis of all of the proceedings herein, and spawned the litigation between the parties, unnecessarily causing Helvetia to incur substantial fees and expenses.

---

[96] RR-3, p. 93-95.

[97] RR-3, pp. 101.

45. By claiming Mr. Kahn owned the property owner, and thus had standing to bring an action under § 51.903 of the Texas Government Code, Mr. Kahn and Mr. George made factual contentions that lacked any legal or evidentiary support. The claim of a forged stock certificate was factually bogus and legally irrelevant.

46. The *Ex Parte* Motion also exceeded the scope of §§ 51.901 and 51.903 of the Texas Government Code by seeking and obtaining extraneous findings as discussed herein.

47. Mr. Kahn appears to challenge the Court's findings based on either the United States Constitution or the Texas Constitution. Although not clearly articulated, his challenges are not relevant here because the Court has based its findings on non-constitutional grounds.[98]

## C. The *Ex Parte* Motion was Filed In Bad Faith and for Harassment.

48. The Court finds that bad faith was demonstrated in that there was a conscious doing of a wrong for a dishonest or malicious purpose. The *Ex Parte* Motion constituted harassment in that it was intended to annoy, alarm, and abuse another person. The Court finds that the *Ex Parte* Motion was filed:

a. To avoid the probable and imminent entry of a TRO against Mr. Kahn;

b. To maliciously "cloud the title" of the six lots, and thus to interfere and harm Helvetia's business by Mr. Kahn's claim that he owned property that Helvetia had already sold to builders;

c. To chill Helvetia's future sales of property, as Mr. Kahn acknowledged he knew the litigation would make builders, lenders and title companies reluctant to close

---

[98] See *In re Hart*, No. 07-98-0292-CV, 1999 WL 225956, at *2 (Tex. App.-Amarillo Apr. 15, 1999, no pet.) (Court declined to address Harts' complaint that § 51.903 of the Texas Government Code was unconstitutional, citing *San Antonio Gen. Drivers v. Thornton*, 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957), which directs a court not to pass upon the constitutionality of a statute if the particular case can be decided upon non-constitutional grounds).

on property sales by Helvetia if they thought Mr. Kahn would record adverse ownership claims to the property;

d.    To attempt to extort revenues earned by Helvetia after it had terminated Mr. Kahn's employment;

e.    To retaliate or "get even" against his former employer.

49.    Mr. Kahn acted with duplicity, defrauding the Court as shown herein, and defrauding Helvetia.[99]

50.    The timing of Mr. Kahn's filing of the *Ex Parte* Motion also shows bad faith and filing for an improper purpose. Email exchanges show that Helvetia sued Mr. Kahn on November 4, 2013 for various torts and injunctive relief, and were attempting to coordinate with Mr. George a time to present to the Court Helvetia's application for a temporary restraining order.[100] These types of games with the Court and opposing counsel go to the Court's core functions, and subject Mr. Kahn and Mr. George to sanctions under the Court's inherent power to control litigants.

51.    Mr. Kahn's pleadings and conduct demonstrate delay when he avoided the hearing to set aside the *Ex Parte* Order by agreeing to, and later reneging, on the Rule 11

---

[99] Defendant's Exhibit 8: TI-RR-4, pp. 82-83 ("Paradiv doesn't own [the six lots], it is Helvetia. And Paradiv was only — the only reason why I made that transaction [the Ex Parte Motion], was to try to prevent Robert Ripley from — he sold six lots when he wasn't even…president of the company.")

[100] RR-3, pp. 95-101; Exhibits 15-18.

*Helvetia Asset Recovery, Inc. v. Burton Kahn and Paradiv Corporation*, filed on November 4, 2013, in the 407th Judicial District, Bexar County, Texas.

On November 4, 2013, counsel for Helvetia emailed Mr. Kahn's lawyer, Mr. George, a newly filed petition and application for injunctive relief seeking to enjoin Mr. Kahn from taking further action on behalf of Helvetia, referring to his attempts to convey Helvetia's property to Paradiv. The email requested that Mr. George provide a convenient time for a court appearance on November 5 if he intended to contest Helvetia's request for a temporary restraining order. Mr. George offered no specifics but noted that Mr. Kahn had engaged a San Antonio attorney, Jay Petterson, as associate counsel.

Agreement.[101] Further delay occurred on November 26, 2013 when Mr. Kahn and new counsel *de jour* sought and obtained a continuance, falsely claiming the new counsel needed to get up to speed. Mr. Kahn fired those lawyers the same day, showing grounds for the continuance were a pretext for simply more delay. The refusal by Mr. Kahn and Mr. George to comply with Helvetia's deposition notices on November 12, 2013, and their outright violation of Judge Sakai's orders for the same, demonstrate further delay. Mr. Kahn's voluminous pleadings on December 2, 2013 constitute further materially bad faith conduct and harassment when they set numerous substantive motions for hearing on the day Judge Sakai set Helvetia's temporary injunction for hearing. Their continued refusal to present themselves for deposition caused further delay and unnecessary expense, leading to Judge Canales' December 5, 2013 order to appear, in which he also expressly stated Mr. Kahn was already in violation of the TRO by his acts purporting to be on behalf of Helvetia.

52.    Mr. Kahn's attempt to trivialize his conduct is not creditable given the unrelenting efforts he took to keep his fraudulent claim intact on the six lots, through the date Judge Pozza set it aside on December 8, 2013. Moreover, by failing to release the fraudulent lien after demand was made by Helvetia, the Court may presume Mr. Kahn had the intent to harm and defraud Helvetia and others. Mr. Kahn claims he rightfully reneged on the Rule 11 Agreement, but by doing so he refused Helvetia's demand to release the lien, thus giving rise to such a presumption of intent.[102]

---

[101] RR-3, pp. 101-104.

[102] *See Florance v. State*, No. 05-08-00984-CR (Tex. App. – Dallas, Aug. 28, 2009). The Florance Court affirmed a judgment that Florance was guilty, after jury trial, and affirmed his sentence of six months in jail for Florance's failure to release a lien that was fraudulent under § 51.901, Tex. Gov't Code, in violation of Tex. Penal Code § 32.49.

53.     Mr. Kahn and Mr. George filed the *Ex Parte* Motion in bad faith, as it demonstrated a conscious doing of a wrong for a dishonest and malicious purpose. Their actions were taken in part to slander title, and to make it difficult or impossible for Helvetia to continue its sales of lots. Their intent to harm Helvetia in this manner showed an improper motive. Mr. Kahn's testimony demonstrated his subjective state of mind: he knew, and intended, for the filing to stop Helvetia from further lot sales.[103]

54.     Mr. Kahn has openly admitted his motivation in filing the *Ex Parte* Motion was to interfere with Helvetia and to stop further sales of lots. Mr. Kahn is knowledgeable about title companies and title searches, and intended his conduct to chill Helvetia's future sales of its property.[104]

55.     Mr. Kahn knew or should have known, by proper investigation, that Mr. Moore's signature was not forged, and that Mr. Baggett was not reputable and could not reasonably provide an opinion contrary to Mr. Moore's own testimony.

56.     The Court can infer Mr. Kahn was additionally motivated by retaliation or vindication, or part of a strategy to cause Helvetia to expend more fees and costs and drive it to the settlement table.

57.     Mr. Kahn was motivated to claim ownership of Helvetia because after he was fired, his direct access to all revenues earned by Helvetia from lot sales was cut off.

**D.      Chapter 10, Tex. Civ. Prac. & Rem. Code, and § 51.903, Texas Government Code.**

58.     Chapter 10 authorizes a court to impose sanctions upon a person, or a party represented by the person, where an attorney files a groundless pleading or files a pleading for an improper purpose, including to harass. TEX. CIV. PRAC. & REM. CODE §§ 10.001(1-3),

---

[103] RR-3, p. 27.

[104] *Id.*; *see also*, RR-3, pp. 38; RR-4, pp. 57-62; Exhibit 26 and 27.

10.004(a). Each allegation and factual contention in a pleading or motion must have, or be likely to have, evidentiary support after a reasonable investigation. *Id., see also, Bravenec v. Flores*, No. 04-11-00444-CV, San Antonio, Mar. 20, 2013, citing *Low v. Henry*, 221 S.W.3d 609, 614-15 (Tex. 2007). "A trial court may impose sanctions against a party if the court finds that the party has failed to comply with this requirement." *Bravenec, citing Nolte v. Flournoy*, 348 S.W.3d 262, 269 (Tex. App. – Texarkana 2011, pet. denied).

59.     Chapter 10 thus permits the Court to sanction a party or an attorney for filing pleadings that lack a reasonable basis in law or fact. See TEX. CIV. PRAC. & REM. CODE § 10.001-.006; *Low*, 221 S.W.3d at 614. The Court may impose sanctions if the Court finds that the party has failed to comply with any one of the requirements of Section 10.001 of the Texas Civil Practices & Remedies Code. TEX. CIV. PRAC. & REM. CODE § 10.004(a); *Nolte*, 348 S.W.3d at 269.

60.     For reasons previously described, and incorporated by reference, sanctions may be imposed against Mr. Kahn under Chapter 10 of the Texas Civil Practices and Remedies Code. The evidence shows that Mr. Kahn and Mr. George are both culpable and that both should be sanctioned for their conduct but as with Rule 13 the Court is precluded from assessing sanctions against Mr. George.

61.     More particularly, the *Ex Parte* Motion was filed for an improper purpose, and it lacks any evidentiary support as shown herein. Section 51.903 builds in an award of sanctions if a party seeks a finding not in compliance with the statute; Mr. Kahn and Mr. George orchestrated the hearing to be ex parte despite Helvetia's contemporaneous attempts to secure a hearing on a TRO that would have precluded Mr. Kahn's filing; Mr. Kahn filed the pleading without any authority; and his ownership claims are neither factually or legally supported.

## E.    Court's Inherent Power to Sanctions

62.    The Court has inherent power to impose sanctions.  Assessing sanctions under this inherent power involves a two-step process: (1) the Court should rely upon the rules and statutes expressly authorizing sanctions whenever possible, and (2) the Court, applying its inherent power to impose sanctions, must make factual findings, based on evidence, that the conduct complained of significantly interfered with the Court's legitimate exercise of its core functions.  Inherent power to sanction exists where necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of the Court.  Core functions include hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgments and enforcing judgments.  Core functions also include management of its docket and the issuance and enforcement of its orders.  The Court "may issue orders and, when it deems appropriate, vacate, rescind, or modify those orders.  Lawyers and the litigants do not have such authority."[105]  By doing so they effectively usurp the Court's role and displace the Court as the decision-maker, thus interfering with a core function of the Court.

63.    For reasons and findings previously discussed, sanctions are appropriate against both Defendants under this Court's inherent powers.  Their Ex Parte Motion and ex parte hearing interfered with most of the Court's core functions.  They submitted evidence not allowed by § 51.903; they made arguments and submitted an improper order under § 51.903 that affected the Court's decision-making; and they omitted disclosing to the Court prior proceedings detrimental to their legal position.  Mr. Kahn also ignored the Court's setting aside of the Ex Parte Order,

_____

[105] *Basaldua v. Forest Woods Subdivision*, No. 04-11-00716-CV (Tex. App. San Antonio, July 5, 2012 (citing *In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App. – Houston [14th Dist.] 2005, no pet.).

thus attempting to usurp the Court's role, by continuing to assert the same grounds that were contained in the order that had been set aside.

64. Both Mr. Kahn and Mr. George are culpable for the groundless *Ex Parte* Motion, and their allegations that Mr. Kahn reasonably could have purchased any asset valued over $1,000,000 for $1,000. The pleading is based solely on Mr. Kahn's allegations that Helvetia had never issued its stock to Puerto Verde, thereby allowing him to buy the company, worth over $1 million, for $1,000, and only days after the company had terminated him for misconduct. Both Mr. Kahn and Mr. George participated in the 2007 incorporation of Helvetia, and Mr. Kahn additionally participated in the transaction by which Puerto Verde wired $1.2 million in cash to capitalize Helvetia. Mr. George was the incorporator for Helvetia and prepared its 2007 organizational minutes showing that Puerto Verde would be issued all 1000 shares of Helvetia's stock at $1 per share. Mr. Kahn testified that he was knowledgeable about property sales, and knew that a cloud on a title generally would preclude a sale of that parcel. He intended for the *Ex Parte* Motion to harm Helvetia's sales, which he believed would return the parties to "status quo." Mr. Kahn drafted the pleading and his affidavit, and located and hired a handwriting expert. At the time that the *Ex Parte* Motion was filed, Mr. Kahn provided the factual basis for the claims, and decided what legal claims to assert, and the manner in which to assert them, via the Texas Government Code. As part of his claim that he owned Helvetia, Mr. Kahn created the new corporation Paradiv, to which he had tried to convey all of Helvetia's property in Key Largo only days and weeks before he filed the *Ex Parte* Motion that sought to invalidate legitimate sales closed by Helvetia after it had terminated Mr. Kahn.

65. Mr. George did not sign the *Ex Parte* Motion, but delegated that task to the newly retained local counsel Mr. Petterson. Emails on November 4 and 5, 2013 show that Helvetia's

counsel was unaware of Mr. Petterson's representation until the day the *Ex Parte* Motion was filed, November 5. After ignoring orders by Judge Sakai and Judge Canales to appear for his deposition, Mr. George voluntarily appeared at the December 2013 hearing before Judge Pozza to provide testimony during Mr. Kahn's presentation of his case. Nothing in the evidence shows that Mr. George disavowed the Parte Motion.

66. Mr. George had notice of the sanctions motion and hearing set for March 3, 2014. He appeared on January 21, 2014, a previous setting, and participated in the monitoring court's reset of the hearing to March 3, 2014.[106]

### F. Sanctions are Just and Not Excessive

67. The Court has carefully examined the two-part test adopted by the Texas Supreme Court in finding that the sanctions assessed are just. First, there is a direct nexus among the offensive conduct, the offender, and the sanction imposed, in that the sanction is directed against the abuse and toward remedying the prejudice caused the innocent party.

68. Second, the sanction is not excessive because it is no more severe than necessary to satisfy its legitimate purposes, here, namely, to deter other litigants from similar misconduct and punish violators.[107]

Accordingly, it is hereby ORDERED, ADJUSTED AND DECREED as follows:

(1) Sanctions be and hereby are awarded against Burton Kahn and Terry George, jointly and severally, in the amount of $253,416.00, for which let execution issue. Of this sum, the Court finds $153,416.00 to be reasonable attorneys' fees incurred by Movants as a direct and proximate result of the fictitious filings and the attempted withdrawal of the Rule 11 agreement.

---

[106] RR-4, pp. 54-55.

[107] Exhibits 29 and 30.

The remaining $100,000.00 is imposed as sanctions for lack of diligence into the facts and the law.

(2)     All other relief not expressly granted hereby is denied.  The Court's intent is that this instrument be in all things a Final Judgment and Order.

SIGNED, ORDERED, and ENTERED this _1st_ day of _April_____, 2014.

_____
JUDGE PRESIDING

Submitted by:

HAYNES AND BOONE, LLP

_____/s/ Werner A. Powers_____
Werner A. Powers
State Bar No. 16218800
Natalie DuBose
State Bar No. 24077481
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone:  (214) 651-5000
Telecopier:  (214) 651-5940

Lisa S. Barkley
State Bar No. 17851450
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone No. : (210) 978-7427
Telecopier No. : (210) 554-0427

ATTORNEYS FOR
HELVETIA ASSET RECOVERY, INC.

# EXHIBIT D



# Jay R. Petterson

### Attorney at Law_____



12274 Bandera Rd., Ste. 210
Helotes, TX 78023
**(210) 695-6111**
Fax: (210) 695-6101
Email: attorney@jrplaw.net
Web site: www.jrplaw.net

November 11, 2013

BURTON KAHN, individually,
and as President of HELVETIA ASSET RECOVERY, INC.
and as President of PARADIV CORPORATION.

> Re:  --Contested ownership of Helvetia Asset Recovery, Inc.
> --Contested ownership of Joebert Development Company
> --Paradiv Corporation and Helvetia Asset Recovery, Inc. v.
>   ABCSBLDR, INC. and Robert Ripley, Cause No. 2013-CI-17889
> --Burton Kahn v. Joabert Development Company and John Ripley,
>   Cause No. 2013 CI 17012
> --Cause No. 2013-CI-18394, Purported Claim against Helvetia Asset
>   Recovery, Inc., filed by Burton Kahn
> --Cause No. 2013-CI-17516, Purported Claim against Helvetia Asset
>   Recovery, Inc., filed by Robert Ripley

**This retainer agreement is effective as of November 1, 2013 when you directed me as your attorney to file a Motion relating to the validity of deeds to ABCSBLDR, INC. in Cause No. 2013-CI-17889.**

Dear Mr. Kahn:

This letter is written to confirm the terms on which you have agreed to employ this firm to represent you in the resolution of the above matter. While this letter may seem overly formal, it is necessary to properly set forth our understanding of the terms of our representation.

Our services will consist of advice and consultation, appearances at hearings, trials, mediation if required by the court, telephone conferences, travel, investigative work, legal research, review of material received from all sources, drafting of pleadings (necessary court documents) and court proceedings and formal discovery, attendance at depositions, subpoenas, and other necessary preparation and actions to resolve your claims with respect to ownership of corporations and entities relating to development and holding of real estate and ownership of real estate, including but not limited to Robert Ripley, John Ripley, Puerte Verde, Ltd., ACSBLDR, INC., Joabert Development Company, and any other person or entity relating to the issues relating to employment of attorney.

*This agreement does not include presentation of this case to any appellate court or preparation of motions ancillary to this representation. If appeal is necessary, client and attorney will consider the appeal as a separate and distinct cause of action requiring a new fee arrangement.*

You have paid this firm the sum of $3,500, $1,500 of which was paid in your behalf by Kathleen Cassidy Goodman, attorney, on November 8, 2013, and $2,000 paid on November 5, 2013, directly by you. Fees were billed through November 8, 2013 at $225 per hour. Attorneys fees and costs have been incurred in excess of said $2,500. You have agreed to pay this firm an additional $7,500 in partial consideration of my acceptance of representation of you in the above described claim and litigation, to be paid prior to commencement of work on your case.

First against this retainer I shall bill $250.00/hour for my time, and in addition, I shall bill for any expenses incurred. If a lawsuit is filed, I will require payment of the filing fees and costs of serving the lawsuit payable prior to filing the lawsuit. Further, I may require an additional retainer. I will bill you on a monthly or other periodic basis and in the event that I require an additional retainer, I will advise you. If however, a trial of this matter is required, I may require an additional retainer which shall be paid at least ten days prior to trial.

*You have retained Kathleen Cassidy Goodman as your attorney prior to retaining me, and it is understood that Ms. Goodman and I may associate as co-counsel on the issues for which you are retaining me. You acknowledge that Ms. Goodman referred you to me with respect to my representation of you. You have signed a separate attorney employment agreement with Ms. Goodman and understand she will be billing you separately. You authorize the association of Ms. Goodman and myself as co-counsel on the matters covered by this attorney agreement.*

*Further, you authorize me to associate another attorney or attorneys as I deem appropriate and advisable in your representation.*

You have also to comply with all of the firm's reasonable requests in connection with the preparation and presentation of your case.

While your concern for the costs involved is certainly appreciated you must understand that it is impossible to predict accurately all that will be required to represent your legal interests in this matter, both present and future. Thus it is impossible to predict accurately the total amount of the fee for professional services or other costs that may be involved in representing your interests. In this regard, it is fair that you be cautioned at the outset that sometimes (and not infrequently) complexities develop in areas where they are not expected by a client. Sometimes because of extreme bitterness and hurt feelings, or because of substantial property interests, family law cases become unreasonably time-consuming. This firm has made no express or implied representations or guarantees concerning the outcome of your case or how long your case will take to complete.

I do not nickel and dime a file for expenses, and as such I do not bill for long-distance calls, copying -- if under 50 copies per task, basic postage (this excludes expedited postage services or bulk postage), or mileage or parking.

Just as you are depending on my expertise and professionalism, I will depend on you to keep faith with me if complexities develop in your case where you did not expect them. Your continuing faith in this firm during what might become a prolonged period is vitally important to the maintenance of your legal rights; its importance simply cannot be over-emphasized.

Conversations between an attorney and client are protected by law and by the disciplinary rules to which attorneys are subject. The reason for this confidentiality protection is that the experience of many hundreds of years has proved that the interests of the client are best served when the client's attorneys are fully informed of *all* the facts well in advance of any possible contest. Your candor will assist me tremendously in representing you; it is doubly protected by law and the disciplinary rules and is very much encouraged. You can rely on me to be candid with you, as well.

I will do my best to keep you advised on how the case seems to be progressing, based on information I receive from the court, from the other side, and from you. I will send you copies of all pleadings for your information.

I will do everything possible to expedite the appropriate disposition of your case consistent with the time limitations imposed by law and the protection of your present and future legal interests. There may well be some difficult decisions for you to make. It is an attorney's responsibility to advise you on the legal ramifications of the decisions, but *you* must make the actual decisions.

You will be billed periodically by statements from this office. I will request that you pay for certain anticipated costs as I shall request in writing, in advance of incurring such costs, as a condition of incurring such costs -- and if I deem such costs necessary to proper representation of you, I shall inform you of the same in writing and you shall make such payments as a condition of my continued representation of you. You have agreed that your failure to make payment timely or to otherwise perform your obligations under our agreement will be grounds for the firm's withdrawal from your representation. We have agreed that these provisions are fair because our effort, to be successful, must be the product of our teamwork.

The Texas Supreme Court and Courts of Appeals have adopted the Texas Lawyer's Creed as a mandate to the legal profession in Texas. The creed requires our firm to advise you of the contents of the creed when undertaking to represent you. A copy of the Texas Lawyer's Creed is attached to this employment agreement for your review.

The Texas Government Code requires that you be advised that the State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar will provide you with information if you call 1-800-932-1900.

You hereby agree that, if you should at any time become displeased or dissatisfied with any aspect whatsoever of this firm's legal representation, or if you should at any time have any serious question concerning that representation, you will *immediately notify* me of that fact in writing by *certified mail, return receipt requested.*

You agree that this firm reserves the right to terminate the attorney-client relationship and withdraw from your further representation for any of the following reasons:

1.    Your failure to cooperate and comply fully with any reasonable request of this firm's about your case;

2.    Your engaging in conduct or making statements that render it unreasonably difficult for this firm to carry out the purposes of its employment;

3.    Your insisting that this firm engage in conduct that is contrary to my judgment and advice;

4.    Your failure to pay fees and costs as provided in this agreement.

5.    If in my discretion, I deem it appropriate to withdraw from your representation in favor of substitute counsel.

This firm is privileged to have this opportunity to be of service to you. I appreciate your trust and confidence, as well as your business. If you completely approve this agreement, please date and sign the original of this letter where indicated, return it to this office, and retain the enclosed copy for your file.

Respectfully,

JAY R. PETTERSON

ACCEPTED AND AGREED TO, EFFECTIVE NOVEMBER 1, 2013.

BURTON KAHN, individually and as
President of Paradiv Corporation and
Helvetia Asset Recovery, Inc.

# EXHIBIT E

# Texas Statutes

---

📁 **Texas Statutes**

📁 **GOVERNMENT CODE**

📁 **TITLE 2. JUDICIAL BRANCH**

📁 **SUBTITLE D. JUDICIAL PERSONNEL AND OFFICIALS**

📁 **CHAPTER 51. CLERKS**

📁 **SUBCHAPTER J. CERTAIN FRAUDULENT RECORDS OR DOCUMENTS**

---

**? 51.903 GOV'T. Action on Fraudulent Lien on Property**

(a) A person who is the purported debtor or obligor or who owns real or personal property or an interest in real or personal property and who has reason to believe that the document purporting to create a lien or a claim against the real or personal property or an interest in the real or personal property previously filed or submitted for filing and recording is fraudulent may complete and file with the district clerk a motion, verified by affidavit by a completed form for ordinary certificate of acknowledgment, of the same type described by Section **121.007**, Civil Practice and Remedies Code, that contains, at a minimum, the information in the following suggested form:

<pre>
                                    MISC. DOCKET NO. _____
                                    In the _____ Judicial District
In Re: A Purported                  In and For _____
Lien or Claim Against               County, Texas
(Name of Purported
Debtor)
</pre>

Motion for Judicial Review of Documentation or Instrument
Purporting to Create a Lien or Claim

Now Comes (name) and files this motion requesting a judicial determination of the status of documentation or an instrument purporting to create an interest in real or personal property or a lien or claim on real or personal property or an interest in real or personal property filed in the office of the Clerk of (county name) County, Texas, and in support of the motion would show the court as follows:

I.

(Name), movant herein, is the purported obligor or debtor or person who owns the real or personal property or the interest in real or personal property described in the documentation or instrument.

II.

On (date), in the exercise of the county clerk's official duties as County Clerk of (county name) County, Texas, the county clerk received and filed and recorded the documentation or instrument attached hereto

and containing (number) pages. Said documentation or instrument purports to have created a lien on real or personal property or an interest in real or personal property against one (name of purported debtor).

III.

Movant alleges that the documentation or instrument attached hereto is fraudulent, as defined by Section **51.901**(c)(2), Government Code, and that the documentation or instrument should therefore not be accorded lien status.

IV.

Movant attests that assertions herein are true and correct.

V.

Movant does not request the court to make a finding as to any underlying claim of the parties involved and acknowledges that this motion does not seek to invalidate a legitimate lien. Movant further acknowledges that movant may be subject to sanctions, as provided by Chapter 10, Civil Practice and Remedies Code, if this motion is determined to be frivolous.

PRAYER

Movant requests the court to review the attached documentation or instrument and enter an order determining whether it should be accorded lien status, together with such other orders as the court deems appropriate.

Respectfully submitted,

_____
(Signature and typed name and address)

(b) The completed form for ordinary certificate of acknowledgment, of the same type described by Section **121.007**, Civil Practice and Remedies Code, must be as follows:

AFFIDAVIT

THE STATE OF TEXAS COUNTY OF _____

BEFORE ME, the undersigned authority, personally appeared _____, who, being by me duly sworn, deposed as follows:

"My name is _____. I am over 21 years of age, of sound mind, with personal knowledge of the following facts, and fully competent to testify.

I further attest that the assertions contained in the accompanying motion are true and correct."

Further affiant sayeth not.

_____

SUBSCRIBED and SWORN TO before me,
this _____day of _____,_____.
_____
NOTARY PUBLIC, State of Texas

Notary's printed name:

_____

My commission expires:

_____

(c) A motion under this section may be ruled on by a district judge having jurisdiction over real property matters in the county where the subject document was filed. The court's finding may be made solely on a review of the documentation or instrument attached to the motion and without hearing any testimonial evidence. The court's review may be made ex parte without delay or notice of any kind. An appellate court shall expedite review of a court's finding under this section.

(d) The district clerk may not collect a filing fee for filing a motion under this section.

(e) After reviewing the documentation or instrument attached to a motion under this section, the district judge shall enter an appropriate finding of fact and conclusion of law, which must be filed and indexed in the same class of records in which the subject documentation or instrument was originally filed. A copy of the finding of fact and conclusion of law shall be sent, by first class mail, to the movant and to the person who filed the fraudulent lien or claim at the last known address of each person within seven days of the date that the finding of fact and conclusion of law is issued by the judge.

(f) The county clerk may not collect a fee for filing a district judge's finding of fact and conclusion of law under this section.

(g) A suggested form order appropriate to comply with this section is as follows:

MISC. DOCKET NO. _____ In the _____ Judicial District In Re: A Purported In and For _____ Lien or Claim Against County, Texas (Name of Purported Debtor)

Judicial Finding of Fact and Conclusion of Law Regarding a Documentation or Instrument Purporting to Create a Lien or Claim

On the (number) day of (month), (year), in the above entitled and numbered cause, this court reviewed a motion, verified by affidavit, of (name) and the documentation or instrument attached thereto. No testimony was taken from any party, nor was there any notice of the court's review, the court having made the determination that a decision could be made solely on review of the documentation or instrument under the authority vested in the court under Subchapter J, Chapter 51, Government Code.

The court finds as follows (only an item checked and initialed is a valid court ruling):

_____ The documentation or instrument attached to the motion herein IS asserted against real or personal property or an interest in real or personal property and:

(1) IS provided for by specific state or federal statutes or constitutional provisions;

(2) IS created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by consent of an agent, fiduciary, or other representative of that person; or

(3) IS an equitable, constructive, or other lien imposed by a court of competent jurisdiction created or established under the constitution or laws of this state or of the United States.

_____ The documentation or instrument attached to the motion herein:

(1) IS NOT provided for by specific state or federal statutes or constitutional provisions;

(2) IS NOT created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the law of this state or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person;

(3) IS NOT an equitable, constructive, or other lien imposed by a court of competent jurisdiction created by or established under the constitution or laws of this state or the United States; or

(4) IS NOT asserted against real or personal property or an interest in real or personal property. There is no valid lien or claim created by this documentation or instrument.

This court makes no finding as to any underlying claims of the parties involved, and expressly limits its finding of fact and conclusion of law to the review of a ministerial act. The county clerk shall file this finding of fact and conclusion of law in the same class of records as the subject documentation or instrument was originally filed, and the court directs the county clerk to index it using the same names that were used in indexing the subject documentation or instrument.

SIGNED ON THIS THE _____ DAY OF _____.


                              _____
                              DISTRICT JUDGE
                              _____ JUDICIAL DISTRICT
                              _____ COUNTY, TEXAS

Added by Acts 1997, 75th Leg., ch. 189, 14, eff. May 21, 1997.

_____

Copyright ? 2013 CCH Incorporated or its affiliates

# EXHIBIT F


**LandAmerica**
Lawyers Title of San Antonio

LandAmerica Lawyer's Title of San Antonio, Inc.
306 W. Sunset, Suite 115
San Antonio, TX 78209
Phone 210-798-1643 Fax 210-798-1645

## WIRING INSTRUCTIONS

August 21, 2007

RE: Order No.:     1218001428
    Buyer/Borrower(s):     Helvetia Asset Recovery Inc.
    Seller(s):     Maple Dush Holding LTD.
    Property Address:     , , TX

In connection with the referenced transaction, please wire funds to us in this manner:

### WIRE TRANSFER INSTRUCTIONS
For Wiring to Settlement Agent

Bank Name:     Compass Bank (Sunset Office)

Bank Location:     P.O. Box 4444, Houston, TX 77210-4444

ABA Number:     113010547

Account Number:     13880050

Account Name:     Escrow Account

    LandAmerica Lawyers Title of San Antonio

    306 W. Sunset, Suite 115

    San Antonio, TX 78209

    210-826-1504

Re:     GF #1218001428

NOTE:     The account information provided above is to be used by banking officials for Wire Transfers Only and cannot be used for any other form of deposit.

If you have any questions regarding the enclosed, please do not hesitate to contact us.

Sept 17/2

*Please transfer USD12 million to My Escrow Agent as outlined in these Instructions. The funds will be used to capitalize a te Holdco and in return Puerto V will receive 1000 shares.*

Mary Ellen Gonzalez

Order No. 1218001428
Wiring Instructions

Page 1 of 1
Rev. 01/07

**Plaintiff's Exhibit 9**

# EXHIBIT G

I hereby certify that this is a true and correct copy of the original document
Helvetia Asset Recovery

The shares represented by this certificate have not been registered under the Securities Act of 1933, as amended, or any applicable state securities laws, and may not be transferred, sold, or assigned unless so registered or unless an exemption from such registration is available.

Certificate Number 001                                                                 1,000 Shares

## INCORPORATED UNDER THE LAWS OF TEXAS

## HELVETIA ASSET RECOVERY INC.

This certifies that _Puerta Verde Inc._ owns 1,000 shares of 50.00 par value common stock of Helvetia Asset Recovery Inc., transferable only on the books of the corporation by the holder of this certificate in person, or by authorized agent, upon surrender of this certificate, properly endorsed.

In witness of the above, the corporation has caused this certificate to be signed by its authorized officers on August 23, 2007

Kenneth E. Moore, President                                         Kenneth E. Moore, Secretary

**Transfer Section**

For value received, I _____ transfer to _____ the shares represented by this certificate, and instruct the corporate Secretary to record this transfer on the books of the corporation. Transfer restrictions, if any, are shown above.

Dated this _____ day of _____

EXHIBIT "C"

# EXHIBIT H

# COMMON STOCK CERTIFICATE

THIS CERTIFIES THAT

*Burton Kahn*

IS THE OWNER OF FULLY PAID 1000 SHARES AUTHORIZED OF COMMON STOCK IN REGARDING

# HELVETIA ASSET RECOVERY INC.

THE CORPORATION IS ORGANIZED UNDER THE LAWS OF STATE OF TEXAS

DATED *5/7/13*          AT SAN ANTONIO, TEXAS

PRESIDENT SIGNATURE _____          DIRECTOR SIGNATURE _____
*Burton Kahn*                                      *Burton Kahn*

# EXHIBIT J

# EXHIBIT J

CAUSE NO. 2013-CI-10355

HELVETIA ASSET RECOVERY, INC.,   §        IN THE DISTRICT COURT
        Plaintiff,                §
                                  §
V.                                §        BEXAR COUNTY, TEXAS
                                  §
BURTON KAHN and                   §
PARADIV CORPORATION,              §
        Defendants.               §        407TH JUDICIAL DISTRICT

# TRIAL EXHIBIT 39

Plaintiff's
Exhibit
39

AUG 5/07 ORG
MEETING

HELVETIA
+ ARTICLES OF
INCORPORATION



August 8, 2007

Helvetia Asset Recovery, Inc.

Re: Incorporation of Helvetia Asset Recovery, Inc.

Enclosed are the proposed Bylaws of the Corporation. The Certificate of Formation is expected from the Secretary of State

Please review these documents carefully, and call me immediately if you have any questions, additions, deletions, or changes. After the documents have been reviewed and approved, please call me to set up a time to execute the originals.

## Governing Documents and Related Forms

**Certificate of Formation.** The Certificate of Formation was filed with, and accepted by, the Secretary of State which issued an acknowledgment of filing for the Corporation. The Certificate of Formation establishes the Corporation and sets out its fundamental structure. (Prior to the Texas Business Organizations Code which became effective on January 1, 2006, the Certificate of Formation was referred to as the "Articles of Incorporation.")

**Bylaws.** The rules and procedures for running the Corporation are set forth in the Bylaws. You should review the Bylaws along with the Certificate of Formation in order to familiarize yourself with how the Corporation should be operated. The Bylaws should be reviewed any time the Corporation intends to take action. Once approved, the Bylaws may be amended as provided therein, if necessary.

## Tax Matters and Licenses

I have prepared the enclosed documents based upon information and instructions you provided. I am not and have not represented or held myself out to be a tax expert. You should be aware that formation of this Corporation may affect your future tax obligations. You should carefully review all of the tax aspects of this entity with your accountant, paying special attention to the issue of whether to elect Subchapter S status.

**Sub-Chapter S Election.** A corporation that is a qualified small business corporation under the Internal Revenue Code may elect to be taxed as a Subchapter S corporation. A Subchapter S corporation does not pay income tax. Instead, the shareholders are taxed directly on corporate income. Election of Subchapter S status is made by filing Form 2553 with the Internal Revenue Service. Form 2553 must be filed within seventy-five (75) days of the commencement of business. As many small business corporation elect Subchapter S status, you should consult with your accountant regarding whether or not it is desirable for the Corporation to make such an election.

1

**Employer Identification Number.** If the Corporation will be paying wages to employees, you must apply to the Internal Revenue Service on Form SS-4 for an Employer Identification Number.

**Liability for Nonpayment of FICA Taxes and Federal Withholding Taxes.** If the Corporation fails to pay FICA taxes and withholding taxes, the persons responsible for payment of such taxes will be held personally liable. Officers or other personnel whose duties relate to the payment of such taxes may be found liable.

**Franchise Tax.** With limited exceptions, Texas corporations are subject to the Texas franchise tax. You should discuss the franchise tax and possible methods for minimizing this tax with your accountant.

**Texas Sales and Use Tax Permit.** The Corporation should obtain a Limited Sales Permit from the Comptroller of Public Accounts for the State of Texas for each place of business it will operate in the state, if the Corporation will engage in retail or rental business or perform taxable services. You should discuss this matter with your accountant in order to ensure that the proper steps are taken to secure the permits.

**Business or Occupational Licenses and Taxes.** Various business activities and occupations are subject to licensing requirements, occupational taxes or fees. If you are unsure if the Corporation must obtain certain licenses, you should discuss this with me, your accountant, or the appropriate licensing authority.

## Formation

**Capitalization of the Corporation.** If a shareholder is paying for shares in cash, the cash should be deposited in the Corporation's bank account. If the shareholder is paying for shares by transferring property to the Corporation, the property should be actually delivered to the Corporation and the appropriate documentation completed. If a shareholder is paying for shares by performing services, a memo should be prepared and filed in the minute book reflecting the services provided or to be provided.

**Bank Account.** A new bank account should be opened in the name of the Corporation. This transaction should be accomplished easily by completing a resolution which authorizes the company to open a bank account. Some banks also have their own form for the resolution that the corporation can use.

**Assets and Insurance.** All assets transferred by you or any other shareholder to the corporation should be appropriately entered upon the company's books by your accountant. Any assets so transferred become the property of the corporation. All of your business insurance (public liability, disability, general insurance, etc.) must be acquired in the name of the corporation as well.

2

**Existing Loans.** Any existing loans which you have made in the business should be transferred to and assumed by the Corporation when and if your accountant determines that no adverse tax consequences will result from such assumption of liability.

**Other Existing Agreements or Arrangements.** All leases, contracts and other arrangements which you have regarding your present equipment, office premises or furniture and any other contracts or arrangements which you have previously entered into in connection with your business should be modified, assigned, or rewritten in order to reflect the fact that the Corporation is the contracting party to each lease, contract, or obligation.

If you require any assistance, I would be happy to help you document any of the above.

## Accounting

**Keep the Accountant Informed.** The officers and Board of Directors of the Corporation are responsible for ensuring that the Corporation's accounting practices are maintained in a proper and timely fashion. The Corporation's accountant should be kept informed regarding the Corporation's business activities.

**Accounting Matters.** Initially, the accountant should resolve questions regarding tax elections and other tax matters discussed above, transfers of accounts receivable, and the payment of your accounts payable. Your accountant should advise you if your first fiscal year should end on a date other than the calendar year end, of what tax elections should be made by you at that time and all matters related to the preparation and filing of tax returns.

**Distributions.** Distributions of cash, dividends, or other assets of the Corporation are made in the manner provided for in the regulations. Before declaring any such distributions, however, it would be wise to consult with your accountant and this firm since there are complex tax factors that must be taken into consideration upon the declaration of any distributions.

**Compensation of Shareholders.** The shareholders and the directors are not ordinarily entitled to compensation for their services as shareholders unless the compensation is provided for by contract, by the Bylaws, or by a company resolution. The Board of Directors have the additional power to fix the salary of each and all of the officers. Elaborate compensation plans for shareholders, directors, officers, employees should be submitted for approval as with any other important transaction.

## Formalities

**Conducting Business in the Name of the Corporation.** It is very important that all necessary formalities be followed in order to maintain the existence and activities of the Corporation distinct and separate from the shareholders, officers, and directors, in order to ensure that the such persons do not become personally liable for the liabilities or claims against the Corporation. This would be true even if there were only one shareholder. Personal property of

3

the shareholders must not be commingled with the property of the Corporation. You should at all times do business under the Corporation name exactly as specified in the Articles of Organization and not deviate therefrom unless an appropriate assumed name certificate has been filed.

**Bank Accounts and Loans.** Your bank and checking accounts should also reflect your company name. Any loans or banking activities should be conducted in the company's name rather than your name individually, even though you may be required to endorse or guarantee the same personally. If a loan is made and the lender requires you to endorse or guarantee the loan personally, you should have the above action approved by the Board of Directors and reflect the approval in an appropriately drafted resolution which is inserted into the company's minute book or records.

**Signatures.** Whenever a person signs on behalf of, or for the Corporation, they should add their title next to the signature so that it will be clear that they are acting as an agent of the company rather than in their individual capacity. For instance, if you sign a contract with just your name and do not state your relationship to the Corporation next to your name in the contract, you may be held personally liable for the contract. An example of a correct signature would be:

Helvetia Asset Recovery, Inc.

By:_____
    John Doe, President

**Transactions.** All important transactions affecting the Corporation should be documented in the minute book by minutes of meetings of the shareholders and of the Board of Directors or other appropriate documentation, including:

All major contracts, including employment contracts, buy-sell agreements, profit sharing plans, pension plans, insurance plans, trust agreements, loans, leases, purchase contracts, and limited liability brokerage and investment accounts should be made in the name and on behalf of the Corporation and with the required approval.

The establishment and adjustment of all salaries and bonuses of officers and employees, if any, of the Corporation.

Issuance of additional stock by the Board of Directors. Any change in stock should be reflected in the stock register in the Corporation minute book.

Restrictions on the transfer of stock.

Issuance of additional stock and purchase or sale of other stock in the Corporation.

Acceptance of resignation, termination, or appointment of managers.

4

Change of Corporation name, registered office, or registered agent.

Change of bank accounts.

Any other Corporation activities which are significant.

**Special Meetings.** Actions of the shareholders of or of the Board of Directors may be taken either at an actual meeting, in which case it is advisable to maintain written minutes of such meeting, or in the form of a unanimous written consent action embodying the desired resolutions. Unanimous written consent actions must be executed by all of the persons entitled to vote on the matters contained therein. When the Corporation has only a few shareholders or directors, it is generally simpler and more convenient to take action by unanimous written consent rather than through actual meetings.

**Annual Meetings.** The annual meetings must be held as provided in the Bylaws. The time and place of the annual meeting of the Board of Directors may be changed by resolution of the Board of Directors. Immediately following each annual meeting of shareholders, the Board of Directors elected at such meeting is to hold an annual meeting. Any significant activities or transactions that have not previously been the subject of any special meetings should be reflected and ratified at the Annual Meetings. Please contact this firm if you desire our assistance in helping you prepare the requisite resolutions and minutes or records to document any special or annual meetings.

**Books and Minutes.** The Corporation minute book must be maintained and kept up-to-date, is available for inspection by any shareholder. The books of the Corporation should include the following items:

The Corporation's Certificate of Formation, Bylaws, Organizational Meeting Minutes, any other certificates filed with the Secretary of State, and any amendments or restatements of such certificates.

All resolutions, minutes of meetings, notices, written consents, etc., that are prepared in the future.

A current list of shareholders, including (a) the date on which such person became a shareholder, (b) the name and mailing address, (c) the number of shares in the Corporation held by the shareholder, and (d) the consideration paid for the stock.

Copies of federal, state, and local information or income tax returns.

### Other Corporate Matters

**Significant Change.** Please contact this firm immediately if any important change occurs that would affect the Corporation, including when a shareholder dies or becomes divorced, a

5

Secretary of State, and this should also be reflected in the minutes of the Corporation.

**Assumed Name.** If the Corporation will transact business or operate under a name that is different in any way from the exact name as set forth in the Certificate of Formation filed with the Secretary of State, the Corporation will need to file an assumed name certificate. This certificate must be filed with the Secretary of State and the County Clerk of the county in which the Corporation has its registered office. If the principal office of the Corporation is in a county other than the county where the registered office is located, the certificate must be filed in that county as well. Also, the certificate will need to be renewed within six months prior to its expiration.

**Operations in Another State.** Finally, should you open an office or acquire property in another state, you may be required to qualify as a foreign entity to be authorized to do business in that state. This entails filing a Certificate of Authority in that other state and paying initial and annual fees. Failure to qualify may prohibit you from suing to enforce your contracts in that state, or from receiving actual notice in the event you are sued.

I hope the information in this letter will prove helpful. This letter is intended to inform you of some of the more common issues affecting corporations and future management and operations. **This letter is not an exhaustive overview of all legal, economic or other considerations pertaining to corporations.**

6

B

# BYLAWS
## OF
## HELVETIA ASSET RECOVERY, INC.

## ARTICLE I - OFFICES

### 1. REGISTERED OFFICE AND AGENT

The registered office and registered agent of the Corporation shall be as set forth in the Corporation's Certificate of Formation. The registered office or the registered agent may be changed by resolution of the Board of Directors, upon making the appropriate filing with the Secretary of State.

### 2. PRINCIPAL OFFICE

The principal office of the Corporation shall be at 6751 WALZEM San Antonio, Texas 78239 provided that the Board of Directors shall have the power to change the location of the principal office.

### 3. OTHER OFFICES

The Corporation may also have other offices at such places, within or without the State of Texas, as the Board of Directors may designate, or as the business of the Corporation may require or as may be desirable.

## ARTICLE II - SHAREHOLDERS

### 1. PLACE OF MEETING

Meetings of the shareholders shall be held either at the registered office of the Corporation or at such other place, either within or without the State of Texas, as shall be designated in the notice of the meeting or executed waiver of notice. The Board of Directors may, in its discretion, determine that the meeting may be held solely by means of remote communication. If authorized by the Board of Directors, and subject to any guidelines and procedures adopted by the Board of Directors, shareholders not physically present at a meeting of shareholders, by means of remote communication may participate in a meeting of shareholders, and, may be considered present in person and may vote at a meeting of shareholders held at a designated place or held solely by means of remote communication, subject to the conditions imposed by section 6.002(b) of the Texas Business Organizations Code.

### 2. ANNUAL MEETING

The annual meeting of shareholders shall be held on the date and time set by the Board of Directors.

The annual meeting may be called by resolution of the Board of Directors or by a writing filed with the Secretary signed either by a majority of the directors or by shareholders owning a

majority in amount of the entire capital stock of the Corporation issued and outstanding and entitled to vote at any such meeting.

## 3. NOTICE OF SHAREHOLDERS' MEETING

Written or printed notice stating the place, day and hour of the meeting, the means of any remote communications by which shareholders may be considered present and may vote at the meeting, and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten (10) days nor more than sixty (60) days before the date of the meeting, personally, by electronic transmission, or by mail, by or at the direction of the President, the Secretary, or the officer or person calling the meeting, to each shareholder entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail addressed to the shareholder at the shareholder's address as it appears on the share transfer records of the Corporation, with postage thereon prepaid.

The Corporation shall notify each shareholder, whether or not entitled to vote, of any meeting of shareholders at which a plan of merger or exchange is to be submitted for approval in accordance with section 6.051 of the Texas Business Organizations Code. The notice shall be given at least twenty (20) days before the meeting and shall state that the purpose, or one of the purposes, of the meeting is to consider the plan of merger or exchange and shall contain or be accompanied by a copy or summary of the plan.

Written or printed notice setting forth any proposed amendment to the Certificate of Formation or a summary of the changes to be effected thereby shall be given to each shareholder of record entitled to vote thereon within the time and in the manner provided in the Texas Business Organizations Code for the giving of notice of meetings of shareholders. If the meeting be an annual meeting, the proposed amendment or such summary may be included in the notice of such annual meeting.

Any notice required to be given to any shareholder, under any provision of the Texas Business Organizations Code or the Certificate of Formation or these Bylaws, need not be given to the shareholder if (1) notice of two consecutive annual meetings and all notices of meetings held during the period between those annual meetings, if any, or (2) all (but in no event less than two) payments (if sent by first class mail) of distributions or interest on securities during a 12 month period have been mailed to that person, addressed at the shareholder's address as shown on the share transfer records of the Corporation, and have been returned undeliverable. Any action or meeting taken or held without notice to such a person shall have the same force and effect as if the notice had been duly given. If such a person delivers to the Corporation a written notice setting forth the shareholder's then current address, the requirement that notice be given to that person shall be reinstated.

Notice by Electronic Transmission: On consent of a shareholder, notice from the Corporation under any provision of the Texas Business Organizations Code, the Certificate of Formation, or these Bylaws may be given to the shareholder by electronic transmission. The shareholder may specify the form of electronic transmission to be used to communicate notice. The shareholder may revoke this consent by written notice to the Corporation. The shareholder's consent is deemed to be revoked if the Corporation is unable to deliver by electronic transmission two consecutive notices, and the secretary, assistant secretary, or transfer agent of the Corporation, or

another person responsible for delivering notice on behalf of the Corporation knows that delivery of these two electronic transmissions was unsuccessful. The inadvertent failure to treat the unsuccessful transmissions as a revocation of shareholder consent does not invalidate a meeting or other action.

Notice by electronic transmission is deemed given when the notice is: (1) transmitted to a facsimile number provided by the shareholder for the purpose of receiving notice; (2) transmitted to an electronic mail address provided by the shareholder for the purpose of receiving notice; (3) posted on an electronic network and a message is sent to the shareholder at the address provided by the shareholder for the purpose of alerting the shareholder of a posting; or (4) communicated to the shareholder by any other form of electronic transmission consented to by the shareholder.

An affidavit of the Secretary, Assistant Secretary, transfer agent, or other agent of the Corporation that notice has been given by electronic transmission is, in the absence of fraud, prima facie evidence that the notice was given.

## 4. SPECIAL SHAREHOLDERS' MEETINGS

Special meetings of the shareholders may be called (1) by the President, any Vice President, the Board of Directors, or (2) by the holders of at least ten (10) percent of all the shares entitled to vote at the proposed special meeting, unless the Corporation's Certificate of Formation provides for a number of shares greater than or less than ten (10) percent, in which event special meetings of the shareholders may be called by the holders of at least the percentage of shares so specified in the Certificate of Formation, but in no event shall the Certificate of Formation provide for a number of shares greater than fifty (50) percent. The record date for determining shareholders entitled to call a special meeting is the date the first shareholder signs the notice of that meeting.

Only business within the purpose or purposes described in the notice or executed waiver of notice may be conducted at a special meeting of the shareholders.

Any person or persons entitled hereunder to call a special meeting of shareholders may do so only by written request sent by certified mail or delivered in person to the President or Secretary. The officer receiving the written request shall within ten (10) days from the date of its receipt cause notice of the meeting to be given in the manner provided by these Bylaws to all shareholders entitled to vote at the meeting. If the officer does not give notice of the meeting within ten (10) days after the date of receipt of the written request, the person or persons calling the meeting may fix the time of meeting and give the notice in the manner provided in these Bylaws. Nothing contained in this section shall be construed as limiting, fixing, or affecting the time or date when a meeting of shareholders called by action of the Board of Directors may be held.

## 5. VOTING OF SHARES

Each outstanding share, regardless of class, shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders, except: (a) to the extent that the Certificate of Formation of the Corporation provides for more or less than one vote per share or (if and to the extent permitted by the Texas Business Organizations Code) limit or deny voting rights to the holders of

the shares of any class or series, or (b) as otherwise provided by the Texas Business Organizations Code.

Shares of its own stock owned by the Corporation or by another domestic or foreign corporation or other entity, if a majority of the voting stock or voting interest of the other corporation or other entity is owned or controlled by the Corporation, shall not be voted, directly or indirectly, at any meeting, and shall not be counted in determining the total number of outstanding shares at any given time. Nothing in this section shall be construed as limiting the right of the Corporation or any domestic or foreign corporation or other entity to vote stock, held or controlled by it in a fiduciary capacity, or with respect to which it otherwise exercises voting power in a fiduciary capacity.

Any shareholder may vote either in person or by proxy executed in writing by the shareholder. A telegram, telex, cablegram, or other form of electronic transmission, including telephone transmission, by the shareholder, or a photographic, photostatic, facsimile, or similar reproduction of a writing executed by the shareholder, shall be treated as an execution in writing for purposes of this section. Any electronic transmission must contain or be accompanied by information from which it can be determined that the transmission was authorized by the shareholder. No proxy shall be valid after eleven (11) months from the date of its execution unless otherwise provided in the proxy. A proxy shall be revocable unless the proxy form conspicuously states that the proxy is irrevocable and the proxy is coupled with an interest. Proxies coupled with an interest include the appointment as proxy of: (1) a pledgee; (2) a person who purchased or agreed to purchase, or owns or holds an option to purchase, the shares; (3) a creditor of the Corporation who extended it credit under terms requiring the appointment; (4) an employee of the Corporation whose employment contract requires the appointment; or (5) a party to a voting agreement created under section 6.252 of the Texas Business Organizations Code.

An irrevocable proxy, if noted conspicuously on the certificate representing the shares that are subject to the irrevocable proxy or, in the case of uncertificated shares, if notation of the irrevocable proxy is contained in the notice sent pursuant to section 3.205 of the Texas Business Organizations Code with respect to the shares that are subject to the irrevocable proxy, shall be specifically enforceable against the holder of those shares or any successor or transferee of the holder. Unless noted conspicuously on the certificate representing the shares that are subject to the irrevocable proxy or, in the case of uncertificated shares, unless notation of the irrevocable proxy is contained in the notice sent pursuant to section 3.205 of the Texas Business Organizations Code with respect to the shares that are subject to the irrevocable proxy, an irrevocable proxy, even though otherwise enforceable, is ineffective against a transferee for value without actual knowledge of the existence of the irrevocable proxy at the time of the transfer or against any subsequent transferee (whether or not for value), but such an irrevocable proxy shall be specifically enforceable against any other person who is not a transferee for value from and after the time that the person acquires actual knowledge of the existence of the irrevocable proxy.

Shareholders are prohibited from cumulating their votes in any election of directors of the Corporation.

Shares standing in the name of another corporation, domestic or foreign, may be voted by such officer, agent, or proxy as the Bylaws of such corporation may authorize or, in the absence of such authorization, as the Board of Directors of such corporation may determine; provided,

however, that when any foreign corporation without a permit to do business in this State lawfully owns or may lawfully own or acquire stock in a Texas corporation, it shall not be unlawful for such foreign corporation to vote said stock and participate in the management and control of the business and affairs of the Corporation, as other stockholders, subject to all laws, rules and regulations governing Texas corporations and especially subject to the provisions of the Anti-Trust laws of the State of Texas.

Shares held by an administrator, executor, guardian, or conservator may be voted by him or her so long as such shares forming a part of an estate are in the possession and forming a part of the estate being served by him or her, either in person or by proxy, without a transfer of such shares into his or her name. Shares standing in the name of a trustee may be voted by him or her, either in person or by proxy, but no trustee shall be entitled to vote shares held by him or her without a transfer of such shares into his or her name as trustee.

Shares standing in the name of a receiver may be voted by such a receiver, and shares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into his or her name if authority so to do be contained in an appropriate order of the court by which such receiver was appointed.

A shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote the shares so transferred, subject to any agreements containing restrictions on the hypothecation, assignment, pledge or voluntary or involuntary transfer of shares.

With respect to any matter, other than the election of directors or a matter for which the affirmative vote of the holders of a specified portion of the shares entitled to vote is required by the Texas Business Organizations Code, the affirmative vote of the holders of a majority of the shares entitled to vote on, and that voted for or against or expressly abstained with respect to, that matter at a meeting of shareholders at which a quorum is present shall be the act of the shareholders, unless otherwise provided in the Certificate of Formation or these Bylaws.

Unless otherwise provided in the Certificate of Formation or these Bylaws, directors shall be elected by a plurality of the votes cast by the holders of shares entitled to vote in the election of directors at a meeting of shareholders at which a quorum is present.

Any vote may be taken by voice or show of hands unless a shareholder entitled to vote, either in person or by proxy objects, in which case written ballots shall be used.

6.    QUORUM OF SHAREHOLDERS

With respect to any meeting of shareholders, a quorum shall be present for any matter to be presented at that meeting if the holders of a majority of the shares entitled to vote at the meeting are represented at the meeting in person or by proxy, unless otherwise provided by law or the Certificate of Formation. Notwithstanding anything to the contrary in these Bylaws or the Certificate of Formation, in no event shall a quorum of the shareholders consist of less than one-third (1/3) of the shares entitled to vote.

Unless otherwise provided in the Certificate of Formation or these Bylaws, once a quorum is

present at a meeting of shareholders, the shareholders represented in person or by proxy at the meeting may conduct such business as may be properly brought before the meeting until it is adjourned, and the subsequent withdrawal from the meeting of any shareholder or the refusal of any shareholder represented in person or by proxy to vote shall not affect the presence of a quorum at the meeting. Unless otherwise provided in the Certificate of Formation or these Bylaws, the shareholders represented in person or by proxy at a meeting of shareholders at which a quorum is not present may adjourn the meeting until such time and to such place as may be determined by a vote of the holders of a majority of the shares represented in person or by proxy at that meeting.

## 7. FIXING RECORD DATES FOR MATTERS OTHER THAN CONSENTS TO ACTION

For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders or any adjournment thereof, or entitled to receive a distribution by the Corporation (other than a distribution involving a purchase or redemption by the Corporation of any of its own shares) or a share dividend, or in order to make a determination of shareholders for any other proper purpose (other than determining shareholders entitled to consent to action by shareholders proposed to be taken without a meeting of shareholders), the Board of Directors of the Corporation may provide that the share transfer records shall be closed for a stated period but not to exceed, in any case, sixty (60) days. If the share transfer records shall be closed for the purpose of determining shareholders entitled to notice of or to vote at a meeting of shareholders, such records shall be closed for at least ten (10) days immediately preceding such meeting. In lieu of closing the share transfer records, the Bylaws, or in the absence of an applicable bylaw the Board of Directors, may fix in advance a date as the record date for any such determination of shareholders, such date in any case to be not more than sixty (60) days and, in the case of a meeting of shareholders, not less than ten (10) days, prior to the date on which the particular action requiring such determination of shareholders is to be taken. If the share transfer records are not closed and no record date is fixed for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders, or shareholders entitled to receive a distribution (other than a distribution involving a purchase or redemption by the Corporation of any of its own shares) or a share dividend, the date on which notice of the meeting is mailed or the date on which the resolution of the Board of Directors declaring such distribution or share dividend is adopted, as the case may be, shall be the record date for such determination of shareholders. When a determination of shareholders entitled to vote at any meeting of shareholders has been made as provided in this section, such determination shall apply to any adjournment thereof except where the determination has been made through the closing of the share transfer records and the stated period of closing has expired.

## 8. FIXING RECORD DATES CONSENTS TO ACTION

Unless a record date shall have previously been fixed or determined pursuant to this section, whenever action by shareholders is proposed to be taken by consent in writing without a meeting of shareholders, the Board of Directors may fix a record date for the purpose of determining shareholders entitled to consent to that action, which record date shall not precede, and shall not be more than ten (10) days after, the date upon which the resolution fixing the record date is adopted by the Board of Directors. If no record date has been fixed by the Board of Directors and the prior action of the Board of Directors is not required by the Texas Business

Organizations Code, the record date for determining shareholders entitled to consent to action in writing without a meeting shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation as provided in sections 6.202-6.204 of the Texas Business Organizations Code. Delivery shall be by hand or by certified or registered mail, return receipt requested. Delivery to the Corporation's principal place of business shall be addressed to the President or the principal executive officer of the Corporation. If no record date shall have been fixed by the Board of Directors and prior action of the Board of Directors is required by the Texas Business Organizations Code, the record date for determining shareholders entitled to consent to action in writing without a meeting shall be at the close of business on the date on which the Board of Directors adopts a resolution taking such prior action.

## 9. VOTING LISTS

The officer or agent having charge of the share transfer records for shares of the Corporation shall make, at least ten (10) days before each meeting of shareholders, a complete list of the shareholders entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order, with the address of and the number of shares held by each, which list, for a period of ten (10) days prior to such meeting, shall be kept on file at the registered office or principal place of business of the Corporation and shall be subject to inspection by any shareholder at any time during usual business hours. Alternatively, the list of the shareholders may be kept on a reasonably accessible electronic network, if the information required to gain access to the list is provided with the notice of the meeting. This does not require the Corporation to include any electronic contact information of any shareholder on the list. If the Corporation elects to make the list available on an electronic network, the Corporation shall take reasonable steps to ensure that the information is available only to shareholders of the Corporation. Such list shall also be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting. If the meeting is held by means of remote communication, the list must be open to the examination of any shareholder for the duration of the meeting on a reasonably accessible electronic network, and the information required to access the list must be provided to shareholders with the notice of the meeting. The original share transfer records shall be prima-facie evidence as to who are the shareholders entitled to examine such list or transfer records or to vote at any meeting of shareholders. However failure to prepare and make the list available in the manner provided above shall not affect the validity of any action taken at the meeting.

## 10. ACTION BY SHAREHOLDERS WITHOUT MEETING

Any action required by the Texas Business Organizations Code to be taken at any annual or special meeting of shareholders, or any action which may be taken at any annual or special meeting of shareholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall have been signed by the holder or holders of all the shares entitled to vote with respect to the action that is the subject of the consent.

If the Corporation's Certificate of Formation so provides, any action required by the Texas Business Organizations Code to be taken at any annual or special meeting of shareholders, or any action which may be taken at any annual or special meeting of shareholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing,

setting forth the action so taken, shall be signed by the holder or holders of shares having not less than the minimum number of votes that would be necessary to take such action at a meeting at which holders of all shares entitled to vote on the action were present and voted.

Every written consent signed by the holders of less than all the shares entitled to vote with respect to the action that is the subject of the consent shall bear the date of signature of each shareholder who signs the consent. No written consent signed by the holder of less than all the shares entitled to vote with respect to the action that is the subject of the consent shall be effective to take the action that is the subject of the consent unless, within sixty (60) days after the date of the earliest dated consent delivered to the Corporation in a manner required by these Bylaws, a consent or consents signed by the holder or holders of shares having not less than the minimum number of votes that would be necessary to take the action that is the subject of the consent are delivered to the Corporation by delivery to its registered office, registered agent, principal place of business, transfer agent, registrar, exchange agent or an officer or agent of the Corporation having custody of the books in which proceedings of meetings of shareholders are recorded. Delivery shall be by hand or certified or registered mail, return receipt requested. Delivery to the Corporation's principal place of business shall be addressed to the President or principal executive officer of the Corporation.

A telegram, telex, cablegram, or other electronic transmission by a shareholder consenting to an action to be taken is considered to be written, signed, and dated for the purposes of this section if the transmission sets forth or is delivered with information from which the Corporation can determine that the transmission was transmitted by the shareholder and the date on which the shareholder transmitted the transmission. The date of transmission is the date on which the consent was signed. Consent given by telegram, telex, cablegram, or other electronic transmission may not be considered delivered until the consent is reproduced in paper form and the paper form is delivered to the Corporation at its registered office in this state or its principal place of business, or to an officer or agent of the Corporation having custody of the book in which proceedings of shareholder meetings are recorded. Notwithstanding the preceding paragraph of this section, consent given by telegram, telex, cablegram, or other electronic transmission may be delivered to the principal place of business of the Corporation or to an officer or agent of the Corporation having custody of the book in which proceedings of shareholder meetings are recorded to the extent and in the manner provided by resolution of the Board of Directors of the Corporation.

Any photographic, photostatic, facsimile, or similarly reliable reproduction of a consent in writing signed by a shareholder may be substituted or used instead of the original writing for any purpose for which the original writing could be used, if the reproduction is a complete reproduction of the entire original writing.

Prompt notice of the taking of any action by shareholders without a meeting by less than unanimous written consent shall be given to those shareholders who did not consent in writing to the action.

# ARTICLE III - DIRECTORS

## 1.    BOARD OF DIRECTORS

To the extent not limited or prohibited by law, the Certificate of Formation or these Bylaws, the powers of the Corporation shall be exercised by or under the authority of, and the business and affairs of the Corporation shall be managed under the direction of the Board of Directors of the Corporation. Directors need not be residents of the State of Texas or shareholders of the Corporation unless the Certificate of Formation or these Bylaws so require.

In the discharge of any duty imposed or power conferred upon a director, including as a member of a committee, a director, may in good faith and with ordinary care, rely on information referred to in section 21.314 of the Texas Business Organizations Code or information, opinions, reports, or statements, including financial statements and other financial data, concerning the Corporation or another person, that were prepared or presented by: (1) one or more officers or employees of the Corporation; (2) legal counsel, public accountants, investment bankers, or other persons as to matters the director reasonably believes are within the person's professional or expert competence; or (3) a committee of the Board of Directors of which the director is not a member.

A director is not relying in good faith within the meaning of this section if the director has knowledge concerning the matter in question that makes reliance otherwise permitted by this section unwarranted.

## 2.    NUMBER AND ELECTION OF DIRECTORS

The number of directors shall be one (1) provided that the number may be increased or decreased from time to time by an amendment to these Bylaws or resolution adopted by the Board of Directors or by the shareholders. No decrease in the number of Directors shall have the effect of shortening the term of any incumbent director.

At the first annual meeting of shareholders and at each annual meeting thereafter, the holders of shares entitled to vote in the election of directors shall elect directors to hold office until the next succeeding annual meeting.

## 3.    REMOVAL

Except as otherwise provided by the Texas Business Organizations Code, these Bylaws or the Certificate of Formation, at any meeting of shareholders called expressly for that purpose any director or the entire Board of Directors may be removed, with or without cause, by a vote of the holders of a majority of the shares then entitled to vote at an election of directors, subject to any further restrictions on removal that may be contained in the Bylaws. Whenever the holders of any class or series of shares or any such group are entitled to elect one or more directors by the provisions of the Certificate of Formation, only the holders of shares of that class or series or group shall be entitled to vote for or against the removal of any director elected by the holders of shares of that class or series or group. If the Certificate of Formation allows cumulative voting and if less than the entire board is to be removed, no one of the directors may be removed if the votes cast against his or her removal would be sufficient to elect him if then cumulatively voted at an election of the entire Board of Directors, or if there be classes of directors, at an election of the class of directors of which he or she is a part. If the directors have been classified as permitted by the Texas Business Organizations Code, unless the Certificate of Formation

otherwise provides, a director may not be removed except for cause.

## 4. RESIGNATION

A director may resign by providing notice in writing or by electronic transmission of such resignation to the Corporation. The resignation shall be effective upon the date of receipt of the notice of resignation or the date specified in such notice. Acceptance of the resignation shall not be required to make the resignation effective.

## 5. VACANCIES AND INCREASE IN NUMBER OF DIRECTORS

Any vacancy occurring in the Board of Directors may be filled by election at an annual or special meeting of shareholders called for that purpose or may be filled by the affirmative vote of a majority of the remaining directors though less than a quorum of the Board of Directors. A director elected to fill a vacancy shall be elected for the unexpired term of his or her predecessor in office.

A directorship to be filled by reason of an increase in the number of directors may be filled by election at an annual or special meeting of shareholders called for that purpose or may be filled by the Board of Directors for a term of office continuing only until the next election of one or more directors by the shareholders; provided that the Board of Directors may not fill more than two such directorships during the period between any two successive annual meetings of shareholders.

Notwithstanding the above, whenever the holders of any class or series of shares or group of classes or series of shares are entitled to elect one or more directors by the provisions of the Certificate of Formation, any vacancies in such directorships and any newly created directorships of such class or series to be filled by reason of an increase in the number of such directors may be filled by the affirmative vote of a majority of the directors elected by such class or series, or by such group, then in office, or by a sole remaining director so elected, or by the vote of the holders of the outstanding shares of such class or series or of such group, and such directorships shall not in any case be filled by the vote of the remaining directors or the holders of the outstanding shares as a whole unless otherwise provided in the Certificate of Formation.

## 6. ANNUAL MEETING OF DIRECTORS

Immediately following each annual meeting of shareholders, the Board of Directors elected at such meeting shall hold an annual meeting at which they shall elect officers and transact such other business as shall come before the meeting. The time and place of the annual meeting of the Board of Directors may be changed by resolution of the Board of Directors.

## 7. REGULAR MEETING OF DIRECTORS

Regular meetings of the Board of Directors may be held with or without notice at such time and place as may be from time to time determined by the Board of Directors.

## 8. SPECIAL MEETINGS OF DIRECTORS

The Secretary shall call a special meeting of the Board of Directors whenever requested to do so by the President or by one (1) or more directors. Such special meeting shall be held at the date and time specified in the notice of meeting.

## 9.  PLACE OF DIRECTORS' MEETINGS

All meetings of the Board of Directors shall be held either at the principal office of the Corporation or at such other place, either within or without the State of Texas, as shall be specified in the notice of meeting or executed waiver of notice.

## 10.  NOTICE OF DIRECTORS' MEETINGS

All special meetings of the Board of Directors shall be held upon not less than one day's written notice stating the date, place and hour of meeting delivered to each director either personally or by mail or at the direction of the President or the Secretary or the officer or person calling the meeting. Annual and regular meetings of the Board of Directors may be held with or without notice.

In any case where all of the directors execute a waiver of notice of the time and place of meeting, no notice thereof shall be required, and any such meeting shall be held at the time and at the place specified in the waiver of notice. Attendance of a director at any meeting shall constitute a waiver of notice of such meeting, except where the directors attend a meeting for the express purpose of objecting to the transaction of any business on the grounds that the meeting is not lawfully called or convened.

Neither the business to be transacted at, nor the purpose of, any meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting.

On consent of a director, notice of the date, time, place, or purpose of a regular or special meeting of the Board of Directors may be given to the director by electronic transmission. The director may specify the form of electronic transmission to be used to communicate notice. The director may revoke this consent by written notice to the Corporation. The director's consent is deemed to be revoked if the Corporation is unable to deliver by electronic transmission two consecutive notices and the Secretary of the Corporation or other person responsible for delivering the notice on behalf of the Corporation knows that the delivery of these two electronic transmissions was unsuccessful. The inadvertent failure to treat the unsuccessful transmissions as a revocation of the director's consent does not invalidate a meeting or other action. An affidavit of the Secretary or other agent of the Corporation that notice has been given by electronic transmission is, in the absence of fraud, prima facie evidence that the notice was given. Notice under this section is deemed given when the notice is: (1) transmitted to a facsimile number provided by the director for the purpose of receiving notice; (2) transmitted to an electronic mail address provided by the director for the purpose of receiving notice; (3) posted on an electronic network and a message is sent to the director at the address provided by the director for the purpose of alerting the director of a posting; or (4) communicated to the director by any other form of electronic transmission consented to by the director.

## 11.  QUORUM OF DIRECTORS

A majority of the number of directors fixed by, or in the manner provided in, the Certificate of Formation or these Bylaws shall constitute a quorum for the transaction of business unless a different number or portion is required by law or the Certificate of Formation or these Bylaws. In no case may the Corporation's Certificate of Formation or these Bylaws provide that less than one-third of the number of directors so fixed constitute a quorum. The act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, unless the act of a greater number is required by law or the Certificate of Formation or these Bylaws.

## 12. COMPENSATION

Directors, as such, shall not receive any stated salary for their services, but by resolution of the Board of Directors a fixed sum and expenses of attendance, if any, may be allowed for attendance at any meeting of the Board or Directors. A director shall not be precluded from serving the Corporation in any other capacity and receiving compensation for such services. Member of committees may be allowed similar compensation and reimbursement of expenses for attending committee meetings.

## 13. UNANIMOUS WRITTEN CONSENT OF DIRECTORS OR COMMITTEE MEMBERS

Unless otherwise restricted by the Certificate of Formation or these Bylaws, any action required or permitted to be taken at a meeting of the Board of Directors or any committee may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by all the members of the Board of Directors or committee, as the case may be. A telegram, telex, cablegram, or other electronic transmission by a director consenting to an action to be taken and transmitted by a director is considered written, signed, and dated for the purposes of this section if the transmission sets forth or is delivered with information from which the Corporation can determine that the transmission was transmitted by the director and the date on which the director transmitted the transmission. Such consent shall have the same force and effect as a unanimous vote at a meeting.

## 14. COMMITTEES OF THE BOARD OF DIRECTORS

The Board of Directors may designate from among its members one or more committees, each of which shall be comprised of one or more of its members, and may designate one or more of its members as alternate members of any committee, who may, subject to any limitations imposed by the Board of Directors, replace absent or disqualified members at any meeting of that committee. Any such committee, to the extent provided in the resolution of the Board of Directors or in the Certificate of Formation or the Bylaws, shall have and may exercise all of the authority of the Board of Directors, subject to the limitations set forth in the Texas Business Organizations Code.

No committee of the Board of Directors shall have the authority of the Board of Directors in reference to:

(1) amending the Certificate of Formation, except that a committee may, to the extent provided in the resolution designating that committee or in the Certificate of Formation or the

Bylaws, exercise the authority of the Board of Directors vested in it in accordance with section 21.416(c)(1) of the Texas Business Organizations Code;

(2) proposing a reduction of the stated capital of the Corporation in the manner permitted by section 21.253 of the Texas Business Organizations Code;

(3) approving a plan of merger, share exchange, or conversion of the Corporation;

(4) recommending to the shareholders the sale, lease, or exchange of all or substantially all of the property and assets of the Corporation otherwise than in the usual and regular course of its business;

(5) recommending to the shareholders a voluntary dissolution of the Corporation or a revocation thereof;

(6) amending, altering, or repealing the Bylaws of the Corporation or adopting new Bylaws of the Corporation;

(7) filling vacancies in the Board of Directors;

(8) filling vacancies in or designating alternate members of any such committee;

(9) filling any directorship to be filled by reason of an increase in the number of directors;

(10) electing or removing officers of the Corporation or members or alternate members of any such committee;

(11) fixing the compensation of any member or alternate members of such committee; or

(12) altering or repealing any resolution of the Board of Directors that by its terms provides that it shall not be so amendable or repealable.

Unless the resolution designating a particular committee, the Certificate of Formation, or the Bylaws expressly so provide, no committee of the Board of Directors shall have the authority to authorize a distribution or to authorize the issuance of shares of the Corporation.

The designation of a committee of the Board of Directors and the delegation thereto of authority shall not operate to relieve the Board of Directors, or any member thereof, of any responsibility imposed by law.

## ARTICLE IV - OFFICERS

### 1. NUMBER OF OFFICERS

The officers of the Corporation shall consist of a President, a Treasurer and a Secretary, each of whom shall be elected by the Board of Directors at such time and in such manner as may be prescribed by the Bylaws. Such other officers, including assistant officers, and agents as may be deemed necessary may be elected or appointed by the Board of Directors or chosen in such other

manner as may be prescribed by these Bylaws. Any two (2) or more offices may be held by the same person.

## 2. ELECTION OF OFFICERS

All officers shall be elected at the annual meeting of the Board of Directors. If any office is not filled at such annual meeting, it may be filled at any subsequent regular or special meeting of the board. The Board of Directors at such annual meeting, or at any subsequent regular or special meeting may also elect or appoint such other officers and assistant officers and agents as may be deemed necessary.

All officers and assistant officers shall be elected to serve until the next annual meeting of directors (following the next annual meeting of shareholders) or until their successors are elected; provided, that any officer or assistant officer elected or appointed by the Board of Directors may be removed with or without cause at any regular or special meeting of the Board of Directors whenever in the judgment of the Board of Directors the best interests of the Corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Any agent appointed shall serve for such term, not longer than the next annual meeting of the Board of Directors, as shall be specified, subject to like right of removal by the Board of Directors. If any office becomes vacant for any reason, the vacancy may be filled by the Board of Directors.

## 3. POWERS OF OFFICERS

Each officer shall have, subject to these Bylaws, in addition to the duties and powers specifically set forth herein, such powers and duties as are commonly incident to that office and such duties and powers as the Board of Directors shall from time to time designate. All officers shall perform their duties subject to the directions and under the supervision of the Board of Directors. The President may secure the fidelity of any and all officers by bond or otherwise.

All officers and agents of the Corporation, as between themselves and the Corporation, shall have such authority and perform such duties in the management of the Corporation as may be provided in these Bylaws, or as may be determined by resolution of the Board of Directors not inconsistent with these Bylaws.

In the discharge of any duty imposed or power conferred upon an officer of the Corporation, the officer may in good faith and ordinary care rely on information, opinions, reports, or statements, including financial statements and other financial data, concerning the Corporation or another person, that were prepared or presented by: (1) one or more other officers or employees of the Corporation including members of the Board of Directors; or (2) legal counsel, public accountants, investment bankers, or other persons as to matters the officer reasonably believes are within the person's professional or expert competence.

An officer is not relying in good faith within the meaning of this section if the officer has knowledge concerning the matter in question that makes reliance otherwise permitted by this subsection unwarranted.

## 4. PRESIDENT

The President shall be the chief executive officer of the Corporation and shall preside at all meetings of all directors and shareholders. Such officer shall see that all orders and resolutions of the board are carried out, subject however, to the right of the directors to delegate specific powers, except such as may be by statute exclusively conferred on the President, or on any other officers of the Corporation.

The President or any Vice-President shall execute bonds, mortgages and other instruments requiring a seal, in the name of the Corporation. When authorized by the board, the President or any Vice-President may affix the seal to any instrument requiring the same, and the seal when so affixed shall be attested by the signature of either the Secretary or an Assistant Secretary. The President or any Vice-President shall sign certificates of stock.

The President shall be ex-officio a member of all standing committees.

The President shall submit a report of the operations of the Corporation for the year to the directors at their meeting next preceding the annual meeting of the shareholders and to the shareholders at their annual meeting.

5.     VICE-PRESIDENTS

The Vice-President, or Vice-Presidents in order of their rank as fixed by the Board of Directors, shall, in the absence or disability of the President, perform the duties and exercise the powers of the President, and they shall perform such other duties as the Board of Directors shall prescribe.

6.     THE SECRETARY AND ASSISTANT SECRETARIES

The Secretary shall attend all meetings of the Board of Directors and all meetings of the shareholders and shall record all votes and the minutes of all proceedings and shall perform like duties for the standing committees when required. The Secretary shall give or cause to be given notice of all meetings of the shareholders and all meetings of the Board of Directors and shall perform such other duties as may be prescribed by the Board of Directors. The Secretary shall keep in safe custody the seal of the Corporation, and when authorized by the Board of Directors, affix the same to any instrument requiring it, and when so affixed, it shall be attested by the Secretary's signature or by the signature of an Assistant Secretary.

The Assistant Secretaries shall in order of their rank as fixed by the Board of Directors, in the absence or disability of the Secretary, perform the duties and exercise the powers of the Secretary, and they shall perform such other duties as the Board of Directors shall prescribe.

In the absence of the Secretary or an Assistant Secretary, the minutes of all meetings of the board and shareholders shall be recorded by such person as shall be designated by the President or by the Board of Directors.

7.     THE TREASURER AND ASSISTANT TREASURERS

The Treasurer shall have the custody of the corporate funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.

The Treasurer shall disburse the funds of the Corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements. The Treasurer shall keep and maintain the Corporation's books of account and shall render to the President and directors an account of all of his or her transactions as Treasurer and of the financial condition of the Corporation and exhibit the books, records and accounts to the President or directors at any time. The Treasurer shall disburse funds for capital expenditures as authorized by the Board of Directors and in accordance with the orders of the President, and present to the President for his or her attention any requests for disbursing funds if in the judgment of the Treasurer any such request is not properly authorized. The Treasurer shall perform such other duties as may be directed by the Board of Directors or by the President.

If required by the Board of Directors, the Treasurer shall give the Corporation a bond in such sum and with such surety or sureties as shall be satisfactory to the Board of Directors for the faithful performance of the duties of the office and for the restoration to the Corporation, in case of death, resignation, retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in the incumbent's possession or under the incumbent's control belonging to the Corporation.

The Assistant Treasurers in the order of their seniority shall, in the absence or disability of the Treasurer, perform the duties and exercise the powers of the Treasurer, and they shall perform such other duties as the Board of Directors shall prescribe.

## ARTICLE V - SHARES: STOCK CERTIFICATES, ISSUANCE, TRANSFER, ETC.

### 1. CERTIFICATES OF STOCK

The Corporation shall deliver certificates representing shares to which shareholders are entitled, or the shares of the Corporation may be uncertificated shares. Unless otherwise provided by the Certificate of Formation or these Bylaws, the Board of Directors of the Corporation may provide by resolution that some or all of any or all classes and series of its shares shall be uncertificated shares, provided that such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Certificates representing shares shall be signed by such officer or officers as these Bylaws shall prescribe, and may be sealed with the seal of the Corporation or a facsimile thereof. The signatures of such officer or officers as these Bylaws shall prescribe upon a certificate may be facsimiles. In case any officer who has signed or whose facsimile signature has been placed upon such certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he or she were such officer at the date of its issuance.

In the event the Corporation is authorized to issue shares of more than one class or series, each certificate representing shares issued by the Corporation (1) shall conspicuously set forth on the face or back of the certificate a full statement of all the designations, preferences, limitations, and

relative rights of the shares of each class or series to the extent they have been fixed and determined and the authority of the Board of Directors to fix and determine the designations, preferences, limitations, and relative rights of subsequent series; or (2) shall conspicuously state on the face or back of the certificate that (a) such a statement is set forth in the Certificate of Formation on file in the office of the Secretary of State and (b) the Corporation will furnish a copy of such statement to the record holder of the certificate without charge on written request to the Corporation at its principal place of business or registered office.

Each certificate representing shares of the Corporation shall state upon the face thereof:

(1) That the Corporation is organized under the laws of this State.

(2) The name of the person to whom issued.

(3) The number and class of shares and the designation of the series, if any, which such certificate represents.

(4) The par value of each share represented by such certificate, or a statement that the shares are without par value.

In accordance with Chapter 8, Business & Commerce Code, the Corporation shall, after the issuance or transfer of uncertificated shares, send to the registered owner of uncertificated shares a written notice containing the information required to be set forth or stated on certificates pursuant to the Texas Business Organizations Code. Except as otherwise expressly provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of certificates representing shares of the same class and series shall be identical. No share shall be issued until the consideration therefor, fixed as provided by law, has been fully paid.

No requirement of the Texas Business Organizations Code with respect to matters to be set forth on certificates representing shares of the Corporation shall apply to or affect certificates outstanding, when such requirement first becomes applicable to such certificates; but such requirements shall apply to all certificates thereafter issued whether in connection with an original issue of shares, a transfer of shares or otherwise.

In the event any restriction on the transfer, or registration of the transfer, of shares shall be imposed or agreed to by the Corporation, as permitted by the Texas Business Organizations Code, each certificate representing shares so restricted (1) shall conspicuously set forth a full or summary statement of the restriction on the face of the certificate, or (2) shall set forth such statement on the back of the certificate and conspicuously refer to the same on the face of the certificate, or (3) shall conspicuously state on the face or back of the certificate that such a restriction exists pursuant to a specified document and (a) that the Corporation will furnish to the record holder of the certificate without charge upon written request to the Corporation at its principal place of business or registered office a copy of the specified document, or (b) if such document is one required or permitted to be and has been filed under the Texas Business Organizations Code, that such specified document is on file in the office of the Secretary of State and contains a full statement of such restriction. Unless such document was on file in the office of the Secretary of State at the time of the request, the Corporation which fails within a

reasonable time to furnish the record holder of a certificate upon such request and without charge a copy of the specified document shall not be permitted thereafter to enforce its rights under the restriction imposed on the shares represented by such certificate.

## 2. TRANSFERS OF SHARES

Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, it shall be the duty of the Corporation to issue a new certificate to the person entitled thereto, cancel the old certificate, and record the transaction upon its books.

## 3. REGISTERED SHAREHOLDERS

Unless otherwise provided in the Texas Business Organizations Code, and subject to the provisions of Chapter 8-Investment Securities of the Business & Commerce Code:

(1) The Corporation may regard the person in whose name any shares issued by the Corporation are registered in the share transfer records of the Corporation at any particular time (including, without limitation, as of a record date fixed pursuant to these Bylaws) as the owner of those shares at that time for purposes of voting those shares, receiving distributions thereon or notices in respect thereof, transferring those shares, exercising rights of dissent with respect to those shares, exercising or waiving any preemptive right with respect to those shares, entering into agreements with respect to those shares in accordance with sections 21.210-21.213 or 6.251-6.252 of the Texas Business Organizations Code, or giving proxies with respect to those shares; and

(2) Neither the Corporation nor any of its officers, directors, employees, or agents shall be liable for regarding that person as the owner of those shares at that time for those purposes, regardless of whether that person does not possess a certificate for those shares

## 4. LOST CERTIFICATES

The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate to be lost. When authorizing such issue of a new certificate or certificates, the Board of Directors in its discretion and as a condition precedent to the issuance thereof, may require the owner of such lost or destroyed certificate or certificates or his or her legal representative to advertise the same in such manner as it shall require or to give the Corporation a bond with surety and inform satisfactory to the Corporation (which bond shall also name the Corporation's transfer agents and registrars, if any, as obligees) in such sum as it may direct as indemnify against any claim that may be made against the Corporation or other obligees with respect to the certificate alleged to have been lost or destroyed, or to advertise and also give such bond.

## ARTICLE VI - DIVIDEND AND DISTRIBUTIONS

## 1. DECLARATION

The Board of Directors may declare at any annual, regular or special meeting of the Board of Directors and the Corporation may pay, dividends on the outstanding shares in cash, property or in the shares of the Corporation to the extent permitted by, and subject to the provisions of, the laws of the State of Texas.

## 2. RESERVES

The Board of Directors may by resolution, create a reserve or reserves out of the Corporation's surplus or designate or allocate any part or all of the Corporation's surplus in any manner for any proper purpose or purposes, including but not limited to creating a reserve fund to meet contingencies or for equalizing dividends or for repairing or maintaining any property of the Corporation, and may increase, decrease, or abolish any such reserve, designation, or allocation in the same manner.

## ARTICLE VII - INDEMNIFICATION AND INSURANCE

## 1. INDEMNIFICATION

The Corporation shall have the full power to indemnify and advance expenses pursuant to the provisions of the Texas Business Organizations Code to any person: (1) who is or was a director of the Corporation; (2) who, while a director of the Corporation, is or was serving at the request of the Corporation as a director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic corporation, employee benefit plan, other enterprise, or other entity; (3) who is or was an officer of the Corporation; (4) who is or was an employee of the Corporation; (5) who is or was an agent of the Corporation; and (6) who is not or was not an officer, employee, or agent of the Corporation but who is or was serving at the request of the Corporation as a director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic corporation, employee benefit plan, other enterprise, or other entity.

## 2. INSURANCE

The Corporation may purchase and maintain insurance or another arrangement on behalf of any person who is or was a director, officer, employee, or agent of the Corporation or who is or was serving at the request of the Corporation as a director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic corporation, employee benefit plan, other enterprise, or other entity, against any liability asserted against him or her and incurred by him or her in such a capacity or arising out of his or her status as such a person, whether or not the Corporation would have the power to indemnify him or her against that liability. If the insurance or other arrangement is with a person or entity that is not regularly engaged in the business of providing insurance coverage, the insurance or arrangement may provide for payment of a liability with respect to which the Corporation would not have the power to indemnify the person only if including coverage for the additional liability has been approved by the shareholders of the Corporation. Without limiting the power of the Corporation to procure or maintain any kind of insurance or other arrangement, the Corporation may, for the benefit of persons indemnified by the Corporation, (1) create a trust fund; (2) establish any form of self-insurance; (3) secure its indemnity obligation by grant of a security interest or other lien

on the assets of the Corporation; or (4) establish a letter of credit, guaranty, or surety arrangement. The insurance or other arrangement may be procured, maintained, or established within the Corporation or with any insurer or other person deemed appropriate by the Board of Directors regardless of whether all or part of the stock or other securities of the insurer or other person are owned in whole or part by the Corporation. In the absence of fraud, the judgment of the Board of Directors as to the terms and conditions of the insurance or other arrangement and the identity of the insurer or other person participating in an arrangement shall be conclusive and the insurance or arrangement shall not be voidable and shall not subject the directors approving the insurance or arrangement to liability, on any ground, regardless of whether directors participating in the approval are beneficiaries of the insurance or arrangement.

## ARTICLE VIII - MISCELLANEOUS

### 1. INFORMAL ACTION

Any action required to be taken or which may be taken at a meeting of the shareholders, directors or members of a Board of Directors' committee, may be taken without a meeting if a consent in writing setting forth the action so taken shall be signed by all of the shareholders, directors, or members of a Board of Directors' committee, as the case may be, entitled to vote with respect to the subject matter thereof.

A telegram, telex, cablegram, or other electronic transmission by a shareholder, director or member of a Board of Directors' committee consenting to an action to be taken and transmitted by a shareholder, director or member of a Board of Directors' committee is considered written, signed, and dated for the purposes of this article if the transmission sets forth or is delivered with information from which the Corporation can determine that the transmission was transmitted by the shareholder, director or member of a Board of Directors' committee and the date on which the shareholder, director or member of a Board of Directors' committee transmitted the transmission. Such consent shall have the same force and effect as a unanimous vote at a meeting, and may be stated as such in any document or instrument filed with the Secretary of State.

### 2. WAIVER OF NOTICE

Whenever any notice is required to be given to any shareholder or director of the Corporation under the provisions of the Texas Business Organizations Code or under the provisions of the Certificate of Formation or these Bylaws, a waiver thereof in writing signed by the person or persons entitled to such notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be equivalent to the giving of such notice.

### 3. USE OF ELECTRONIC TRANSMISSION

The Corporation is authorized to use "electronic transmissions" as defined in the Texas Business Organizations Code and to the full extent thereby permitted, including, but not limited to the purposes of notices, proxies, waivers, resignations and any other purpose for which electronic transmissions are permitted.

"Electronic transmission" means a form of communication that: (a) does not directly involve the

physical transmission of paper; (b) creates a record that may be retained, retrieved, and reviewed by the recipient; and (c) may be directly reproduced in paper form by the recipient through an automated process.

## 4. MEETINGS BY TELEPHONE CONFERENCE, OR BY ELECTRONIC OR OTHER REMOTE COMMUNICATIONS TECHNOLOGY

Subject to the provisions for notice required by these Bylaws and the Texas Business Organizations Code for notice of meetings, directors and shareholders may participate in and hold a meeting by means of conference telephone or similar communications equipment, the Internet, or any combination thereof, by which all persons participating in the meeting can communicate with each other. Or, another suitable electronic communications system may be used including videoconferencing technology, but only if, each director or shareholder entitled to participate in the meeting consents to the meeting being held by means of that system and the system provides access to the meeting in a manner or using a method by which each director and shareholder participating in the meeting can communicate concurrently with each other participant. Participation in such meeting shall constitute attendance and presence in person at such meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

## 5. SEAL

The Corporation may adopt a corporate seal in such form as the Board of Directors may determine. The Corporation shall not be required to use the corporate seal and the lack of the corporate seal shall not affect an otherwise valid contract or other instrument executed by the Corporation.

## 6. CHECKS, DRAFTS, ETC.

All checks, drafts or other instruments for payment of money or notes of the Corporation shall be signed by such officer or officers or such other person or persons as shall be determined from time to time by Resolution of the Board of Directors.

## 7. FISCAL YEAR

The fiscal year of the Corporation shall be as determined by the Board of Directors.

### ARTICLE IX - CONSTRUCTION

## 1. PRONOUNS AND HEADINGS

All personal pronouns used in these Bylaws shall include the other gender whether used in masculine or feminine or neuter gender, and the singular shall include the plural whenever and as often as may be appropriate. All headings herein are for the parties' convenience only and neither limit nor amplify the provisions of this Agreement.

## 2. INVALID PROVISIONS

If any one or more of the provisions of these Bylaws, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of these Bylaws and all other applications of any such provision shall not be affected thereby.

## ARTICLE X - AMENDMENT OF BYLAWS

The Board of Directors may amend or repeal these Bylaws, or adopt new Bylaws, unless the Certificate of Formation or the Texas Business Organizations Code reserves the power exclusively to the shareholders in whole or part, or the shareholders in amending, repealing, or adopting a particular bylaw expressly provide that the Board of Directors may not amend or repeal that bylaw. Unless the Certificate of Formation or a bylaw adopted by the shareholders provides otherwise as to all or some portion of these Bylaws, the shareholders may amend or repeal these Bylaws or adopt new Bylaws even though the Bylaws may also be amended, repealed, or adopted by the Board of Directors.

Adopted by the Board of Directors on August 8, 2007.

Lloyd George

# MINUTES OF THE ORGANIZATIONAL MEETING OF
## THE BOARD OF DIRECTORS OF
## HELVETIA ASSET RECOVERY, INC.
## A FOR-PROFIT CORPORATION

The organizational meeting of the Board of Directors of Helvetia Asset Recovery, Inc., a Texas business corporation (hereinafter "Business Corporation"), was held at 1715 Hadbury Lane, San Antonio, Texas 78248, on August 8, 2007.

The undersigned, being the sole member of the initial Board of Directors of Helvetia Asset Recovery, Inc. named in the Business Corporation's Certificate of Formation filed with the Secretary of State of Texas, was present. The undersigned waived notice of the meeting as evidenced by the attached Waiver of Notice signed and appended hereto.

Lloyd George was appointed Chairman of the meeting and Lloyd George was appointed Secretary of the meeting.

## CERTIFICATE OF FORMATION

The Secretary then presented and read to the meeting a copy of the Certificate of Formation and reported that the original thereof was filed in the office of the Secretary of State of the State of Texas on August 1, 2007, and that the Secretary of State issued a formal Acknowledgment of Filing to the Business Corporation on that date. The Secretary presented the Acknowledgment of Filing annexed to an approved duplicate of the Certificate of Formation as filed and it was ordered inserted into the corporate record book.

## BYLAWS

The Secretary then presented a proposed form of bylaws. The proposed bylaws were read to the meeting, considered and upon motion duly made, seconded and carried, were adopted as and for the Bylaws of the Business Corporation and ordered signed and inserted into the corporate record book. The Secretary of the Business Corporation was instructed to maintain a copy of the Bylaws at the principal office of the Business Corporation available for inspection by the shareholders of the Business Corporation.

## PRINCIPAL OFFICE

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation's principal office be located and maintained at _1715 HADBURY LANE, San Antonio_, Texas, _78248_ and that meetings of the Board of Directors from time to time may be held either at the principal office or at such other place as the board of directors shall from time to time order.



1

## ISSUANCE OF SHARES

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation issue 1000 shares of the Business Corporation's authorized shares of common stock (no par value), for a purchase price of $ ———— each, as follows:

| Name | No. of Shares | Consideration | Value |
|------|---------------|---------------|-------|
| Puerto Verde Inc | 1000 | Cash | $ —— |
| | | Cash | $ |
| | | Cash | $ |

Upon motion duly made, seconded and carried, it was

RESOLVED, that upon receipt of the consideration, the officers of the Business Corporation are authorized to issue share certificates to the persons named above and to obtain, if advisable, representations from any purchaser that the shares are being acquired for investment purposes and not for distribution, and further

RESOLVED, that the Board of Directors of the Business Corporation may upon such terms as the Board of Directors in its discretion may determine, issue authorized shares of the Business Corporation for consideration consisting of any tangible or intangible benefit to the Business Corporation or other property of any kind or nature, including cash, promissory notes, services performed, contracts for services to be performed, other securities of the Business Corporation, or securities of any other corporation, domestic or foreign, or other entity.

## BANK ACCOUNT

Upon motion duly made, seconded and carried, it was

RESOLVED, that the Business Corporation establish in its name one or more accounts with one or more financial institutions on such terms and conditions as may be agreed with said financial institutions, and that the officers of the Business Corporation are authorized to execute any resolutions required by said financial institutions for such accounts and to designate the person or persons authorized to write checks on such accounts on behalf of the Business Corporation.

## ORGANIZATIONAL COSTS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the attorney's fees, filing fees and other expenses and charges incurred and that may be incurred by the Business Corporation or persons acting on behalf of the Business

3

Corporation in connection with the formation of the Business Corporation are reasonable and shall be paid or reimbursed by the Business Corporation.

## FISCAL YEAR

Upon motion duly made, seconded and carried, it was

RESOLVED, that the fiscal year of the Business Corporation shall begin on January 1 and end on December 31, provided that the initial fiscal year of the Business Corporation shall begin as of the date hereof.

## TAXES

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation obtain information and instructions from the Internal Revenue Service, Comptroller of the State of Texas and other applicable taxing authorities regarding withholding and other taxes.

## LICENSES AND PERMITS

Upon motion duly made, seconded and carried, it was

RESOLVED, that the officers of the Business Corporation are authorized to obtain on behalf of the Business Corporation all licenses and permits that may be required for the Business Corporation to carry out its lawful business and activities, and further,

RESOLVED, that the officers of the Business Corporation are authorized to do all things and take all action necessary to qualify the Business Corporation to carry out its lawful business and activities in compliance with applicable federal, state and local laws, ordinances and regulations.

## QUALIFICATION IN OTHER JURISDICTIONS

Upon motion duly made, seconded and carried, it was

RESOLVED, that for the purpose of authorizing the Business Corporation to do business in any state, territory or dependency of the United States or any foreign country in which it is necessary or expedient for the Business Corporation to transact business, the proper officers of the Business Corporation are hereby authorized to appoint and substitute all necessary agents or attorneys for service of process, to designate and change the location of all necessary statutory offices and to make and file all necessary certificates, reports, powers of attorney and other instruments as may be required by the laws of such state, territory, dependency or country to authorize the Business Corporation to transact business therein.

4

## FURTHER INSTRUCTIONS TO OFFICERS

Upon motion duly made, seconded and carried, it was

**RESOLVED**, that the officers of the Business Corporation are authorized to do all things and take all action necessary and helpful to carry out the above resolutions and all acts of the officers and any persons acting for the Business Corporation which are consistent with the above resolutions are ratified and adopted as the acts of the Business Corporation.

Upon motion duly made, seconded and carried, it was

**RESOLVED** that the signing of these minutes shall constitute full ratification thereof and waiver of notice of the meeting by the signatories.

Upon motion duly made, seconded and carried, it was

**RESOLVED** that Lloyd George resigned as an office and director of the Business Corporation, and that resignation was accepted.

The Chairman asked whether there was any further business to come before the Directors at this meeting, and there being no response, the meeting was adjourned.

DATE: August 8, 2007.

_____
Lloyd George


## WAIVER OF NOTICE AND CONSENT

**RESOLVED**, that the undersigned, being the sole member of the initial Board of Directors of Helvetia Asset Recovery, Inc. named in the Business Corporation's Certificate of Formation filed with the Secretary of State of Texas, by approving the Minutes of the Organizational Meeting of the Directors, and by this resolution, does hereby waive notice of the time and place of the meeting, consents to the meeting and approves the contents of the Minutes of the Organizational Meeting of the Directors.

_____
Lloyd George
Date signed:_ August 8, 2007

5